FILED

2023 Dec-28  AM 09:10
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| BRITTANY COLEMAN, et al., | Civil Action No. 2:22-cv-423-AMM |
| Plaintiffs, | ORAL ARGUMENT REQUESTED |
| v. | |
| THE TOWN OF BROOKSIDE, ALABAMA, et al., | |
| Defendants. | |

## PLAINTIFF COLEMAN'S MOTION FOR
## PARTIAL SUMMARY JUDGMENT AS TO COUNT 5
## OF THE FIRST AMENDED COMPLAINT

# Table of Contents

Table of Authorities ................................................................ iii

Introduction ........................................................................1

Undisputed Facts and Procedural History ...................................2

    I.      Defendant Sellers handcuffed Coleman even though he did not deem her a threat to safety or investigation. .........................2

    II.     All three Defendants kept Coleman handcuffed even though they did not deem her a threat to safety or investigation. ............................5

    III.    All three Defendants towed Coleman's car even though they confirmed she was not under the influence and could lawfully and safely drive it away.......................................................6

    IV.    Defendants' conduct injured Coleman.................................8

    V.     Judge Proctor denied Defendants summary judgment and qualified immunity. ...................................................8

Standard of Review..................................................................9

Argument...........................................................................10

    I.      Coleman is entitled to summary judgment as to liability...................10

        A.    Defendant Sellers violated clearly established Fourth Amendment law by handcuffing Coleman without any articulable, individualized threat to safety or investigation. ...................................................11

        B.    All three Defendants violated clearly established Fourth Amendment law by keeping Coleman handcuffed without any articulable, individualized threat to safety or investigation. ...........................................17

        C.    All three Defendants violated clearly established Fourth Amendment law by towing Coleman's car after confirming that she was not under the influence and could lawfully and safely drive it away.............................20

II.    Coleman is entitled to partial summary judgment as to damages.
......................................................................................26

Conclusion ......................................................................................27

Certificate of Service ....................................................................28

# Table of Authorities

**Page**

## Cases

*Barfield v. Rambosk*,
   2015 WL 1754591 (M.D. Fla. Apr. 17, 2015) ............................................. 14, 17

*Coleman v. Town of Brookside*,
   637 F. Supp. 3d 1290 (N.D. Ala. 2022) ....................................................... passim

*Crocker v. Beatty*,
   886 F.3d 1132 (11th Cir. 2018) ..................................................................... 10, 20

*District of Columbia v. Wesby*,
   583 U.S. 48 (2018) ................................................................................................ 26

*El-Ghazzawy v. Berthiaume*,
   636 F.3d 452 (8th Cir. 2011) ................................................................................ 11

*Gray ex rel. Alexander v. Bostic*,
   458 F.3d 1295 (11th Cir. 2006) .................................................................... passim

*Harris v. Byner*,
   2014 WL 129040 (M.D. Ala. Jan. 14, 2014) ......................................... 11, 16, 17

*Harris v. City of Montgomery*,
   580 F. App'x 874 (11th Cir. 2014) ....................................................................... 11

*Michigan v. Long*,
   463 U.S. 1032 (1983) ............................................................................................ 11

*Miranda v. City of Cornelius*,
   429 F.3d 858 (9th Cir. 2005) ................................................................................ 23

*Morton v. State*,
   452 So. 2d 1361 (Ala. Crim. App. 1984) ......................................... 21, 22–23, 24

*Redlich v. Leen*,
   2016 WL 3670575 (S.D. Fla. May 20, 2016) ....................................................... 24

*Sammons v. Taylor*,
   967 F.2d 1533 (11th Cir. 1992) ................................................................... 21, 22

*Scott v. Harris*,
   550 U.S. 372 (2007) ............................................................... 5, 9, 18, 19

*South Dakota v. Opperman*,
   428 U.S. 364 (1976) ................................................................... 21, 22

*Synovus Bank v. Hyche*,
   2014 WL 3353261 (N.D. Ala. July 9, 2014) ................................................ 26–27

*Taylor v. Riojas*,
   592 U.S. 7 (2020) ................................................................................26

*United States v. Acosta*,
   363 F.3d 1141 (11th Cir. 2004) ................................................................ 11, 17

*United States v. Bridges*,
   245 F. Supp. 2d 1034 (S.D. Iowa 2003) ..............................................................24

*United States v. Curry*,
   2019 WL 2325946 (N.D. Ala. May 31, 2019) ............................................. 23–24

*United States v. Duguay*,
   93 F.3d 346, 353 (7th Cir. 1996) ........................................................................23

*United States v. Fields*,
   178 F. App'x 890 (11th Cir. 2006) ........................................................................14

*United States v. Goodrich*,
   183 F. Supp. 2d 135 (D. Mass. 2001) ..................................................................24

*United States v. Holloway*,
   290 F.3d 1331 (11th Cir. 2002) ..........................................................................20

*United States v. Sanders*,
   796 F.3d 1241 (10th Cir. 2015) ..........................................................................23

*United States v. Virden*,
   488 F.3d 1317 (11th Cir. 2007) ..........................................................................20

*United States v. West*,
   806 F. App'x 892 (11th Cir. 2020)..........................................................................13

**Other Authorities**

Ala. Op. Att'y Gen. No. 2002-032, 2001 WL 1421631 (Oct. 18, 2001)................26

**Introduction**

Plaintiff Brittany Coleman was pulled over by Defendant Brookside Officer Sellers for allegedly following another car too closely. During the stop, Sellers claimed to smell marijuana. On that basis alone, the 6-foot, 300-pound Sellers immediately handcuffed the 5'2", 130-pound Coleman and kept her handcuffed while searching her purse, even though she posed no threat to safety or investigation. When Defendant Officers Ragsdale and Moses arrived, they too kept Coleman handcuffed, even though she still posed no threat. The non-threatening Coleman's handcuffs were removed only so she could take three field sobriety tests, all of which she passed. And yet, as a final indignity, Defendants towed the indisputably sober, licensed, registered, and insured Coleman's car—all on her twenty-fifth birthday.

All three actions—the initial handcuffing, the continued handcuffing, and the towing—violated clearly established Fourth Amendment law. Indeed, before transfer to this Court, Judge Proctor denied Defendants summary judgment and qualified immunity on essentially the same facts. As relevant under clearly established law, Judge Proctor explained: (1) Defendants articulated no threat to safety or investigation justifying either Coleman's initial or continued handcuffing, and (2) Defendants' bodycam videos show them towing Coleman's car despite saying she could safely drive it after passing their sobriety tests. Doc. 67 (*Coleman v. Town of Brookside*, 637 F. Supp. 3d 1290, 1298–1300 (N.D. Ala. 2022)).

Now, the further-developed record shows Coleman's entitlement to summary judgment under the same clearly established law that informed Judge Proctor's decision. All three Defendants admit that Coleman never acted dangerously or threateningly, that she passed all her sobriety tests, and that she could drive her car away lawfully and safely. Per their written report: "Sellers informed her that according to his experience as a law enforcement officer and training as ARIDE administrator, he believed she was safe at that point in time to operate a motor vehicle safely."

That all makes this matter easy. Coleman is entitled to summary judgment on Count 5 of the First Amended Complaint as to Defendants' liability and as to the sum-certain portion of Coleman's damages caused by Defendants' baseless intrusions on her body and her property.

## Undisputed Facts and Procedural History

### I.    Defendant Sellers handcuffed Coleman even though he did not deem her a threat to safety or investigation.

On April 4, 2020, Brittany Coleman was driving to her twenty-fifth birthday breakfast in a car for which she was the registered and insured owner. Doc. 94-1 (Coleman Dec.) ¶ 1. Officer Sellers pulled Coleman over on the side of the highway, solely on the allegation that she was following another car too closely. Doc. 94-2

(Sellers Dep.) at 88, 257.[1] In violation of Brookside police policy, Sellers was not bodycam-recording the stop. Doc. 94-2 at 88–91. But his contemporaneous written report, the parties' testimony, and the beginning of Ragsdale's bodycam video establish the following facts as to the beginning of the stop, before Ragsdale and Moses recorded the rest.

Upon approaching Coleman's car and receiving her valid driver's license, Sellers claimed to smell marijuana. Doc. 94-2 at 257. So he had Coleman exit the car and asked her how long ago she smoked. Doc. 94-2 at 257. She answered "that she smoked 3 joints earlier in the day." Doc. 94-2 at 257. Coleman's answer was honest, and she gave it cooperatively. Doc. 94-1 ¶¶ 7, 14, 18. She had indeed smoked in the very early morning; it was about seven hours before the afternoon stop. Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 00:51–01:06.[2]

According to Sellers's written report, he told Coleman he was going to search her car, and he handcuffed her "for officer safety so that he could search the vehicle safely." Doc. 94-2 at 257. Nothing in the report suggests that Coleman behaved

---

[1] Page citations are to the page number in each cited document's ECF-generated header. The Sellers deposition and its accompanying exhibits span Docs. 94-2 through 94-4. The Ragsdale deposition is Doc. 94-5, and the Moses deposition is Doc. 94-6.

[2] Citations to Ragsdale's and Moses's bodycam videos are to the minutes and seconds of the recordings, not to the time of day displayed within the recordings. The videos are Exhibits 5 and 6 to Sellers's deposition (*see* Docs. 94-2 at 6, 94-4 at 85–86), and they are available on the flash drives mailed to the Court. *See* Doc. 95 (notice of conventional filing of videos). The videos are cited herein as Doc. 94-4 Exs. 5 (Ragsdale bodycam video) and 6 (Moses bodycam video).

dangerously, threateningly, or erratically. Doc. 94-2 at 257. The 6-foot, 300-pound Sellers testified that the 5'2", 130-pound Coleman did not "behave in a dangerous way" or "a threatening way," either before or after he told her that he was going to search her car. Doc. 94-2 at 98–100, 126–128. Coleman likewise says she was calm; that she never gave reason to believe she was a threat to Sellers, to herself, or to Sellers's investigation before or after he handcuffed her; and that Sellers did not indicate to her that he believed she posed any such threat before or after the handcuffing. Doc. 94-1 ¶¶ 6–7, 11–14. Among Sellers's stated factors for deciding whether to handcuff a person during a traffic stop, only the odor of marijuana was present. Doc. 94-2 at 97. A factor that was absent in Sellers's telling of Coleman's stop: "a safety threat as far as aggression." Doc. 94-2 at 97–100.[3]

After handcuffing Coleman, Sellers searched her purse. Doc. 94-2 at 112–113. When Ragsdale arrived, Sellers was still searching the purse; he had not started searching Coleman's car. Doc. 94-2 at 113; Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 00:30. Sellers knew that other officers would arrive, and that he could search Coleman's car after they arrived. Doc. 94-2 at 101–102.

---

[3] Coleman maintains that Sellers told her the handcuffing was a matter of "standard procedure," or words to that effect. Doc. 94-1 ¶ 5. Sellers says he did not say that, and that he instead told her the handcuffing was for "her safety and my safety." Doc. 94-2 at 94. This dispute is immaterial—as explained in the argument section below, the question is whether Sellers had an articulable, individualized basis to reasonably think that an uncuffed Coleman threatened anyone's safety, not whether he incanted that word.

## II.     All three Defendants kept Coleman handcuffed even though they did not deem her a threat to safety or investigation.

When Ragsdale arrived and began recording the stop, Sellers was still searching Coleman's purse. The handcuffed Coleman was silent, subdued, and slightly pacing, but not approaching either officer. Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 00:30–00:50. She spoke only to correct Sellers's misstatement that she said she smoked two hours ago, explaining that she never said that, and that she likely smoked at "5:00 in the morning"—seven hours before the stop. Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 00:47–01:06.

With Ragsdale present, and Moses arriving eight minutes after him, the multiple armed officers kept Coleman handcuffed for fourteen-plus minutes, until they decided to conduct sobriety tests. Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 00:01–14:30; Doc. 94-4 (Ex. 6 to Sellers Dep., Moses bodycam video) at 00:01–06:30. Sellers, Ragsdale, and Moses all testified that Coleman never behaved in a "dangerous" or "threatening" way at any point, but that they kept her handcuffed anyway. Doc. 94-2 at 106–107; Doc. 94-5 (Ragsdale Dep.) at 78–80; Doc. 94-6 (Moses Dep.) at 75–77. To confirm those assessments of Coleman's nonthreatening behavior and disposition, the bodycam videos speak for themselves. Doc. 94-4 (Exs. 5 and 6 to Sellers Dep., Ragsdale and Moses bodycam videos); *see Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (party opposing summary judgment cannot create fact dispute by contradicting clear video evidence).

**III.    All three Defendants towed Coleman's car even though they confirmed she was not under the influence and could lawfully and safely drive it away.**

While Sellers and Ragsdale were searching Coleman's car (with Moses standing guard over the sitting and subdued Coleman), they decided to conduct field sobriety tests, pursuant to their Advanced Roadside Impaired Driving Enforcement (ARIDE) training. Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 13:10–13:40, 14:00–14:05. Even before the ARIDE tests, Sellers told Ragsdale, "I don't think she is DUI." Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 13:12–13:20. Ragsdale did not disagree, saying, "If the main thing, it's practice." Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 13:30–13:35. Only then, more than fourteen minutes into Coleman's handcuffing by multiple officers (and even longer by Sellers alone), did they finally remove her handcuffs. Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 14:30.

Coleman passed all three sobriety tests with all three officers observing (nystagmus, Rhomberg balance, and finger to nose). Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 14:45–20:25. So, upon completing the tests, Sellers immediately told Coleman: "I don't believe you're going to be under the influence to operate your vehicle safely." Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 20:25–20:37. Ragsdale simultaneously (and unambiguously)

agreed. Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 20:30–20:33. Moses confirmed his agreement. Doc. 94-6 at 85.

Sellers's written report also explains that Coleman passed all three sobriety tests, concluding unequivocally: "Sellers informed her that according to his experience as a law enforcement officer and training as ARIDE administrator, he believed she was safe at that point in time to operate a motor vehicle safely." Doc. 94-2 at 257. The same report marks "Sober" in its "Condition of Arrestee" field. Doc. 94-2 at 256. Ragsdale likely reviewed those written assessments contemporaneously for their accuracy. Doc. 94-2 at 73–75, 124–125. Sellers, Ragsdale, and Moses all testified that they agree with the accuracy of those assessments. Doc. 94-2 at 127, 133; Doc. 94-5 at 89, 92–95; Doc. 94-6 at 81–85.

In addition to Defendants' conclusion that she was sober, Coleman had a valid driver's license, registration, and insurance, so she could lawfully and safely drive her car away. Doc. 94-1 ¶ 1. But Coleman was not allowed to leave with her car. Instead, Defendants each decided to tow it. Doc. 94-2 at 173; Doc. 94-5 at 104–107; Doc. 94-4 (Ex. 6 to Sellers Dep., Moses bodycam video) at 22:55–23:45. They all testified that the sole reason was "incident to arrest." Doc. 94-2 at 202–206; Doc. 94-5 at 106–107; Doc. 94-6 at 83–86. And their contemporaneous Vehicle Impoundment Record lists only "Arrested" as the "Reason for Impoundment." Doc.

94-2 at 255. But Coleman was not taken to jail or any other custodial setting; she was, in the words of the written report, "Sober" and "Released." Doc. 94-2 at 256.

## IV.   Defendants' conduct injured Coleman.

Coleman suffered both sum-certain economic injuries and physical, emotional, and dignitary injuries as a result of Defendants' handcuffing and towing. The sum-certain injuries are the $175 she paid Brookside and the $160 she paid Jett's Towing for the release of her car, totaling $335. Doc. 94-1 ¶ 24. The remaining injuries arise from the pain, humiliation, distress, time, and inconvenience caused by the handcuffing and the towing, as partially depicted in Defendants' bodycam videos. Doc. 94-1 ¶ 25; *see, e.g.*, Doc. 94-4 (Ex. 6 to Sellers Dep., Moses bodycam video) at 18:30–22:00 (Coleman crying).

## V.   Judge Proctor denied Defendants summary judgment and qualified immunity.

Before transfer to this Court, Defendants moved for pre-discovery summary judgment. Doc. 53. With the benefit of Ragsdale's and Moses's bodycam videos and Coleman's declaration, Judge Proctor denied the motion, holding that Defendants were not entitled to qualified immunity as to either their handcuffing of Coleman or their towing of her car. Doc. 67 (*Coleman v. Town of Brookside*, 637 F. Supp. 3d 1290 (N.D. Ala. 2022)). Judge Proctor explained:

(1) It is clearly established that "[i]n the absence of any safety or investigative rationale," handcuffing is "an unreasonable seizure in violation of the Fourth

Amendment." And here, Defendants provided neither such rationale—for either Sellers's initial handcuffing of Coleman when he was alone with her, or all three Defendants' continued handcuffing of Coleman when the others arrived. 637 F. Supp. 3d at 1299 (citations omitted).

(2) It is clearly established that "police cannot tow and impound a person's vehicle without cause," and that a "non-custodial arrest" does not qualify as cause without "some extenuating circumstances." And here, there was no such cause because Defendants' own post-sobriety-test bodycam statements "flatly contradict[]" the notion that Coleman was under the influence or could not otherwise lawfully and safely drive her car away. *Id.* at 1299–1300 (citations omitted).

## Standard of Review

Coleman is entitled to summary judgment on her individual Fourth Amendment claims in Count 5 of the First Amended Complaint "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Coleman*, 637 F. Supp. 3d at 1295 (citations omitted). No genuine dispute exists where video evidence clearly refutes one side's testimony or argument. *Scott*, 550 U.S. at 380–81.

## Argument

Under the clearly established Fourth Amendment law that governed Judge Proctor's initial decision, the record establishes Defendants' liability. Defendants handcuffed Coleman and kept her so, even though they admit she posed no danger or threat. They towed her car, even though they said she passed all sobriety tests and could safely drive. That all cost her hundreds of dollars, as well as pain, distress, humiliation, and time. So Coleman is entitled to summary judgment as to liability and sum-certain damages, with remaining damages amounts to be decided at trial.

### I.       Coleman is entitled to summary judgment as to liability.

Because Defendants may claim qualified immunity, Coleman must show that their Fourth Amendment violations were "clearly established at the time." *Coleman*, 637 F. Supp. 3d at 1297 (citation omitted). "Supreme Court cases, Eleventh Circuit caselaw, and [Alabama] Supreme Court caselaw can 'clearly establish' law." *Id.* at 1298 (citation omitted). So can "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right." *Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018) (per curiam) (citation omitted). Obviousness also suffices. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1305–07 (11th Cir. 2006). Here, those sources all point to the same conclusion: Sellers, Ragsdale, and Moses violated clearly established Fourth Amendment law

by handcuffing Coleman, keeping her handcuffed, and towing her car. So Coleman is entitled to summary judgement as to Defendants' liability for all three acts.

> **A. Defendant Sellers violated clearly established Fourth Amendment law by handcuffing Coleman without any articulable, individualized threat to safety or investigation.**

**1.** It is clearly established that handcuffing as a safety measure requires reasonable suspicion not only of a potential crime, but "an articulable and objectively reasonable belief that the suspect is potentially dangerous." *United States v. Acosta*, 363 F.3d 1141, 1146–47 (11th Cir. 2004) (quoting *Michigan v. Long*, 463 U.S. 1032, 1051 (1983)). "Indeed, the Eleventh Circuit has repeatedly made it clear that officers must justify the use of handcuffs with some legitimate rationale above and beyond the existence of mere reasonable suspicion" of a crime. *Harris v. Byner*, 2014 WL 129040, at *4 (M.D. Ala. Jan. 14, 2014) (collecting cases), *aff'd sub nom. Harris v. City of Montgomery*, 580 F. App'x 874 (11th Cir. 2014) (affirming "for the reasons set forth in the district court's well-reasoned order").

As far back as 2006, the Eleventh Circuit explained that even in the "absence of factually similar case law," it is "obvious" that handcuffing violates the Fourth Amendment if there is "no indication of a potential threat to anyone's safety." *Gray*, 458 F.3d at 1305–07. Federal appellate authority saying the same abounds. *See El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 456–60 (8th Cir. 2011) (collecting cases).

**2.** As those cases make clear, any potential safety rationale for handcuffing a traffic stop detainee must be based on an articulable, individualized assessment of that person's threat to safety. It does not suffice to merely incant the word, nor to merely suspect a crime that is not inherently dangerous. Individually or together, neither a simple traffic violation for following a car too closely nor the smell of marijuana, especially without any sign of intoxication, are inherent markers of a threat to officer safety. So, rightly, Defendants have not suggested any such inherent threat. And by both Sellers's admission and an independent review of the circumstances, nothing else suggested that Coleman was a safety threat. Under these circumstances, Sellers's handcuffing of Coleman is an easy case of a clearly established Fourth Amendment violation.

a. Sellers admits that both before and after he told Coleman he was going to search her car, she did not "behave in a dangerous way" or "a threatening way." Doc. 94-2 at 98–100; *see also* Doc. 94-5 at 79–80 (Ragsdale confirming that Sellers never said Coleman had behaved dangerously or threateningly before the other officers arrived). That should end the inquiry. Having admitted that he lacked any articulable, individualized "indication of a potential threat to anyone's safety," Sellers "obvious[ly]" violated Coleman's Fourth Amendment rights by handcuffing her. *Gray*, 458 F.3d at 1306–07. Indeed, it is even more obvious now than it was when Judge Proctor denied Sellers qualified immunity. Then, Sellers simply did "not

contest" that he lacked "any reason to believe [Coleman] posed a threat in any way." *Coleman*, 637 F. Supp. 3d at 1299. Now, Sellers admits it.

b. On top of that admission, an independent assessment of the circumstances confirms that "no reasonably prudent man could have concluded that [Coleman] posed a danger to the safety of [Sellers] or to others." *United States v. West*, 806 F. App'x 892, 896 (11th Cir. 2020). As in *West*, the encounter here was "during daylight hours and in a populated area," and nothing indicated Coleman was intoxicated, aggressive, uncooperative, or armed. *Id.* Nothing indicated that the 5'2", 130-pound, cooperative Coleman could or would try to attack, overpower, or even disobey the 6-foot, 300-pound, armed Sellers. And while the two of them were alone, Sellers did not even search her car with his back to her; he was only searching her purse, and so could keep his eyes on the much smaller Coleman the whole time. Doc. 94-2 at 112–113.

All told, whether based on Sellers's admission or an independent review of the circumstances, "[t]he problem in this case for [Sellers] is that, at the time [he] handcuffed [Coleman], there was no indication of a potential threat to anyone's safety," making the handcuffing an "obvious" violation of "well settled" Fourth Amendment law. *Gray*, 458 F.3d at 1306–07.

13

**3.** Nothing Sellers has said or written casts doubt on that conclusion, individually or in combination. Indeed, none of it even *purports* to renege on his dispositive admission that Coleman never behaved dangerously or threateningly.

a. First, in light of his unambiguous admission that Coleman posed no threat, Sellers's incantation that the handcuffing was "for officer safety so that he could search the vehicle safely" casts no doubt on the handcuffing's unconstitutionality. Doc. 94-2 at 257. Many Eleventh Circuit cases put all reasonable officers on notice that "[i]t is not enough to merely say that the use of handcuffs was for 'officer safety.'" *Barfield v. Rambosk*, 2015 WL 1754591, at *6 (M.D. Fla. Apr. 17, 2015) (collecting cases). Some objective, individualized threat or risk must substantiate the safety rationale. The mere odor of marijuana—Sellers's sole individualized reason for handcuffing Coleman—does not provide that substantiation, especially when faced with a cooperative suspect like Coleman. *Cf. United States v. Fields*, 178 F. App'x 890, 893–94 (11th Cir. 2006) (suspicion of drug *dealing coupled with uncooperative suspect* may support handcuffing for safety).

b. At deposition, Sellers also posited that Coleman acted "heightened" or "excited" upon learning that her car would be searched, and that he did not want to have his back turned while searching the car without other officers present. Doc. 94-2 at 98. But those deposition statements (absent from Sellers's contemporaneous written report) *did not cause Sellers to renege on his dispositive admission that*

14

*Coleman never behaved dangerously or threateningly*, or to question his written report that the "Sober" Coleman was not "Armed" and did not "Resist Arrest." *See* Doc. 94-2 at 98–100 (Sellers confirming, both before and after his "heightened" and "excited" remarks, that Coleman did not behave in a "dangerous" or "threatening" way), 127–128 (Sellers confirming that Coleman was sober, unarmed, and did not resist arrest).[4]

And as to Sellers's generalized concern about searching a car alone with an uncuffed traffic stop detainee nearby: The clearly established caselaw discussed above makes clear that such a generic concern does not satisfy Sellers's Fourth Amendment burden of articulating *Coleman's* threat to his safety. But in any event, Sellers *did not even search Coleman's car while the two were alone*; he searched only her purse in that time, knowing that other officers would arrive, at which point even his car search would not be alone with Coleman. Doc. 94-2 at 101–102, 112–113. Not even Sellers has posited that searching Coleman's purse justified

---

[4] Coleman disagrees that she acted "heightened" or "excited"; she maintains that she was calm, and that her demeanor was no different during the un-recorded portion of the stop than it was during the recorded portion, which shows a crying but calm Coleman. Doc. 94-1 ¶¶ 7, 11–14, 25. But even under Sellers's telling, the handcuffing was unconstitutional. Whatever "heightened" or "excited" might mean in his recollection, Sellers admits that Coleman never behaved "dangerously" or "threateningly"—the sole and dispositive material fact as to the unconstitutionality of her handcuffing.

handcuffing her, even under his (obviously wrong) understanding of the safety rationale and the reasonableness inquiry with respect to searching her car.[5]

**4.** In short, even under a qualified immunity analysis, Sellers's initial handcuffing of Coleman was easily and obviously a clearly established Fourth Amendment violation. The Court is not tasked with determining whether prior cases were factually similar enough to determine whether Sellers could have reasonably believed Coleman posed a threat to safety or investigation—because Sellers admits that she did *not* pose such a threat, even while they were alone and unrecorded. Given that admission, there is no "hazy border" between constitutional and unconstitutional handcuffing here; every reasonable officer should have known that Sellers's baseless handcuffing violated the Fourth Amendment. *Gray*, 458 F.3d at 1307. So Coleman is entitled to summary judgment against Sellers as to the initial period of handcuffing.

---

[5] In their prior motion, Defendants seemed to lean on the constitutionality of the car search to support Coleman's handcuffing. Doc. 53 at 7–9. But that misses the point. Even if the search was valid (which is not an issue before the Court), handcuffing Coleman required more. Any effort by Defendants here to conflate a valid roadside car search upon suspicion of marijuana with roadside handcuffing based solely on that suspicion would eviscerate the Eleventh Circuit's repeated admonition "that officers must justify the use of handcuffs with some legitimate rationale above and beyond the existence of mere reasonable suspicion" of a crime. *Harris*, 2014 WL 129040, at *4 (citations omitted).

**B.      All three Defendants violated clearly established Fourth Amendment law by keeping Coleman handcuffed without any articulable, individualized threat to safety or investigation.**

**1.** The same clearly established caselaw discussed above (*Acosta*, *Gray*, *Harris*, and *Barfield*, pp. 11, 14) makes obvious that Coleman is also entitled to summary judgment against all three Defendants for her continued handcuffing once Ragsdale arrived and once Moses arrived. As with the initial handcuffing period, it was clearly established that this continued handcuffing was unconstitutional. Indeed, for three reasons, this is an even easier and more straightforward inquiry than the one discussed above as to Sellers's initial handcuffing period (which itself is a clear candidate for summary judgment in Coleman's favor).

First, just like Sellers as to the initial period, all three Defendants admit that Coleman never behaved in a "dangerous" or "threatening" way at any point after Ragsdale or Moses arrived. Doc. 94-2 at 105–107, 110; Doc. 94-5 at 78–80; Doc. 94-6 at 75–76. That lack of danger or threat is, of course, the sole material fact as to the unconstitutionality of Coleman's handcuffing. *Gray*, 458 F.3d at 1305–07. It is undisputed and dispositive.

Second, the two bodycam videos that thoroughly recorded this part of the traffic stop—including Coleman's conduct and her interactions with the officers—speak for themselves in confirming all three Defendants' admissions that Coleman posed no danger or threat. Doc. 94-4 (Exs. 5 and 6 to Sellers Dep., Ragsdale and

17

Moses bodycam videos). Indeed, the videos would flatly contradict any effort to suddenly renege on those admissions going forward or to create a fact dispute on the issue. *Scott*, 550 U.S. at 380–81.

Third, once Ragsdale arrived, even Sellers's generic (and inadequate) safety rationale—based on his intention to search Coleman's car with his back to her—entirely dissipated. One officer could search and the other could monitor Coleman. Yet Defendants kept Coleman handcuffed not only once Ragsdale arrived, but once Moses arrived too. Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 00:01–14:30; Doc. 94-4 (Ex. 6 to Sellers Dep., Moses bodycam video) at 00:01–06:30. It is "obvious" that that entire handcuffing period violated "well settled" Fourth Amendment law because there was "no indication of a potential threat to anyone's safety" posed by the small, cooperative Coleman—whose movement was monitored by at least one much larger, armed officer even while her car was being searched. *Gray*, 458 F.3d at 1306–07.

**2.** In a post hoc attempt to justify keeping Coleman handcuffed, Defendants may repeat two deposition assertions. But those post hoc justifications (and, frankly, any others they might suddenly conceive) have no bearing on the issues—because Defendants dispositively admit that Coleman was not dangerous or threatening, and the videos independently and irrefutably show the same.

a. First, Moses suggested at deposition that Coleman acted "belligerent"—which he defined as "boisterous and getting upset to the point where sometimes she'd get mad" or "under the influence of something." Doc. 94-6 at 76–77. But even that did not cause him to renege on his admission that she was never dangerous or threatening; indeed, Moses explained that he did not mean Coleman was violent or even unable to drive. Doc. 94-6 at 76, 82. Regardless, nearly seventy minutes of bodycam recording "blatantly contradict" any suggestion of belligerence, so Moses's "utterly discredited" assertion does not stand in the way of summary judgment for Coleman. *Scott*, 550 U.S. at 380; *see* Doc. 94-4 (Exs. 5 and 6 to Sellers Dep., Ragsdale and Moses bodycam videos).

b. Second, Sellers suggested at deposition that Coleman's pacing might be "unsafe"—but then he admitted that uncuffing her would have no effect on her ability to pace. Doc. 94-2 at 105–106, 110–111. At one point, Ragsdale asked the downtrodden Coleman to stop pacing, but he relented once Coleman explained, "I kinda can't; I kinda got anxiety a little bit." Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 04:20–05:20. In any event, all three Defendants' decision to keep Coleman handcuffed preceded any such concerns, and it did not cause any Defendant to renege on their bodycam-verified testimony that Coleman was never dangerous or threatening—which is all that matters.

**3.** As with Sellers's initial handcuffing period, this is an easy case for Coleman even under the qualified immunity standard. Again, the Court is not asked to decide whether the facts exist in some "hazy border" between a reasonable or an unreasonable belief that Coleman posed a threat to safety or investigation. *Gray*, 458 F.3d at 1307. Rather, it is *admitted*, undisputed, and shown by video that Coleman was not a danger or a threat to the three officers, to herself, or to any investigation at any point. Yet they kept her handcuffed anyway. She is entitled to summary judgment against all three of them for that "obvious[ly]" unconstitutional handcuffing. *Id.* at 1306–07. Again here, the record bears out why Judge Proctor denied Defendants qualified immunity in the first place: no stated or shown "reason to believe [Coleman] posed a threat in any way." *Coleman*, 637 F. Supp. 3d at 1299.

> **C.  All three Defendants violated clearly established Fourth Amendment law by towing Coleman's car after confirming that she was not under the influence and could lawfully and safely drive it away.**

**1.** "The right to be free from warrantless seizures of personal property, absent an applicable exception," has been "clearly established to the point of obvious clarity" for years. *Crocker*, 886 F.3d at 1138; *see United States v. Virden*, 488 F.3d 1317, 1321 (11th Cir. 2007) (applying this rule to car seizure). Defendants bear the burden of demonstrating any exception to this well-established rule. *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002).

In the context of car towing, a "community caretaking" exception may apply—but only under certain well-settled circumstances known to every reasonable officer. It may be incident to the driver's arrest, or it may be because the driver cannot lawfully and safely drive the car away for some other reason. *South Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976). As recognized by Judge Proctor, it is clearly established that this doctrine extends to arrests only "[w]hen a driver is custodially arrested." *Coleman*, 637 F. Supp. 3d at 1299–1300 (citing *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992); *Opperman*, 428 U.S. at 369). "Without question, a person who is subject only to a non-custodial arrest may not have his property seized on the basis of that same arrest. Absent some extenuating circumstances, such a seizure would be unreasonable and in violation of the Fourth Amendment." *Id.* at 1300 (quoting *Morton v. State*, 452 So. 2d 1361, 1364 (Ala. Crim. App. 1984), *overruled on other grounds by Cannon v. State*, 601 So. 2d 1112 (Ala. Crim. App. 1992)).

That all makes sense: Unless a released individual is otherwise unable to lawfully and safely drive (e.g., for lack of a license or insurance), the community caretaking exception's entire "public safety" justification disappears. *Opperman*, 428 U.S. at 368.

**2.** Defendants all violated that clearly established Fourth Amendment caselaw when they signed off on the towing of Coleman's car. To carry their burden of

establishing a Fourth Amendment exception, "incident to arrest" is all the officers have invoked. But it did not apply because Coleman was not custodially arrested, and no extenuating circumstances existed. Any attempt at revisionist history to suddenly invoke a freestanding public safety rationale cannot overcome one simple fact: Coleman could lawfully and safely drive her car away, as confirmed by Defendants' own unambiguous and repeated assessments of her sobriety.

a. Defendants admit that they towed Coleman's car *only* on the belief that an "incident to arrest" exception applied. Doc. 94-2 at 202–206; Doc. 94-5 at 106–107; Doc. 94-6 at 83–86. But—as documented in Defendants' written report, Coleman's records, and Defendants' bodycam videos—the "Sober," licensed, registered, and insured Coleman was "Released" without being taken to jail or any other custodial setting. Doc. 94-2 at 256–257; Doc. 94-4 (Ex. 6 to Sellers Dep., Moses bodycam video) at 33:45–34:15 (releasing Coleman to her boyfriend); Doc. 94-1 ¶ 1. In these circumstances, towing the released Coleman's car violated clearly established law. Per Judge Proctor, it violated the admonitions of the Supreme Court, the Eleventh Circuit, and the Alabama Court of Criminal appeals, which premise an arrest-based community caretaking rationale on a *custodial* arrest. *Coleman* 637 F. Supp. 3d at 1299–1300 (citing *Opperman*, *Sammons*, and *Morton*). It is "[w]ithout question" that "a person who is subject only to a non-custodial arrest may not have [her] property

seized on the basis of that same arrest." *Id.* at 1300 (quoting *Morton*, 452 So. 2d at 1364).

Federal appellate caselaw from around the country removes any doubt that whatever difficult questions may exist at the margins of car towing decisions, no reasonable officer could think that any Fourth Amendment exception countenances towing the car of a sober, lawful, released driver just because they receive a citation. *United States v. Sanders*, 796 F.3d 1241, 1250 (10th Cir. 2015) ("even if the police were to adopt a standardized policy of impounding all vehicles whose owners receive traffic citations," the impoundments would be "unreasonable" under the Fourth Amendment); *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005) ("A driver's arrest, or citation for a non-criminal traffic violation . . . is not relevant [to impoundment] except insofar as it affects the driver's ability to remove the vehicle from a location at which it jeopardizes the public safety or is at risk of loss."); *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir. 1996) ("The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets."). As Judge Haikala put it: "In every appellate decision that this Court located concerning policies akin to [Tuscaloosa's] 'always tow' policy, the court of appeals held that the impoundment practice or policy violated the Fourth Amendment because the practice/policy was unreasonable in that

23

it was not sufficiently related to caretaking of public streets or the vehicle itself." *United States v. Curry*, 2019 WL 2325946, at *13 (N.D. Ala. May 31, 2019).[6]

b. And here, no "extenuating circumstances" existed. *Coleman*, 637 F. Supp. 3d at 1300 (quoting *Morton*, 452 So. 2d at 1364). Defendants may point to Covid-19 precautions that kept them from custodially arresting the sober Coleman for the misdemeanor marijuana citation they wrote her. But that was not an extenuating circumstance, because those precautions would not have stood in the way of arresting Coleman *if* she had been under the influence. Doc. 94-2 at 178–180. This was not a situation where the pandemic required taking an inebriated person's car even though she could not be taken to jail—because there was no inebriated person, just one fully capable of lawfully continuing her trip to her birthday breakfast.

Accordingly, any effort by Defendants to reprise their prior losing argument that they towed Coleman's car to err on the side of caution and should be given the benefit of a doubt under the community caretaking exception's general public safety rationale must be rejected as revisionist history. Indeed, as explained by Judge

---

[6] *See also Redlich v. Leen*, 2016 WL 3670575, at *14 (S.D. Fla. May 20, 2016) (report and recommendation) ("Based on the allegations of the Complaint that the owner and another passenger were present, willing and able to drive the vehicle, the necessity of impoundment may not exist."); *United States v. Bridges*, 245 F. Supp. 2d 1034, 1037 (S.D. Iowa 2003) (holding that impoundment violated the Fourth Amendment because "Defendant was only given a citation; there was no arrest, and he was not in police custody," so "there is no indication what community caretaking or public safety function the impoundment . . . served"); *United States v. Goodrich*, 183 F. Supp. 2d 135, 139 (D. Mass. 2001) ("A review of the caselaw supports the view that what distinguishes a permissible from an impermissible seizure of a legally parked car is whether the police had reason to believe that someone was available who could be entrusted with the car.").

Proctor, any effort to suddenly claim that Coleman's sobriety tests were "inconclusive" or that they warranted towing out of "caution" would be "flatly contradict[ed]" by Defendants' own bodycam-recorded sobriety assessments. *Coleman*, 637 F. Supp. 3d at 1300.

In sum: On camera, in written reports, and at deposition, all three Defendants have unequivocally and rightly disclaimed the notion that Coleman's car needed to be towed because she could not lawfully or safely drive it away. *E.g.*, Doc. 94-4 (Ex. 5 to Sellers Dep., Ragsdale bodycam video) at 20:25–20:37 ("I don't believe you're going to be under the influence to operate your vehicle safely."); Doc. 94-2 at 257 ("she was safe at that point in time to operate a motor vehicle safely"); Doc. 94-2 at 202–206; Doc. 94-5 at 106–107; Doc. 94-6 at 83–86. And she had all the paperwork—license, registration, and insurance—to do so lawfully. Doc. 94-1 ¶ 1. That all takes the community caretaking rationale for towing Coleman's car off the table. And it makes this case easy.

**3.** In short, Defendants' only justification for towing Coleman's car—incident to a non-custodial arrest—was squarely prohibited by clearly established law, so Coleman is entitled to summary judgment against all three Defendants. As already held by Judge Proctor, qualified immunity does not save Defendants on this issue, because there is no dispute as to whether Coleman was able to lawfully and safely drive (she was) or whether she was custodially arrested (she was not). In these

circumstances, every possible source of clearly established law—binding precedent, obviousness, a consensus of persuasive authority—put Defendants on notice that towing Coleman's car violated the Fourth Amendment. *See District of Columbia v. Wesby*, 583 U.S. 48, 62–64 (2018); *Taylor v. Riojas*, 592 U.S. 7, 7–10 (2020) (per curiam). As explained by then-Attorney General of Alabama William Pryor: "[I]n instances of non-custodial arrests . . . a person's vehicle cannot be seized and . . . the person, after signing the traffic ticket, must be allowed to proceed." Ala. Op. Att'y Gen. No. 2002-032, 2001 WL 1421631, at *2 (Oct. 18, 2001).

## II.   Coleman is entitled to partial summary judgment as to damages.

Defendants' clearly established violations of Coleman's Fourth Amendment rights—by handcuffing her and by towing her car—caused her both sum-certain economic injuries and physical, emotional, and dignitary injuries. Doc. 94-1 ¶¶ 24–25. The sum-certain damages amounts should be awarded via summary judgment, with the remaining damages amounts to be decided at trial.

The sum-certain amounts are the $175 Coleman paid Brookside and the $160 she paid Jett's Towing to get back the car that Defendants' unconstitutionally towed, totaling $335. Doc. 94-1 ¶ 24. Coleman's documented payment of those amounts for the release of her car is undisputed, so she is entitled to summary judgment as to those damages amounts. *See, e.g.*, *Synovus Bank v. Hyche*, 2014 WL 3353261, at *9

(N.D. Ala. July 9, 2014) (awarding undisputed sum-certain damages amounts via summary judgment).

As to Coleman's physical, emotional, and dignitary injuries: Her undisputed testimony establishes that she is entitled to summary judgment that she suffered those injuries as a result of Defendants' constitutional violations. Doc. 94-1 ¶ 25. But the amount of damages to be awarded for those injuries may reasonably be in dispute, so it should be decided at trial.

## Conclusion

The Court should enter summary judgment for Coleman on Count 5 of the First Amended Complaint as to liability and the amount of sum-certain damages. The Court should set trial as to the amount of remaining damages.

December 28, 2023

William M. Dawson
DAWSON LAW OFFICE
1736 Oxmoor Road, #101
Birmingham, AL 35209
Phone: (205) 795-3512
Email: bill@billdawsonlaw.com

Respectfully submitted,

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili
(DC Bar No. 1601246)*
Samuel B. Gedge
(VA Bar No. 80387)*
Suranjan Sen (TN Bar No. 038830)*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
Email: jtsitsuashvili@ij.org;
sgedge@ij.org; ssen@ij.org

William R. Maurer
(WA Bar No. 25451)*
INSTITUTE FOR JUSTICE
600 University Street, Suite 1730
Seattle, WA 98101
Phone: (206) 957-1300
Email: wmaurer@ij.org

*Admitted pro hac vice

## Certificate of Service

I certify that on December 28, 2023, I electronically filed the foregoing using

the CM/ECF system, which sends notification of the filing to all counsel of record.

s/ Jaba Tsitsuashvili
*Counsel for Plaintiff*

28