FILED

2024 Jul-10  PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRITTANY COLEMAN;** *et al.*, **on behalf of themselves and all others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No.: 2:22-cv-423-AMM** |
| **THE TOWN OF BROOKSIDE, ALABAMA;** *et al.*, | ) ) ) ) | |
| **Defendants.** | ) | |

## ORDER

This case is before the court on the motion for partial summary judgment as to Count Five of the First Amended Class Action Complaint filed by Plaintiff Brittany Coleman. Doc. 96. For the reasons explained below, the motion is **DENIED**.

## I.     BACKGROUND

On April 4, 2022, Plaintiffs Brandon Jones, Chekeithia Grant, Alexis Thomas, and Ms. Coleman filed a class action complaint against Defendants the Town of Brookside ("Brookside"), Jett's Towing, Inc. ("Jett's Towing"), Officer Marcus Sellers, and two other unnamed officers. Doc. 1. On June 17, 2022, the plaintiffs filed an amended and operative class action complaint against Brookside, Jett's

Towing, Officer Sellers, Officer Maresha Moses, and Officer Anthony Ragsdale. Doc. 32.

Count Five "is brought on behalf of . . . [Ms.] Coleman, individually, against" Officers Sellers, Moses, and Ragsdale for violating the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983. *Id*. ¶ 419. Specifically, Ms. Coleman alleges that Officer Sellers violated the Fourth Amendment by handcuffing her after a traffic stop and seizing, towing, and impounding her car. *Id*. ¶ 420. Ms. Coleman alleges that Officers Moses and Ragsdale violated the Fourth Amendment by keeping her in handcuffs after they arrived at the scene and seizing, towing, and impounding her car. *Id*. ¶ 421.

On July 22, 2022, before the case was reassigned to the undersigned, Officer Sellers, Moses, and Ragsdale moved for summary judgment on Count Five. Doc. 52. The court denied the motion, holding that "a reasonable jury could find that Defendants violated [Ms. Coleman's] clearly established rights when they handcuffed [Ms. Coleman] and towed her car without proper justification." Doc. 66 at 5. Specifically, the court held that "because Defendants have not put forth any explanation or justification for handcuffing [Ms. Coleman], summary judgment is not appropriate." *Id*. The court pointed out that "the body camera footage Defendants have provided begins after Officer Sellers handcuffed [Ms. Coleman] and thus does not depict the circumstances leading up to the handcuffing," and that "[o]n this

2

sparse evidentiary record, Defendants are not entitled to summary judgment." *Id*. at 10. The court likewise held that "there is a genuine factual dispute as to whether towing [Ms. Coleman's] car was reasonable under the circumstances, and thus summary judgment is also not appropriate for this claim." *Id*.

The case was reassigned to the undersigned on December 7, 2022. Doc. 70. On December 28, 2023, Ms. Coleman filed a motion for partial summary judgment on Count Five. Doc. 96. The motion is fully briefed. *See* Docs. 101, 109.

## II.   LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus*, *LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (cleaned up). A material fact is in "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (cleaned up).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Cntys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (cleaned up). "In other words, the moving party must show that, on all the essential elements of its

case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Id*. "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id*. (cleaned up).

In deciding a motion for summary judgment, the court "must view the evidence in the light most favorable to the non-movant." *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). The court does not "weigh conflicting evidence or make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016). But when material facts are captured by video-camera footage, the court "view[s] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Courts may "not . . . rel[y]" on the parties' testimony when it "is so utterly discredited by the record that no reasonable jury could have believed him." *Id*. at 380.

## III. DISCUSSION

"A successful section 1983 action requires that the plaintiff show she was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cnty.*, 103 F.3d 1510, 1513 (11th Cir. 1997). "Once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal rights

4

allegedly violated were clearly established." *Ireland v. Prummell*, 53 F.4th 1274, 1297 (11th Cir. 2022) (cleaned up). Officers Sellers, Ragsdale, and Moses have raised qualified immunity as a defense. *See* Doc. 72 at 3; Doc. 73 at 3; Doc. 74 at 3.

Ms. Coleman argues that "[a]ll three actions—the initial handcuffing, the continued handcuffing, and the towing—clearly violated established Fourth Amendment law" and that she is "entitled to summary judgment on Count 5 . . . as to Defendants' liability and as to the sum-certain portion of [her] damages caused by Defendants' baseless intrusions on her body and her property." Doc. 96 at 7–8. As explained below, Ms. Coleman has not made the required affirmative showing that, viewing the evidence in the light most favorable to the officers and accepting their evidence for purposes of summary judgment, no reasonable jury could find for the officers at trial on all the elements for which she bears the burden of proof.

### A. The Initial and Continued Handcuffing Claims

"[D]uring an investigatory stop, an officer can . . . handcuff a detainee when the officer reasonably believes that the detainee presents a potential threat to safety." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1305–06 (11th Cir. 2006). In *Gray*, the defendant-officer "candidly admitted that he handcuffed [the nine-year-old plaintiff] to persuade her to get rid of her disrespectful attitude and to impress upon her the serious nature of committing crimes." *Id*. at 1306. The court held that the "handcuffing . . . was not reasonably related to the scope of the circumstances that

justified the initial investigatory stop" and that it was "excessively intrusive given [the plaintiff's] young age and the fact that it was not done to protect anyone's safety." *Id*. Ms. Coleman relies on *Gray* to argue that the officers' initial and continued handcuffing obviously violated her Fourth Amendment rights.[1] *See* Doc. 96 at 19, 24, 26.

Unlike when Officers Sellers, Moses, and Ragsdale moved for summary judgment in July 2022, the record now contains the deposition testimony of Officer Sellers that he told Ms. Coleman that he was handcuffing her for "her safety and [his safety]." Doc. 94-7 at Depo. 94:4–10. According to Officer Sellers, Ms. Coleman did not behave in a "dangerous" or "threatening" way towards him. *Id*. at Depo. 97:5–12. But Officer Sellers also testified that when determining "whether handcuffing is necessary for officer or other persons' safety," he considers not only "the behavior of the individual, if they pose a safety threat as far as aggression," but also "the odor of marijuana coming from the vehicle, [or] odor of alcohol coming

---

[1] Ms. Coleman cites *United States v. Acosta*, 363 F.3d 1141, 1146–47 (11th Cir. 2004) to argue that "[i]t is clearly established that handcuffing as a safety measure requires reasonable suspicion not only of a potential crime, but an articulable and objectively reasonable belief that the suspect is potentially dangerous." Doc. 96 at 17 (cleaned up). To be clear, *Acosta* sets out "four non-exclusive factors" that courts consider in "drawing the line between a *Terry* stop and an arrest." 363 F.3d at 1146; *see also id*. at 1145 ("There is a difference between an investigative stop of limited duration for which reasonable suspicion is enough, and a detention that amounts to an arrest for which probable cause is required."). *Acosta* discusses handcuffing in the context of holding that "[w]hile restriction on freedom of movement is a factor to be taken into account in determining whether a person is under arrest, it alone is not sufficient to transform a *Terry* stop into a *de facto* arrest." *Id*. at 1147. Ms. Coleman does not apply the four *Acosta* factors or argue that her traffic stop turned into an arrest without probable cause. *See* Doc. 96.

from the vehicle." *Id*. at Depo. 96:4–20. Officer Sellers further testified that as "the only officer on the scene at the time . . . [he] [didn't] want to leave [Ms. Coleman] uncuffed while [he was] searching with [his] back turned." *Id*. at Depo. 98:3–7.

Because Officer Sellers was not wearing a body-camera at the time, there is no video footage of his interactions with Ms. Coleman before the other officers arrived. *See* Doc. 94-7 at Depo. 87:22–88:1. Nevertheless, it is undisputed that Officer Sellers smelled marijuana when he approached Ms. Coleman's vehicle and that Ms. Coleman told him she had smoked three joints earlier in the day. *See id*. at Depo. 135:14–137:11; Doc. 119-1 at 9–10, Depo. 31:23–33:6. Ms. Coleman argues—without citing any binding authority—that "[t]he mere odor of marijuana . . . especially when faced with a cooperative suspect like [herself]" does not substantiate a safety rationale. Doc. 96 at 20.

In the absence of controlling precedent, whether Officer Sellers reasonably believed that Ms. Coleman presented a potential threat to safety is a fact question for the jury. Officer Sellers's testimony that Ms. Coleman did not behave in a dangerous or threatening way towards him does not "end the inquiry" as Ms. Coleman argues, *see* Doc. 96 at 18, because Officer Sellers has testified that there are safety considerations other than "the behavior of the individual, [and] if they pose a safety threat as far as aggression," Doc. 94-7 at Depo. 96:4–20. The court may not make credibility determinations or weigh the evidence at summary judgment.

7

As for the continued handcuffing after Officers Ragsdale and Moses arrived, Officer Moses testified that Ms. Coleman's demeanor "was not violent, but . . . was belligerent, as under the influence of something" and that she became "upset to the point where sometimes she'd get mad." Doc. 94-6 at Depo. 75:19–76:14. Officer Moses also testified that he believed Officer Sellers handcuffed Ms. Coleman "[t]o be detained for investigation of narcotics." *Id*. at Depo. 74:8–11. Video footages from Officers Ragsdale and Moses's body-cameras show Officers Sellers and Ragsdale conducting a search of Ms. Coleman's purse and vehicle. *See* Doc. 95 (notice of conventional filing of Exhibits 5 and 6, corresponding to the video footages of Officers Ragsdale and Moses's body-cameras). Ms. Coleman was released from her handcuffs around 14 minutes and 30 seconds after Officer Ragsdale arrived at the scene, and around 6 minutes and 30 seconds after Officer Moses arrived at the scene. *See id*.

Ms. Coleman argues that "nearly seventy minutes of bodycam recording 'blatantly contradict' any suggestion of belligerence, so [Officer] Moses's 'utterly discredited' assertion does not stand in the way of summary judgment for [her]." Doc. 96 at 25 (quoting *Scott,* 550 U.S. at 380). But the video footages do not establish Officer Moses's testimony about Ms. Coleman's demeanor to be "visible fiction" that no reasonable jury could credit. *Scott*, 550 U.S. at 381. Nor do they establish that the continued handcuffing of Ms. Coleman was unreasonable as a matter of law.

8

Whether the officers reasonably believed that Ms. Coleman continued to present a potential threat to safety under the totality of circumstances is another fact question for the jury.

Indeed, the court denied the officers' earlier motion for summary judgment on Ms. Coleman's handcuffing claim because of "genuine factual disputes over whether Defendants acted reasonably when handcuffing [Ms. Coleman]." Doc. 66 at 8. The court did not hold then and declines to hold now that handcuffing Ms. Coleman was unreasonable as a matter of law. Accordingly, Ms. Coleman's motion for summary judgment on her initial and continued handcuffing claims is **DENIED**.

## B. The Towing Claim

"An officer has the authority to impound a car if his decision to impound it is made in good faith, based upon standard criteria, and not solely based upon suspicion of criminal activity." *United States v. Isaac*, 987 F.3d 980, 987 (11th Cir. 2021) (cleaned up). Genuine disputes of material fact preclude summary judgment in favor of Ms. Coleman on her towing claim.

At the time of impounding Ms. Coleman's vehicle, Officer Sellers recorded that the reason for the impoundment was "arrest[]." Doc. 96-7 at 151:17–152:5. Specifically, Officer Sellers testified that he "impounded [Ms. Coleman's] vehicle incident to [her] arrest for possession of marijuana." *Id*. at Depo. 200:4–6. But Ms. Coleman was not taken to jail. *Id*. at Depo. 179:8–10. According to Officer Sellers,

9

"Governor Ivey had sent out a memorandum stating [that] unless it was a felony, [arrestees] couldn't be incarcerated" because of COVID. *Id*. at Depo. 174:2–4. Officer Sellers also testified that he believed Ms. Coleman to be "partially" impaired even though "she didn't appear to be intoxicated to the point . . . where she couldn't operate [a vehicle]." *Id*. at Depo: 152:13–153:3.

On the officers' earlier motion for summary judgment, the court quoted *Morton v. State*, 452 So. 2d 1361, 1364 (Ala. Crim. App. 1984) and held that "[w]ithout question, a person who is subject only to a non-custodial arrest may not have his property seized on the basis of that same arrest." Doc. 66 at 10–11 (cleaned up). Relying on *Morton*, the court rejected the officers' argument that they lawfully impounded Ms. Coleman's vehicle as incident to arrest. *Id*. at 11. The court also "resolv[ed] . . . reasonable doubts and inferences in the non-movant's favor" and rejected the officers' argument that they impounded the vehicle "because [Ms. Coleman] was under the influence of marijuana." *Id*. Ms. Coleman cites the court's memorandum opinion on the officers' motion for summary judgment to argue that the towing of her car violated clearly established Fourth Amendment law. Doc. 96 at 26–32.

Ms. Coleman's reliance is misplaced, because the case is now before the court on her motion for partial summary judgment, on issues for which she bears the burden of proof at trial. And controlling precedent requires the court to examine

whether decision to impound was "made in good faith, based upon standard criteria, and not solely based upon suspicion of criminal activity."[2] *Isaac*, 987 F.3d at 987. Whether Officers Sellers, Ragsdale, and Moses made the decision to impound Ms. Coleman's vehicle "in good faith" is a question of the officers' state of mind, which presents a question of fact for the jury. *See United States v. F.E.B. Corp.*, 52 F.4th 916, 927 (11th Cir. 2022) ("As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial.") (cleaned up). The record does not allow the court to find, as a matter of law, that the officers lacked good faith when they decided to impound Ms. Coleman's car as incident to arrest or based on concerns about "partial" impairment. Accordingly, Ms. Coleman's motion for summary judgment on her towing claim is **DENIED**.

## C. Photograph Exhibits of Ms. Coleman Filed by Defendants

Ms. Coleman states in her reply brief that "[t]he [c]ourt may wish to strike or otherwise address [d]efendants' submission of revealing photographs of [herself]." Doc. 109 at 16; *see also* Docs. 119-2, 119-3, 119-4, 119-5. Ms. Coleman asserts that "[b]ecause the photos are not plausibly relevant to any issue before the [c]ourt, the [c]ourt is well within its discretion to strike, seal, or otherwise address the gratuitous submissions." Doc. 109 at 16.

---

[2] To the extent that the court previously relied on *Morton*, a non-binding state court case, a district court "has the authority to revisit any of its orders so long as final judgment has not yet been entered." *In re Hubbard*, 803 F.3d 1298, 1315 (11th Cir. 2015).

According to the officers, the over thirty photographs of Ms. Coleman's "various costumes [and] state of undress" that they filed as exhibits "depict [Ms.] Coleman as someone who a reasonable juror could conclude is not shy or easily embarrassed." Doc. 101 at 18. The court questions the reasoning and relevance of such an argument, in the light of the fact that Ms. Coleman moved specifically for summary judgment as to the officers' liability under Count Five and the sum-certain portion of her alleged damages. Doc. 96 at 8. Ms. Coleman did not move for summary judgment on her "physical, emotional, and dignitary injuries," arguing that those amounts should be "decided at trial" instead. *Id*. at 32. Ms. Coleman's statement that defendants "should not plaster partially nude photos of civil rights plaintiffs on the court docket" is well taken, Doc. 109 at 18, and the court **STRIKES** the photographs, Docs. 119-2, 119-3, 119-4, 119-5, which it did not consider in any event.

## IV.   CONCLUSION

For the reasons explained above, Ms. Coleman's motion for partial summary judgment is **DENIED**.

**DONE** and **ORDERED** this 10th day of July, 2024.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE