FILED
2026 Feb-06  PM 07:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT C

*Motion for Preliminary Approval of
Class Settlement Agreement*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

BRITTANY COLEMAN, et al.,

        Plaintiffs,

        v.

THE TOWN OF BROOKSIDE,
ALABAMA, et al.,

        Defendants.

2:22-cv-423-AMM
(putative class action)

## PROPOSED CLASS ACTION SETTLEMENT PURSUANT TO

## FEDERAL RULES OF CIVIL PROCEDURE 23(b)(2), 23(b)(3), AND 23(e)

# Table of Contents

Introduction ........................................................................................1

Jurisdiction and Venue.......................................................................3

Definitions...........................................................................................4

Preliminary Approval Plan ................................................................7

Certification of the Towing Class ......................................................8

Certification of the Charging Class....................................................9

Damages for the Towing Class .........................................................10

Damages for the Charging Class.......................................................10

Systemic Relief for the Towing Class ..............................................11

Systemic Relief for the Charging Class ...........................................13

Attorneys' Fees .................................................................................23

Claims Administrator........................................................................24

Administration Costs.........................................................................25

Establishment of Escrow Account ....................................................25

Notice Plan ........................................................................................27

Claim Form Submissions ..................................................................30

Processing and Reviewing Claim Form Submissions .......................37

Exclusions .........................................................................................38

Objections ..........................................................................................43

Final Approval Plan ..........................................................................44

Distribution of Class Funds ..............................................................44

Distribution of Unclaimed Class Funds............................................45

Releases..............................................................................................45

Additional Settlement Provisions .....................................................46

Plaintiffs Brittany Coleman, Brandon Jones, Chekeithia Grant, and Alexis Thomas (the "Named Plaintiffs"), on behalf of themselves and all others similarly situated (the "Classes"), and Defendant The Town of Brookside ("Brookside") (collectively, the "Parties") intend to be bound by the terms of this Proposed Class Action Settlement of Counts 1–4 of the First Amended Class Action Complaint in this case (the "Settlement") and respectfully submit the Settlement to the Court for approval pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(e).

## Introduction

1.    The Named Plaintiffs brought this class action on April 4, 2022 and filed the operative First Amended Class Action Complaint (the "Complaint") on June 17, 2022. The Complaint challenges the constitutionality, under the Due Process Clause of the Fourteenth Amendment, of specific policies and practices by Brookside and its vehicle-towing provider, Jett's Towing Inc.

2.    Count 1 alleges that Brookside and Jett's Towing implemented a system of towing and impounding cars for the institutional and personal profit and benefit of Brookside, its departments and officials, and Jett's Towing, in violation of the Due Process Clause of the Fourteenth Amendment. Relatedly, Count 4 alleges that the towing system lacks adequate procedural safeguards, in violation of the Due Process Clause of the Fourteenth Amendment. Counts 1 and 4 seek monetary and systemic relief on behalf of the Named Plaintiffs and all others similarly situated.

1

3.    Counts 2 and 3 allege that Brookside implemented a system of charging, prosecuting, and adjudicating municipal court cases for the institutional and personal profit and benefit of Brookside and its departments and officials, in violation of the Due Process Clause of the Fourteenth Amendment. Counts 2 and 3 seek monetary and systemic relief on behalf of the Named Plaintiffs and all others similarly situated.

4.    Count 5 of the Complaint is an individual Fourth Amendment claim for damages by Named Plaintiff Coleman against three individual Brookside police officers. That claim is expected to be settled separately from the class claims addressed herein, on the condition of final approval of this Settlement. That individual settlement will encompass the Fourth Amendment harms alleged by Ms. Coleman arising from her handcuffing, which are facts separate and distinct from the facts supporting the due-process claims pleaded on behalf of the Classes and addressed by this Settlement.

5.    The Named Plaintiffs and Brookside have engaged in extensive discovery, including production of tens of thousands of pages of relevant documents, depositions of current and former Brookside officials, and depositions of the Named Plaintiffs.

6.    The Named Plaintiffs have asserted that the policies and practices challenged in Counts 1–4 of the Complaint, and as demonstrated in discovery,

prioritized generating revenue for the Brookside police department's expansion, led to a significant increase in traffic stops, vehicle tows, and citations, led to a significant increase in the revenue collected from those stops, and raise serious constitutional concerns under the Due Process Clause of the Fourteenth Amendment.

7.      The Named Plaintiffs and Brookside have negotiated this Settlement in good faith and at arm's length—including with the mediation assistance of Northern District of Alabama Magistrate Judge Staci Cornelius—and submit that it is fair, reasonable, adequate, and in the public interest.

8.      The Named Plaintiffs and Brookside have reached this Settlement for monetary and systemic relief on behalf of two classes: the Towing Class and the Charging Class (each defined below).

9.      The Named Plaintiffs and Brookside respectfully request that the Court preliminarily approve this Settlement, preliminarily certify the Towing Class and the Charging Class, preliminarily appoint Named Plaintiffs and their counsel as class representatives, and approve the Parties' processes for final approval, final class certification, and final judgment (including retention of jurisdiction to enforce the terms of the Settlement), as detailed below.

## Jurisdiction and Venue

10.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343.

11.      Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1), (b)(2).

## Definitions

12.    "Administration Costs" means the costs and expenses incurred by the Claims Administrator in the performance of its duties pursuant to this Settlement. The Parties' agreement with the Claims Administrator is attached as Exhibit 4 to this Settlement and incorporated as if fully set forth herein.

13.    "Brookside" means the Town of Brookside and all of its past, current and future officials, representatives, officers, agents, employees, contractors, and anyone acting for, on behalf of, or at the direction of the Town of Brookside or any of its past, current, or future officials, representatives, officers, agents, employees, or contractors.

14.    "Charging Class" means the members of the class defined in ¶ 36 below who do not validly and timely request exclusion from the class under the conditions and procedures described in the Class Notice.

15.    "Charging Class Fund" means the $500,000 fund created by Brookside from which members of the Charging Class may make a claim.

16.    "Claim Form" means the Court-approved form that is required to make a claim to the Towing Class Fund and/or the Charging Class Fund, request exclusion from the Towing Class and/or the Charging Class, or object to the Settlement. The Claim Form is attached as Exhibit 2 to this Settlement.

17.    "Claims Administrator" means Angeion Group LLC. The Parties'

agreement with the Claims Administrator is attached as Exhibit 4 to this Settlement and incorporated as if fully set forth herein.

18.    "Class Counsel" means Jaba Tsitsuashvili and Sam Gedge of the Institute for Justice and William Dawson of the Dawson Law Office.

19.    "Classes" means the Towing Class and the Charging Class.

20.    "Class Notice" means the Court-approved notice that is required by Federal Rules of Civil Procedure 23(c)(2) and 23(e)(1). The Class Notice includes the Claim Form and instructions for making a claim to the Towing Class Fund and/or the Charging Class Fund, requesting exclusion from the Towing Class and/or the Charging Class, or objecting to the Settlement. The Class Notice is attached as Exhibit 1 to this Settlement.

21.    "Court" means the United States District Court for the Northern District of Alabama or United States District Court Judge Anna M. Manasco.

22.    "Effective Date" means the date of the Court's entry of the Final Approval Order, provided no objections are made to the Settlement. If objections are made to the Settlement, then the Effective Date means the later of: (a) expiration of the time to file a notice of appeal of the Final Approval Order with no such notice filed; or (b) if appeals are made to the Final Approval Order, then the earlier of the date of the appellate mandate affirming the Final Approval Order or the entry of dismissal of all such appeals. For purposes of clarity: the phrase "Settlement

Effective Date" in this agreement should be construed to mean the same thing as "Effective Date."

23.    "Escrow Account" means an account established by the Claims Administrator designated for the purpose of depositing and distributing the Towing Class Fund, the Charging Class Fund, and the $155,000 allocated to Administration Costs.

24.    "Final Approval Order" means the order of the Court providing final approval of the Settlement, entering judgment, and retaining jurisdiction to enforce the Settlement.

25.    "Parties" means the Named Plaintiffs and Brookside.

26.    "Settlement" means this Settlement and any order(s) of the Court approving or implementing it, including but not limited to class certification, preliminary approval, final approval, judgment, and retention of jurisdiction.

27.    "Towing Class" means the members of the class defined in ¶ 33 below who do not validly and timely request exclusion from the class under the conditions and procedures described in the Class Notice.

28.    "Towing Class Fund" means the $1,000,000 fund created by Brookside from which members of the Towing Class may make a claim.

29.    "Verified Towing Incident" means each instance of a vehicle towed on the orders of the Brookside Police Department following a traffic stop from March

1, 2018 to August 1, 2022.

## Preliminary Approval Plan

30.    On February 6, 2026, the Named Plaintiffs and Class Counsel will move for preliminary approval of this Settlement.

31.    The motion for preliminary approval will request that the Court enter a preliminary approval order that:

a.    Preliminarily certifies the Towing Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

b.    Preliminarily certifies the Charging Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

c.    Preliminarily appoints Brittany Coleman, Brandon Jones, and Chekeithia Grant as class representatives for the Towing Class.

d.    Preliminarily appoints Brittany Coleman, Brandon Jones, Chekeithia Grant, and Alexis Thomas as class representatives for the Charging Class.

e.    Preliminarily appoints Jaba Tsitsuashvili and Sam Gedge of the Institute for Justice and William Dawson of the Dawson Law Office as Class Counsel for the Towing Class and the Charging Class.

f.    Approves the Class Notice and Claim Form accompanying this

Settlement (attached as Exhibits 1 and 2) and orders that the

Claims Administrator send it to potential members of the Towing

Class and potential members of the Charging Class within 75

days of the preliminary approval order.

g.    Approves the Class Notice's procedures and deadline for

potential members of the Classes to submit claims for one or both

Classes, request exclusion from one or both Classes, or bring

objections to the Settlement within 120 days of the Claims

Administrator initially sending the Class Notices.

h.    Schedules the final approval hearing required by Federal Rule of

Civil Procedure 23(e)(2).

32.    Brookside shall not contest the motion for preliminary approval.

## Certification of the Towing Class

33.    The Parties agree to and propose certification of the following Towing

Class under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(e), with the

Named Plaintiffs and Class Counsel appointed to represent the Towing Class:

"All persons who, from March 1, 2018 to August 1, 2022, have paid
fees to either the Town of Brookside, Jett's Towing, Rich's Towing, or
any other towing company or service (including any combination
thereof) to secure the release of a vehicle towed on the orders of the
Brookside Police Department following a traffic stop. Excluded from
the class are: (1) all persons who have released claims against

8

Brookside in the cases listed in footnote 1[1]; (2) any person who properly executes and submits a timely exclusion request pursuant to the procedures described in ¶¶ 98–104 below."

34.    The Parties agree and propose that the Towing Class should be certified for the classwide damages in ¶ 39 below and the classwide systemic relief in ¶¶ 41–43 below.

35.    Brookside agrees to certification of the Towing Class for the limited purpose of effectuating the Settlement. If the Settlement does not become final for any reason, Brookside reserves the right to oppose certification of the Towing Class in the ensuing resumption of litigation, during which Brookside's agreement to certification of the Towing Class for purposes of the Settlement may not be cited as an admission by Brookside of the propriety of Towing Class certification.

### Certification of the Charging Class

36.    The Parties agree to and propose certification of the following Charging Class under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(e), with the Named Plaintiffs and Class Counsel appointed to represent the Charging Class:

"All persons who, from March 1, 2018 to August 1, 2022, have been charged with an offense in the Brookside Municipal Court following a

---

[1] *Witt v. Brookside*, 2:21-cv-773-AMM (N.D. Ala.); *Harris v. Brookside*, 2:21-cv-1341-AMM (N.D. Ala.); *Jones v. Brookside*, 2:22-cv-472-NAD (N.D. Ala.); *Jones v. Brookside*, 2:22-cv-298-MHH (N.D. Ala.); *Moffett v. Brookside*, 2:22-cv-255-RDP (N.D. Ala.); *Minnifield v. Brookside*, 2:22-cv-299-MHH (N.D. Ala.); *Jones v. Sellers*, 2:23-cv-364-GMB (N.D. Ala.); *Ward v. Brookside*, 2:23-cv-527-AMM (N.D. Ala.); *Griffith v. Brookside*, 2:23-cv-687-SGC (N.D. Ala.); *Wright v. Brookside*, 2:23-cv-1543-AMM (N.D. Ala.); *Wright v. Brookside*, 1-cv-2022-900890 (Jefferson Cnty., Ala. Cir. Ct.); *Brumlow v. Brookside*, 2:20-cv-650 (N.D. Ala.); *Peyton Hyatt v. Brookside* (pre-filing settlement).

traffic stop by the Brookside Police Department. Excluded from the class are: (1) all persons who have released claims against Brookside in the cases listed in footnote 1 above; (2) any person who properly executes and submits a timely exclusion request pursuant to the procedures described in ¶¶ 98–104 below."

37.    The Parties agree and propose that the Charging Class should be certified for the classwide damages in ¶ 40 below and the classwide systemic relief in ¶¶ 44–56 below.

38.    Brookside agrees to certification of the Charging Class for the limited purpose of effectuating the Settlement. If the Settlement does not become final for any reason, Brookside reserves the right to oppose certification of the Charging Class in the ensuing resumption of litigation, during which Brookside's agreement to certification of the Charging Class for purposes of the Settlement may not be cited as an admission by Brookside of the propriety of Charging Class certification.

## Damages for the Towing Class

39.    Brookside agrees to pay $1,000,000 in damages (the Towing Class Fund defined in ¶ 28 above) to the Towing Class, to be distributed as detailed in ¶¶ 89–92 below.

## Damages for the Charging Class

40.    Brookside agrees to pay $500,000 in damages (the Charging Class Fund defined in ¶ 15 above) to the Charging Class, to be distributed as detailed in ¶ 88 below.

**Systemic Relief for the Towing Class**

41.    Within 30 days of the Settlement Effective Date, Brookside shall permanently repeal the portions of its towing ordinances (Nos. 519, 527, 533) requiring a payment of money (whether designated a "fee," "restitution," or any other title) to recover any vehicle towed or impounded (or ordered towed or impounded) by Brookside. Brookside shall not reinstate any such monetary imposition for the release of a towed or impounded vehicle.

42.    For any and all vehicle tows or impounds after the Settlement Effective Date, Brookside shall not demand, require, or receive any money to secure a towed or impounded vehicle's release. Nor shall Brookside ask any towing or impounding contractor or provider to require proof of any payment to Brookside before releasing a towed or impounded vehicle.

43.    Within 30 days of the Settlement Effective Date, Brookside shall notify each member of the Towing Class who has not been excluded from the Towing Class:

> "In 2018, the Town of Brookside's police department implemented an aggressive style of policing that prioritized generating revenue for the department's expansion. That decision led to a significant increase in traffic stops, vehicle tows, and citations, as well as a significant increase in the revenue collected from those stops. The Town recognizes the policy of aggressive policing likely interfered with the Town's obligation to administer justice equally under law. The policy also undermined the public's trust in the justice system and raised serious constitutional concerns under the Due Process Clause of the Fourteenth Amendment. The Town has discontinued the policy of aggressive

11

policing. The Town's leadership – including the Town Council, Mayor, Chief of Police, and Prosecutor – apologize to the community and every person affected by the aggressive policing practice for the way it affected their faith and confidence in the judicial system. We look forward to earning your trust and confidence."

    a.    For every such recipient member of the Towing Class who at that time owes a fee or other monetary imposition related to the release of a towed or impounded vehicle, this notice shall also inform them that their outstanding amount is remitted (canceled) and considered satisfied. Any such individual who nevertheless makes payment(s) toward that canceled amount at any time in the future shall have the payment(s) refunded within 10 days, with the notice of cancelation provided again.

    b.    Brookside may satisfy the notice obligations of this provision by mailing each individual's notification(s) to the same address(es) used by the Claims Administrator for that individual's Towing Class Fund pro-rata check.

    c.    At least 3 days before sending the notices required by this provision, Brookside shall provide Class Counsel a spreadsheet of the individuals receiving the notices, including their names, addresses, and amounts of monetary obligations canceled.

**Systemic Relief for the Charging Class**

44.    Within 30 days of the Settlement Effective Date, Brookside shall notify

each member of the Charging Class who has not been excluded from the Charging

Class:

> "In 2018, the Town of Brookside's police department implemented an
> aggressive style of policing that prioritized generating revenue for the
> department's expansion. That decision led to a significant increase in
> traffic stops, vehicle tows, and citations, as well as a significant increase
> in the revenue collected from those stops. The Town recognizes the
> policy of aggressive policing likely interfered with the Town's
> obligation to administer justice equally under law. The policy also
> undermined the public's trust in the justice system and raised serious
> constitutional concerns under the Due Process Clause of the Fourteenth
> Amendment. The Town has discontinued the policy of aggressive
> policing. The Town's leadership – including the Town Council, Mayor,
> Chief of Police, and the Prosecutor – apologize to the community and
> every person affected by the aggressive policing practice for the way it
> affected their faith and confidence in the judicial system. We look
> forward to earning your trust and confidence."

> a.    For every such recipient member of the Charging Class who at
>
> that time owes any outstanding fines, fees, or costs to Brookside
>
> related to arrests, charges, prosecutions, or convictions in
>
> Brookside Municipal Court between March 1, 2018 and August
>
> 1, 2022, this notice shall also inform them that those outstanding
>
> amounts are remitted (canceled) and considered satisfied,
>
> pursuant to Ala. Code § 12-14-15. Any individual who
>
> nevertheless makes payment(s) toward such canceled amount(s)

at any time in the future shall have the payment(s) refunded within 10 days, with the notice of cancelation provided again.

b.    Brookside may satisfy the notice obligations of this provision by mailing each individual's notification(s) to the same address(es) used by the Claims Administrator for that individual's Charging Class Fund pro-rata check.

c.    At least 3 days before sending the notices required by this provision, Brookside shall provide Class Counsel a spreadsheet of the individuals receiving the notices, including their names, addresses, and amounts of monetary obligations canceled.

45.    As required by Ala. Code § 12-14-15, Brookside's mayor shall also report these remittances and notifications, in writing, to the Brookside Town Council at the Council's first regular meeting following the remittances and notifications. In explaining the reasons for the remittances to the Town Council in writing, as required by Ala. Code § 12-14-15, the Brookside mayor shall explain:

"As part of the settlement of the *Coleman et al. v. Town of Brookside et al.* class action lawsuit, case number 2:22-cv-423-AMM, in the United States District Court for the Northern District of Alabama, the Town of Brookside acknowledges that certain of its policing decisions beginning in 2018 led to an aggressive style of policing that prioritized generating revenue for the department's expansion. That decision led to a significant increase in traffic stops, vehicle tows, and citations, as well as a significant increase in revenue collected from those stops. Brookside recognizes the policy of aggressive policing likely interfered with the Town's obligation to administer justice equally under law,

undermined the public's trust in the justice system, and raised serious constitutional concerns under the Due Process Clause of the Fourteenth Amendment. Brookside has taken subsequent remedial measures to discontinue this aggressive policing and to ensure public trust in the justice system. The Town's leadership looks forward to earning the public's trust and confidence."

46.     Within 30 days of the Settlement Effective Date, Brookside shall dismiss with prejudice all prosecutions and appeals that are still pending in the Brookside Municipal Court or still pending on appeal from the Brookside Municipal Court (at any level of the judiciary) that were initiated in the Brookside Municipal Court or appealed (by either the prosecution or defense) from the Brookside Municipal Court between March 1, 2018 and August 1, 2022. In addition to being with prejudice, the notice of dismissal shall also state that all conditions of the prosecution are considered satisfied (including the lack of any conviction).

    a.     At least 3 days before sending the notices required by this provision, Brookside shall provide Class Counsel a spreadsheet of the individuals receiving the notices, including their names, addresses, charges dismissed, and (if applicable) appellate case numbers.

47.     The Class Notice shall inform the recipients that each member of the Charging Class who participates in the Settlement (i.e., is not excluded from the Settlement) is entitled to receive, as part of the Settlement, a pardon from the Brookside mayor pursuant to Ala. Code § 12-14-15, on the condition that the person

15

agrees to release all legal claims they may have against Brookside arising from the circumstances that gave rise to the conviction(s) being pardoned that are not released as part of this Settlement. Such pardon request must be made within 120 days of the Effective Date.

    a.    Additionally, the Class Notice shall inform the recipients that each member of the Charging Class who participates in the Settlement and elects to receive a pardon is entitled to receive from Brookside, free of charge, all records necessary to comply with the requirements for expungement of criminal records in Ala. Code §§ 15-27-1 through 15-27-21, including, but not limited to, the records, documents, and written certifications necessary to satisfy Ala. Code § 15-27-1(b) in general, § 15-27-1(b)(1) in particular, and § 15-27-12.

    b.    Additionally, the Class Notice shall inform the recipients that each member of the Charging Class who participates in the Settlement and elects to receive a pardon is entitled to receive from Brookside a certification in writing that the person has no outstanding monetary obligations (including fines, fees, or costs) to Brookside related to arrests, charges, prosecutions, or convictions in Brookside Municipal Court between March 1,

2018 and August 1, 2022 because those obligations have been remitted and deemed satisfied.

c.     These provisions become available to Charging Class members upon the Settlement Effective Date.

d.     Within 5 days of the expiration of the 120-day period to request the pardons offered by this provision, Brookside shall provide Class Counsel a spreadsheet of the individuals who requested and received such pardons, including their names and addresses.

48.     For 5 years following the Settlement Effective Date, Brookside shall retain 0% of any money received from any fines, fees, forfeitures, or court costs in relation to or by reason of any law-enforcement or code-enforcement source or action. Then, for the 10 years after the expiration of that initial 5-year period, Brookside shall retain no more than 1% of its general operating budget from any fines, fees, forfeitures, or court costs in relation to or by reason of any law-enforcement or code-enforcement source or action. Then, for the 15 years after the expiration of the 10-year period detailed in the previous sentence, Brookside shall retain no more than 2.5% of its general operating budget from any fines, fees, forfeitures, or court costs in relation to or by reason of any law-enforcement or code-enforcement source or action. During these periods, all such funds exceeding the then-allowed retention percentage shall be deposited in equal parts with the Alabama

Crime Victims Compensation Fund and the Alabama Fair Trial Tax Fund (after accounting for any amounts required by state law to be earmarked for other state programs).

49.    Brookside shall fully comply with the Alabama Rules of Criminal Procedure regarding the forfeiture of secured bonds. At the first regularly scheduled Brookside Town Council meeting following the Settlement Effective Date, Brookside shall codify by ordinance its current informal practice of recommending to the judge of the Brookside Municipal Court to enter orders forfeiting bonds and issuing failure-to-appear warrants only after two consecutive, unexplained missed court appearances in the Brookside Municipal Court.

50.    Starting March 6, 2026, Brookside shall provide every defendant appearing in the Brookside Municipal Court the following explanation of rights, which shall also be posted at all times at the public court entrance:

> NOTICE OF RIGHTS
>
> o  The law requires that you be informed of your rights in this court.
>
> o  You have the right to proceedings you can understand. When your case is called, inform the judge if you need an interpreter or cannot understand the proceedings for some other reason.
>
> o  You have the right to an attorney. If you face a possible jail or prison sentence and cannot afford an attorney, you may request that the court appoint an attorney for you at no charge. If you make that request, the court will assess

your financial circumstances to determine whether you qualify for such appointment. If you do not qualify for such appointment, either because of your financial circumstances or because you do not face a possible jail or prison sentence, you remain entitled to retain an attorney at your own expense. You may request that the court reschedule your hearing date for these purposes.

o  You have the right to demand the nature and the reasons for the accusations against you.

o  You have the right to confront and cross-examine witnesses against you.

o  You are presumed innocent and will be regarded as innocent until you are proven guilty or you plead guilty.

o  If you plead not guilty, you are not required to prove your innocence or to testify in your own defense. The prosecution is required to prove you are guilty beyond a reasonable doubt.

o  If you plead guilty, you will have admitted to the violation brought against you and will have waived your rights to a trial and to the prosecution's burden of proof beyond a reasonable doubt. Unless indicated otherwise in your guilty plea agreement, you will have waived your right to appeal the conviction.

o  If you plead not guilty and are found guilty by the court, you have the right to appeal the court's finding of guilt or the court's penalty. You have 14 days from the day of this court's decision to file any such appeal.

o  If you do not understand these rights or have other questions concerning your case, inform the judge when your case is called.

51.    Starting March 6, 2026, Brookside, including its prosecutor and any

other representative officials, shall recommend to the Brookside Municipal Court that no court costs, fees, or other monetary obligations be imposed on any individual who has all charges arising from a single occurrence dismissed, nolle-prossed, or adjudicated not guilty.

52.    For 10 years following the Settlement Effective Date, Brookside shall not increase the compensation paid to its Municipal Court Judge(s) or its Municipal Prosecutor(s), except—should Brookside so choose—once per fiscal year in an amount to account for inflation.

53.    For 10 years following the Settlement Effective Date, Brookside shall not actively patrol Interstate 22. Nothing herein prevents or bars Brookside from responding to emergencies that may occur on Interstate 22 or from engaging in law enforcement activities on Interstate 22 if in response to discrete requests for aid or assistance from other law enforcement agencies.

54.    Starting from the Effective Date and going forward, Brookside shall implement the following transparency measures:

    a.    Brookside shall publicize a general operating budget each year. That budget shall be maintained publicly on the Town's official website and shall not be deleted. All Town annual financial reports from 2015 onward shall be maintained publicly on the Town's official website and shall not be deleted.

b.    All Brookside Town Council meetings postdating the Settlement Effective Date shall be open to the public and audio-recorded. Those recordings shall be preserved and maintained by the Town. Each meeting recording shall be made publicly available on the Town's official website for 6 months after the date of the meeting. The website shall state that older recordings are available at Town Hall for listening and/or downloading onto a USB or flash drive provided by the requestor.

c.    All Brookside Town Council meeting minutes postdating the Settlement Effective Date shall be maintained publicly on the Town's official website and shall not be deleted.

d.    All Brookside ordinances and resolutions shall be maintained publicly on the Town's official website and shall not be deleted.

e.    All Brookside contracts with vehicle towing providers, prosecutors, and municipal court judges (including those existing at the time of the Settlement Effective Date and those that come to exist in the future) shall be maintained publicly on the Town's official website and shall not be deleted.

55.    To enable the Named Plaintiffs and Class members to ensure compliance with the relief agreed to, Brookside shall provide Class Counsel at the

Institute for Justice the following documents and information on an annual basis, on April 1 of each year (or such other date as that the Parties mutually agree to in writing), for 10 years following the Settlement Effective Date:

> a. Brookside's audited financial statement, which shall be compliant with Government Accounting Standards Board standards, per fiscal year.
>
> b. Brookside's approved, final budget showing forecasted revenue and expenditures per fiscal year.
>
> c. Any reports provided by Brookside to any state auditor.
>
> d. Documents sufficient to show the amounts of fines, fees, forfeitures, and court costs retained by Brookside during the previous year and the amounts remitted to the Alabama Crime Victims Compensation Fund and the Alabama Fair Trial Tax Fund (as well as any other statutorily mandated state funds).
>
> e. An attestation by the Town Clerk of Brookside's compliance with ¶¶ 42, 48, 49, 50, 51, 52, and 54 above.
>
> f. An attestation by the Town Police Chief of Brookside's compliance with ¶ 53 above.

56. Brookside shall issue a public statement, posted for 10 months after the Settlement Effective Date at each public entrance to the Brookside Town Hall, each

public entrance to the Brookside Municipal Court, each public entrance to the Brookside police department, each public entrance to the Brookside jail, and Brookside's official Town website, as well as any official Town social media account (e.g., Facebook, X/Twitter, Instagram, Bluesky, TikTok). It shall read:

> "As part of the settlement of the *Coleman et al. v. Town of Brookside et al.* class action lawsuit, case number 2:22-cv-423-AMM, in the United States District Court for the Northern District of Alabama, the Town of Brookside acknowledges that certain of its policing decisions beginning in 2018 led to an aggressive style of policing that prioritized generating revenue for the department's expansion. That decision led to a significant increase in traffic stops, vehicle tows, and citations, as well as a significant increase in revenue collected from those stops. Brookside recognizes the policy of aggressive policing likely interfered with the Town's obligation to administer justice equally under law, undermined the public's trust in the justice system, and raised serious constitutional concerns under the Due Process Clause of the Fourteenth Amendment. Brookside has taken subsequent remedial measures to discontinue this aggressive policing and to ensure public trust in the justice system. The Town's leadership looks forward to earning the public's trust and confidence."

### Attorneys' Fees

57.   The Named Plaintiffs and Class Counsel agree not to seek any attorneys' fees related to pre-Settlement litigation of this case, obtaining Settlement approval, litigating Settlement objections or Settlement objection appeals, administering the Settlement, or monitoring compliance with the Settlement.

58.   Class Counsel (or separate counsel hired by the Named Plaintiffs or unexcluded Class members) may seek attorneys' fees for work done in enforcing any provision of the Settlement.

59.    If this Settlement does not become final for any reason, nothing in this Settlement precludes the Named Plaintiffs or Class Counsel from seeking all reasonable attorneys' fees and costs they may be entitled to by law.

**Claims Administrator**

60.    The Settlement's Claims Administrator shall be Angeion Group LLC.

61.    The Claims Administrator shall administer the Settlement pursuant to the terms herein and the terms of the Parties' agreement with the Claims Administrator, which is attached as Exhibit 4 to this Settlement and incorporated as if fully set forth herein.

62.    The Claims Administrator's work and obligations shall be supervised by the Parties' counsel, with the supervision of the Court as circumstances might require. Supervision of the Claims Administrator's work and obligations shall be for the purpose of ensuring that the Claims Administrator administers the terms of the Settlement in a rational, responsive, cost effective, and timely manner, and in a manner best practicable under the circumstances to achieve the Settlement's notice, claims processing, and distribution plans.

63.    The Claims Administrator shall maintain reasonably detailed records of its activities performed to administer the Settlement. The Claims Administrator shall maintain all records required by applicable laws in accordance with its normal business practices, and such records shall be made available to the Parties' counsel

upon request. The Claims Administrator shall provide information to the Court as the Court may require. The Claims Administrator shall provide the Parties' counsel the information and reports concerning notice, claims processing, and distribution as required by the provisions herein and by the Parties' agreement with the Claims Administrator.

## Administration Costs

64.    Separate and apart from Brookside's payment of $1 million in damages to the Towing Class and $500,000 in damages to the Charging Class, Brookside shall be responsible for the first $155,000 in Administration Costs.

65.    If the Claims Administrator's Administration Costs come to be less than $155,000, the remaining amount from that $155,000 sum shall revert to Brookside.

66.    If the Claims Administrator's Administration Costs come to exceed $155,000, all excess costs will be paid in equal amounts from the Towing Class Fund and the Charging Class Fund. If the Claims Administrator's Administration Costs come to exceed a total of $205,000, the Named Plaintiffs reserve the right to terminate the Settlement.

## Establishment of Escrow Account

67.    By February 20, 2026, the Claims Administrator shall establish a segregated Escrow Account at a federally insured financial institution, to be used for

the sole purpose of holding and distributing the $1 million in damages to the Towing Class, the $500,000 in damages to the Charging Class, and the $155,000 in potential Administration Costs.

68.    By February 27, 2026, Brookside shall deposit $133,500 in the Escrow Account for potential Administration Costs.

69.    The Claims Administrator shall provide the Parties' counsel an invoice of work done and costs incurred approximately every 30 days, each invoice to be approved or disputed in writing by the Parties' counsel within 5 days of receipt of the invoice. The Parties' counsel shall meet and confer for purposes of providing such approval or dispute. Upon each approval, the Claims Administrator may draw the approved amount from the Escrow Account.

70.    The Parties do not contemplate the Claims Administrator doing any work, incurring any costs, or drawing any funds from the Escrow Account before the Court enters a preliminary approval order, except for purposes of complying with the notice requirements of 28 U.S.C. § 1715(b), as detailed in ¶ 72 below.

71.    If the Court denies the motion for preliminary approval and that denial results in this Settlement being terminated pursuant to ¶¶ 122–124 below, the funds remaining in the Escrow Account shall revert to Brookside.

**Notice Plan**

72.    By February 16, 2026, the Claims Administrator shall serve the notices required by 28 U.S.C. § 1715(b), including service on the Attorney General of the United States and on the appropriate state officials (as defined in 28 U.S.C. § 1715(a)) of all 50 states.

      a.    By February 23, 2026, the Claims Administrator shall provide the Parties' counsel written proof by email of the Claims Administrator's timely compliance with this requirement, including service lists, copies of notices, and sworn declarations of service suitable for filing with the Court.

      b.    The payment due to the Claims Administrator for compliance with this requirement shall be part of the Administration Costs and shall be reflected in the Claims Administrator's first invoice to the Parties' counsel (which is expected by March 2, 2026).

73.    Upon the Court's entry of a preliminary approval order, the Claims Administrator shall use the towing, charging, and payment records provided by the Parties' counsel to create spreadsheets of all known potential members of the Towing Class and all known potential members of the Charging Class, including their mailing addresses and their email addresses (if available), as identified by skip-tracing and any and all other reasonable methods encompassed by the Parties'

27

agreement with the Claims Administrator.

    a.    Ameliorating deficiencies in the records shall be the sole obligation and responsibility of Brookside.

    b.    Brookside shall use all reasonable efforts to assist and facilitate the Claims Administrator's development of the spreadsheets of potential members of the Classes.

    c.    Class Counsel shall be informed of any such needs and shall have the right but not the obligation to review and comment on the amelioration, assistance, and facilitation that may be required.

74.    The Claims Administrator shall provide the completed spreadsheets it creates pursuant to ¶ 73 above to the Parties' counsel within 42 days of the Court's entry of a preliminary approval order, seeking from the Parties a notice to proceed.

    a.    Within 5 days of receiving the spreadsheet, the Parties' counsel shall meet and confer to resolve disputes, if any, concerning the accuracy or sufficiency of the spreadsheets.

75.    Within 75 days of the Court's entry of a preliminary approval order, the Claims Administrator shall send by first-class mail and, where known, by email the Class Notice (including the Claim Form) to all known potential members of the Towing Class and all known potential members of the Charging Class.

    a.    For each such notice that comes back as undeliverable, the

Claims Administrator shall promptly re-send the Class Notice to any updated addresses.

b.    35 days after sending the initial Class Notices, the Claims Administrator shall send short-form reminder notices to the mailing and email addresses of all potential members of the Classes who have not submitted a Claim Form, requested exclusion, or objected (attached as Exhibit 3 to this Settlement).

76.    No later than 7 days after sending the individual notices required by ¶ 75 above, the Claims Administrator shall provide publication notice via press release and targeted digital ad placements on AL.com, as approved by the Parties' counsel in advance.

77.    No later than the day of sending the individual notices required by ¶ 75 above, the Claims Administrator shall establish a call center phone number for purposes of fielding questions about the Settlement and requesting a mailed or emailed copy of the Class Notice.

78.    No later than the day of sending the individual notices required by ¶ 75 above, the Claims Administrator shall establish a website (to be maintained by the Claims Administrator) with the Class Notice, the Claim Form, the Settlement, the Complaint, the Court's order denying motions to dismiss (Doc. 80), the motion for preliminary approval, and the preliminary approval order. The website shall allow

for the submission of the Claim Form for one or both Classes. The website shall also list the call center phone number described in ¶ 77 above. The website shall also provide the option to submit questions about the Settlement by email and to request a mailed or emailed copy of the Class Notice and Claim Form.

      a.    Questions submitted by email via the website shall automatically be forwarded to the Parties' counsel so that they may suggest answers or responses by the Claims Administrator (cc'ing the other Party's counsel). The Parties' counsel shall meet and confer to resolve any disagreements as to such responses, which the Parties shall endeavor to provide within 5 days of each question's submission.

79.    Upon the Court's entry of a preliminary approval order, Class Counsel may, at their own expense, take additional measures to publicize the Settlement, including for purposes of providing notice to potential members of the Classes.

### Claim Form Submissions

80.    One Claim Form may be submitted per person.

81.    Except for purposes of Class exclusion or Settlement objection, Claim Forms may be submitted by mail or via the Settlement website. The processes and the requirements for submitting requests for exclusion or objections are detailed in ¶¶ 98–109 below.

82.    To be valid, a Claim Form must be postmarked or submitted electronically no later than 120 days after the Claims Administrator sends the initial Class Notices. In the absence of a postmark, the Claim Form shall be considered timely if received within 21 days of the deadline. Untimely Claim Forms will result in no payment from the Settlement.

        a.    This deadline is subject to a single, one-time grace period. ¶ 97 below contemplates a 42-day period between the expiration of the 120-day deadline for submitting a Claim Form and the Claims Administrator's creation of the final spreadsheets of valid and invalid claimants. Claim Forms received during the first 30 days of that 42-day period may be accepted as valid if the Parties and the Claims Administrator are able to determine that the claimant is a bona fide member of the Class(es) without delaying the creation of the final spreadsheets. Any request received after the 30-day grace period shall be deemed invalid and shall be ineligible for a payment from this Settlement.

83.    A claimant may submit a Claim Form for the Towing Class, the Charging Class, or both.

84.    To be valid, a Claim Form must be complete. A Claim Form is considered complete if all of the following requirements are satisfied:

a.    It contains the claimant's first name and last name.

b.    It contains the claimant's date of birth (month, day, and year).

c.    It contains at least one of the following: a valid mailing address for the claimant; a valid telephone number for the claimant; or a valid email address for the claimant.

d.    It answers whether the claimant is making a claim from the Towing Class Fund, the Charging Class Fund, or both.

e.    For a Towing Class claimant, it answers the following questions to the best of the claimant's recollection:

    i.    How many times the claimant paid for the release of a vehicle that was ordered towed by the Brookside Police Department following a traffic stop from March 1, 2018 to August 1, 2022.

    ii.    The month(s) and year(s) in which the vehicle tow(s) occurred.

    iii.    The make and model of the vehicle(s) towed.

    iv.    The driver(s) of the vehicle(s) towed.

    v.    The registered owner(s) of the vehicle(s) towed.

    vi.    Whether the claimant paid Brookside, Jett's Towing, or both for the release of the vehicle(s) towed.

    vii.    Whether anyone else paid Brookside, Jett's Towing, or both for the release of the vehicle(s) towed; and if so, their name(s), address(es), and how much they paid to Brookside and to Jett's Towing.

    viii.    Whether the claim is being made by the estate of a Class member who is no longer living; and if so, the first name and last name of the Class member. In such circumstances, references to "the claimant" above will be understood as references to the Class member.

f.    For a Charging Class claimant, it answers the following questions to the best of the claimant's recollection:

    i.    The month(s) and the year(s) in which the claimant was charged with an offense in the Brookside Municipal Court following a traffic stop by the Brookside Police Department.

    ii.    Whether the claim is being made by the estate of a Class member who is no longer living; and if so, the first name and the last name of the Class member. In such circumstances, references to "the claimant" above will be understood as references to the Class member.

g.    The claimant attests: "Under penalty of perjury, the foregoing is true and correct to the best of my knowledge."

85.    The Claims Administrator will make an initial determination as to the validity or invalidity of a claim based on those requirements and parameters.

86.    A claimant may recover from both the Towing Class Fund and the Charging Class Fund, if determined to be a bona fide member of both Classes.

87.    Each claimant is entitled to a pro-rata distribution from each Class Fund for which they submit a valid Claim Form and are determined to be a bona fide member of the Class. The expected pro-rata distribution for each Class's class members is detailed in the Class Notice, attached as Exhibit 1 to this Settlement. It may decrease based on the possibility of unexpected Administration Costs, as detailed in ¶ 66 above.

88.    For the Charging Class, the pro-rata distribution shall be a simple matter of the Charging Class Fund divided by the number of bona fide claimants.

89.    For the Towing Class, the pro-rata distribution shall be based on the number of Verified Towing Incidents. The Towing Class Fund shall be divided by the number of Verified Towing Incidents for which a valid claim is submitted, each of which constitutes one pro-rata share of the Towing Class Fund. Each Verified Towing Incident for which a bona fide claimant submits a valid claim entitles that claimant to one pro-rata share of the Towing Class Fund.

90.    The Parties anticipate there may be instances in which multiple claimants make a claim to the Towing Class Fund arising from the same Verified Towing Incident because different individuals may have (1) paid the Brookside portion of the vehicle-release fees and the Jett's Towing portion of the vehicle-release fees or (2) split the Brookside portion of the vehicle-release fees and/or the Jett's Towing portion of the vehicle-release fees. In such instances, the Claims Administrator will make an initial determination as to the allocation of that single pro-rata share of the Towing Class Fund, based on the following parameters:

a.    For a single Verified Towing Incident, a maximum of two claimants may be entitled to split in half a single pro-rata share of the Towing Class Fund. That will be the case where one individual is determined to be the payor of the Brookside portion of the vehicle-release fees and another is determined to be the payor of the Jett's Towing portion of the vehicle-release fees. In no instance will more than one individual be determined to be the payor of the Brookside portion of the vehicle-release fees; in no instance will more than one individual be determined to be the payor of the Jett's Towing portion of the vehicle-release fees.

b.    Determining who is the payor of each portion of the vehicle-release fees will be based on a review of the following, in

35

descending order of priority:

i.      The name of the payor on a vehicle-release receipt from the relevant entity (a Brookside receipt is prioritized when determining the payor of the Brookside portion; a Jett's Towing receipt is prioritized when determining the payor of the Jett's Towing portion).

ii.     A claimant's proof (solicited by telephone call or email by the Claims Administrator) of making the payment to Brookside and/or Jett's Towing, in the form of a receipt from Brookside and/or Jett's Towing clearly reflecting the payment, a copy of a check clearly reflecting the payment to Brookside and/or Jett's Towing, or a credit card or bank statement clearly reflecting the payment to Brookside and/or Jett's Towing.

iii.    The claimant's name matching the name of the driver on towing or vehicle-release records from Brookside.

iv.    The claimant's name matching the name of the driver on towing or vehicle-release records from Jett's Towing.

v.     The claimant's name matching the name of the vehicle owner on towing or vehicle-release records from

36

Brookside.

vi.    The claimant's name matching the name of the vehicle owner on towing or vehicle-release records from Jett's Towing.

91.    If the Claims Administrator requires additional information from records or documents within Brookside's possession, custody, or control in order to determine whether a claim is valid, Brookside shall provide such records or documents and shall use all reasonable efforts to assist and facilitate the Claims Administrator's determination of whether a claim is valid.

92.    After the Claims Administrator makes initial validity determinations based on the requirements and parameters detailed above, the process for making final validity determinations is detailed in ¶¶ 93–96 below.

**Processing and Reviewing Claim Form Submissions**

93.    After sending the individual notices required by ¶ 75 above, the Claims Administrator shall provide the Parties' counsel, every 21 days, a running spreadsheet with the names, addresses, phone numbers, and email addresses for each individual whom the Claims Administrator determines has submitted a valid Claim Form.

94.    Simultaneously, the Claims Administrator shall provide the Parties' counsel a running spreadsheet with the names, addresses, phone numbers, and email

addresses for each individual whom the Claims Administrator determines has submitted an invalid Claim Form.

95.    The final spreadsheets required by ¶¶ 93 and 94 above shall be provided to the Parties' counsel by the Claims Administrator 35 days after the 120-day deadline for timely submitting Claim Forms.

96.    The Parties' counsel shall independently review each spreadsheet required by ¶¶ 93–95 and shall notify each other in writing of any disagreements they have with the Claims Administrator's assessments of valid and invalid claims. As necessary, the Parties' counsel shall confer with each other and with the Claims Administrator to reach final agreement as to those assessments, based on the same requirements and parameters detailed in ¶¶ 80–91 above. In the event the Parties cannot reach final agreement as to the validity of a claim, they shall submit their assessments in writing to the Claims Administrator for a final determination based on the same requirements and parameters detailed in ¶¶ 80–91 above.

97.    Within 42 days of the 120-day deadline for submitting Claim Forms, the Claims Administrator shall provide the Parties' counsel the final spreadsheets of valid and invalid claimants, pursuant to the requirements and processes above.

## Exclusions

98.    The Claim Form provides an option for potential Class members to request exclusion from one or both Classes. If exclusion is requested from one or

both Classes, it must be submitted by mail (it may not be submitted directly via the Settlement website).

99.    To be valid, an exclusion request must be mailed to the Claims Administrator at the exclusions address listed on the Claim Form, and it must be received by the Claims Administrator no later than 120 days after the Claims Administrator sends the initial Class Notices. An exclusion request received after the 120 day deadline shall be deemed invalid.

100.    Each exclusion request must be submitted by the person seeking exclusion. To be valid, an exclusion request must be complete. An exclusion request is considered complete if all of the following requirements are satisfied:

      a.    It contains the person's first name and last name.

      b.    It contains the person's date of birth (month, day, and year).

      c.    It contains at least one of the following: a valid mailing address for the person; a valid telephone number for the person; or a valid email address for the person.

      d.    It answers whether the person is requesting exclusion from the Towing Class, the Charging Class, or both.

      e.    If seeking exclusion from the Towing Class, it answers the following questions to the best of the person's recollection:

            i.    The month(s) and year(s) in which the vehicle tow(s)

occurred.

ii.      The make and model of the vehicle(s) towed.

iii.     The driver(s) of the vehicle(s) towed.

iv.     The registered owner(s) of the vehicle(s) towed.

v.      Whether the person paid Brookside, Jett's Towing, or both for the release of the vehicle(s) towed.

vi.     Whether anyone else paid Brookside, Jett's Towing, or both for the release of the vehicle(s) towed; and if so, their name(s), address(es), and how much they paid to Brookside and to Jett's Towing.

vii.    Whether the exclusion requestion is being made by the estate of a potential Class member who is no longer living; and if so, the first name and last name of the potential Class member.

f.    For a Charging Class claimant, it answers the following questions to the best of the person's recollection:

i.      The month(s) and the year(s) in which the person was charged with an offense in the Brookside Municipal Court following a traffic stop by the Brookside Police Department.

      ii.      Whether the exclusion request is being made by the estate of a potential Class member who is no longer living; and if so, the first name and the last name of the potential Class member.

    g.      The person attests: "Under penalty of perjury, the foregoing is true and correct to the best of my knowledge."

101.  The Claims Administrator will make an initial determination as to the validity or invalidity of an exclusion request based on those requirements and parameters.

102.  A person who submits a valid exclusion request shall not: (i) be bound by any orders of the Court concerning the Settlement; (ii) be entitled to relief under the Settlement; (iii) gain any rights by virtue of the Settlement; or (iv) be entitled to object to any aspect of the Settlement.

103.  Starting 21 days after sending the individual notices required by ¶ 75 above and every 21 days thereafter, the Claims Administrator shall provide the Parties' counsel a list of individuals who have submitted exclusion requests. The final such list shall be provided 21 days after the 120-day deadline for timely submitting exclusion requests. The Parties' counsel shall independently review each such list and shall notify each other in writing of any disagreements they have with the Claims Administrator's assessments of valid and invalid exclusion requests. As

necessary, the Parties' counsel shall confer with each other and with the Claims Administrator to reach final agreement as to those assessments, based on the same requirements and parameters detailed above. In the event the Parties cannot reach final agreement as to the validity of an exclusion request, they shall submit their assessments in writing to the Claims Administrator for a final determination based on the same requirements and parameters detailed above. Where appropriate and feasible without delaying final approval processes, the Claims Administrator shall provide an individual determined to have submitted an invalid exclusion request an opportunity to cure the exclusion request's deficiencies.

      a.    If untimely exclusion requests arrive, they shall continue to be forwarded to the Parties' counsel, with the untimeliness indicated.

104. If more than 25 individuals whom the Parties' counsel are able to identify as a bona fide potential member of one or both Classes submit valid (i.e., complete and timely) exclusion requests, Brookside shall have the option to terminate the Settlement. The Parties will determine whether a person is a bona fide potential Class member based on the same requirements, parameters, and processes detailed in ¶¶ 80–91 above. For purposes of this provision, an individual who excludes themselves from both the Towing Class and the Charging Class counts as one exclusion.

## Objections

105.   As advised in the Class Notice, members of one or both Classes may object to the Settlement by submitting a completed Claim Form and by the procedures below. An objection may not be accomplished solely by submitting a Claim Form.

106.   An objection must be filed with the Clerk of the Court and served by mail or by email on Class Counsel and Brookside's counsel no later than 120 days after the Claims Administrator sends the initial Class Notices.

107.   That filing must include the objector's full name, address, and email address, and all grounds for objecting to the Settlement, including all factual and legal support for the objection. If the objector is represented by counsel, the filing must also include the counsel's full name, law firm name, telephone number, and email address. That counsel must file a notice of appearance with the Court in connection with the objection.

108.   Although an objector's attendance at the Court's final approval hearing is not mandatory, an objector who intends to attend the final approval hearing must indicate that intent in their written objection filing. That filing must also indicate the identities and addresses of any witnesses the objector may call at the hearing and must attach any documents the objector may introduce at the hearing.

109.   No person who fails to file a valid objection within 120 days after the

Claims Administrator sends the initial Class Notices may later object to the Settlement or any portion of the Settlement.

## Final Approval Plan

110.   At least 14 days before the Court's final approval hearing, the Parties will move for the Court to enter a Final Approval Order. The Final Approval Order will constitute final certification of the Classes and final approval of the Settlement. It will incorporate all releases and dismissals. And it will retain the Court's jurisdiction to enforce the Settlement's terms.

111.   If no objections are made to the Settlement, then the date of the Final Approval Order shall be the Settlement's Effective Date. Otherwise, the Effective Date will occur as defined in ¶ 22 above.

## Distribution of Class Funds

112.   Within 7 days of the Settlement Effective Date, Brookside shall deposit $1.5 million, less any sums paid to the Claims Administrator pursuant to ¶ 66 above, into the Escrow Account for distribution to the Classes by the Claims Administrator.

113.   Within 30 days of the Effective Date, the Claims Administrator shall send checks by first-class mail to all valid claimants on a pro-rata basis, pursuant to the final spreadsheets referenced in ¶ 97 above. For all such mailings that come back as undeliverable, the Claims Administrator shall re-send the checks to any potentially updated addresses within 14 days of such return.

44

114.   All checks issued to settlement class members (including re-issued checks, if any) will expire and become void 90 days after they are issued. Class members who, for whatever reason, do not cash an initial check may make a one-time request to the Settlement Administrator to send them a re-issued check. Requests for re-issued checks must be made within 150 days of the date on the initial check. Re-issued checks will be in the same amount as the initial check.

### Distribution of Unclaimed Class Funds

115.   If any checks remain uncashed another 90 days after the end of the period for making secondary requests in ¶ 114 above (i.e., no more than 240 days after the initial check mailing in ¶ 113 above), those checks' funds shall be considered unclaimed funds.

116.   Within 10 days of receiving the information necessary to issue a payment, the Claims Administrator shall donate the unclaimed funds to a nonprofit and/or community-based public service organization located in and/or providing services to Birmingham-area communities, selected in writing by Class Counsel.

117.   The Institute for Justice shall be ineligible to receive unclaimed funds.

### Releases

118.   Upon the Settlement Effective Date, each unexcluded member of the Towing Class and each unexcluded member of the Charging Class shall be deemed, on behalf of themselves, their heirs, executors, administrators, predecessors,

45

successors and assigns, to have fully, finally, and forever released, relinquished, and discharged all claims against Brookside arising from the facts alleged in the Complaint (including all legal claims alleged or that could have been alleged based on those facts, whether known or unknown, whenever accruing). For the purpose of clarity: The claims of Plaintiff Coleman alleged in Count 5 of the Complaint are excluded from the scope of this paragraph, as set forth in ¶ 4 above.

119.   This release of claims shall not be construed as releasing claims against Brookside that arise from facts that are separate and distinct from the facts alleged in the Complaint.

120.   This release of claims shall not be construed to prevent the Named Plaintiffs or any Class members from enforcing any and all provisions of the Settlement (either through Class Counsel or separate counsel).

### Additional Settlement Provisions

121.   This Settlement is contingent upon the Court entering a preliminary approval order that does not materially alter the Parties' proposed preliminary approval order and a Final Approval Order that does not materially alter the terms of the Settlement.

122.   If the Court or, in the event of an appeal, any appellate court, does not approve or materially modifies the terms of this Settlement, then the Named Plaintiffs or Brookside may, in their sole discretion, terminate this Settlement. They

may do so by providing written notice to the other side and to the Court within 5 days of any of the following (with failure to do so in that time constituting a waiver of the right to terminate):

a.    The Court declines to enter a preliminary approval order or enters a preliminary approval order that materially modifies the terms of this Settlement. The written notice of termination shall specify what the terminating Party contends constitutes material modification sufficient to trigger termination.

b.    The Court enters a Final Approval Order that materially modifies the terms of this Settlement. The written notice of termination shall specify what the terminating Party contends constitutes material modification sufficient to trigger termination.

c.    The Court's Final Approval Order is vacated, reversed, or materially modified on appeal or other collateral review proceeding. The written notice of termination shall specify what the terminating Party contends constitutes material modification sufficient to trigger termination.

d.    Any federal or state authority demands by legal right a material modification of the Settlement. The written notice of termination shall specify what the terminating Party contends constitutes

material modification sufficient to trigger termination.

  e.  The Claims Administrator notifies the Parties that more than 25 individuals whom the Parties can identify as bona fide potential members of one or both Classes have submitted valid and timely requests for exclusion from one or both Classes.

  f.  The Effective Date does not occur for some other reason. The written notice of termination shall specify what the terminating Party contends is the reason.

123. If a Party serves written notice of termination pursuant to ¶ 122 above, all work and all deadlines under this Settlement shall immediately be stayed and the Claims Administrator shall not do any work or incur any expense (except expenses necessary to maintain work already begun, such as hosting fees for the settlement website).

124. Within 5 days of a Party serving a written notice of termination, the other Party may request a 30-day negotiation period to discuss the notice to terminate.

  a.  If no such request is made, then the notice of termination shall be become effective and the Settlement shall terminate at the end of that 5-day period.

  b.  If such request is made, then during the 30-day negotiation

period all time periods and deadlines under this Settlement shall automatically be stayed. The Parties agree to work together in good faith in discussing whether a material modification has occurred. To that end, the Parties may request the mediation assistance of Magistrate Judge Cornelius.

c.   If the notice of termination is not withdrawn at the end of the 30-day period (at the sole discretion of the noticing party, subject to the requirement of good faith), then the notice shall become effective and this Settlement shall terminate.

d.   A party who serves written notice of termination may withdraw the notice at any time prior to the notice becoming effective.

125.   If this Settlement is not approved by the Court, is terminated pursuant to ¶¶ 122–124 above, or does not become final for any other reason, then the terms and provisions of this Settlement shall have no force or effect and shall not be used in this class action or any other action or proceeding. This includes, but is not limited to, any Party's use or attempted use of anything stated herein as an admission of any allegation, fact, contention, claim, or otherwise.

126.   If this Settlement is not approved by the Court, is terminated pursuant to ¶¶ 122–124 above, or does not become final for any other reason, then the Parties shall revert to their respective statuses in the litigation and shall proceed as if this

49

Settlement and any related orders had not been entered.

127.   In the event this Settlement is not approved by the Court, is terminated pursuant to ¶¶ 122–124 above, or does not become final for any other reason, all fees, costs, and other monetary obligations paid or owing to the Claims Administrator shall remain the sole obligation of Brookside.

128.   The undersigned represent that they are fully authorized to execute and enter into the terms and provisions of this Settlement on behalf of their clients.

129.   This Settlement contains the entire agreement between the Parties and supersedes any prior agreements or understandings between them. All terms of this Settlement are contractual and not mere recitals and shall be construed as if drafted by all the Parties. The terms of this Settlement are and shall be binding upon, and shall inure to the benefit of, each of the Parties, including their respective agents, attorneys, employees, successors, and assigns, and upon all other persons claiming any interest in the subject matter hereto through any of the Parties hereto, including any members of the Classes.

130.   This Settlement may be modified only by a written instrument signed by or on behalf of all the Parties or their successors-in-interest and approved by the Court. The Parties may, however, by written agreement and without court approval, extend by 14 days any deadline in this Settlement which applies only to Class Counsel, Brookside, or the Claims Administrator so long as such extension does

not require modification of a Court-scheduled deadline. If such extension is executed, the Parties shall promptly notify the Court.

131.    This Settlement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

132.    The Court shall retain jurisdiction over the implementation, interpretation, execution, and enforcement of this Settlement and any Final Approval Order, with respect to all the Parties and all beneficiaries, including all members of the Classes.  Any and all requests or petitions regarding the implementation, interpretation, execution, or enforcement of the Settlement, and orders on the final judgment entered by the Court, or the conduct of the policies and procedures described herein must be made, if at all, by motion to the Court.

133.    The rights and obligations of the Parties to this Settlement shall be construed and enforced in accordance with and governed by the laws of the State of Alabama.

134.   None of the Parties to this Settlement shall be considered to be the drafter of this Settlement or any provision of this Settlement for the purpose of any statute, caselaw, or rule of construction that would or might cause any provision to be construed against the drafter, and this Settlement shall be deemed a common effort of the Parties.

Executed: February 6, 2026

William M. Dawson
DAWSON LAW OFFICE
1736 Oxmoor Road, #101
Birmingham, AL 35209
Phone: (205) 795-3512
Email: bill@billdawsonlaw.com

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (DC Bar No. 1601246)*
Samuel B. Gedge (VA Bar No. 80387)*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
Email: jtsitsuashvili@ij.org; sgedge@ij.org

*Admitted pro hac vice

*Counsel for Named Plaintiffs*

s/ R. Warren Kinney
James W. Porter, II
R. Warren Kinney
**Porter, Porter & Hassinger, P.C.**
880 Montclair Road, Suite 175
Birmingham, AL 35213
jwporterii@pphlaw.net
wkinney@pphlaw.net

*Counsel for Town of Brookside*

# EXHIBIT 1

*Settlement Agreement*

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

Coleman v. Brookside, Case No. 2:22-cv-423 (N.D. Ala.)
For more information, visit www.website.com
*Para una notificación en español, visitar www.website.com*

### PLEASE READ THIS NOTICE CAREFULLY.

---

**YOU MAY BE ENTITLED TO PAYMENT FROM A CLASS ACTION SETTLEMENT**
IF YOU WERE CHARGED WITH AN OFFENSE IN **BROOKSIDE, ALABAMA'S** MUNICIPAL COURT AND/OR PAID FEES TO SECURE THE RELEASE OF A TOWED VEHICLE FOLLOWING A TRAFFIC STOP BY THE BROOKSIDE POLICE DEPARTMENT **BETWEEN MARCH 1, 2018 AND AUGUST 1, 2022.**

---

**THIS NOTICE EXPLAINS YOUR RIGHTS, OPTIONS, AND DEADLINES.**
**YOU MUST TAKE ACTION BY [[DATE]] TO RECEIVE PAYMENT.**

This is a court-authorized notice of a proposed class action settlement.
This is not a solicitation from a lawyer and is not notice of a lawsuit against you.

### WHY DID I GET THIS NOTICE?

This is a court-authorized notice of a proposed settlement in a federal class-action lawsuit, *Coleman et al. v. Town of Brookside et al.*, Case No. 2:22-cv-423, pending in the United States District Court for the Northern District of Alabama, before Judge Anna M. Manasco.

The settlement would resolve that lawsuit, which alleges that the Town of Brookside (with its towing partner, Jett's Towing Inc.) has used car-towing fees and municipal-court fines, fees, and costs to generate revenue in ways that violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

If you received this notice directly, you were identified as someone who may have been subjected to those practices during the time period relevant to the settlement: March 1, 2018 to August 1, 2022. Specifically: someone who, during that period, may have been charged with an offense in Brookside's municipal court following a traffic stop by the Brookside police department and/or had to pay for the release of a vehicle ordered towed by the Brookside police department.

The Court has granted preliminary approval of a class-wide settlement of the constitutional claims against Brookside. This settlement includes $1.5 million in monetary damages for the classes (explained below), up to $155,000 in administration costs to facilitate the settlement, and several changes to Brookside's policies and practices for the benefit of the classes.

This notice explains the nature of the class-action lawsuit, the terms of the settlement, and the legal rights and obligations of settlement class members. Please read the instructions and explanations below so that you can understand your legal rights. **You must take action to receive payment.**

### WHAT IS THE LAWSUIT ABOUT?

In 2022, four individuals sued the Town of Brookside and Jett's Towing Inc. under a federal civil-rights statute (42 U.S.C. § 1983), alleging that Brookside's use of car-towing and municipal-court ticketing to generate revenue violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

Specifically, the lawsuit alleges that starting in 2018 Brookside's police department, municipal prosecutor, and municipal court greatly increased their use of towing fees and municipal court fines, fees, and costs to increase their own revenue. The lawsuit alleges that Jett's Towing has participated in the towing-fee related aspects of Brookside's practices.

By order of: Judge Anna M. Manasco, Hugo L. Black United States Courthouse, Birmingham, Alabama 35203

*QUESTIONS? VISIT WWW.WEBSITE.COM OR CALL TOLL FREE 1-999-999-9999*

The lawsuit seeks to put an end to those practices and to recover monetary relief for people subjected to those practices. It seeks those objectives not only for the four plaintiffs who brought the lawsuit, but also for all people whom the plaintiffs say have been subjected to Brookside's practices since the practices started in 2018, or will be subjected to the practices in the future.

Brookside and Jett's Towing have contested and denied the plaintiffs' claims and moved to dismiss them. The federal district court denied Brookside's and Jett's Towing's motions to dismiss. More information about the litigation, including the complaint, the district court's order, and other documents are available at www.ij.org/case/brookside-alabama-fines/. (Please note: That is **not** the same as the settlement administration website listed throughout other parts of this notice.)

## WHY IS THIS A CLASS ACTION?

A class action is a lawsuit in which one or more individuals bring a single lawsuit on behalf of other people who might have similar claims. If a court determines that all of those people share adequately similar experiences and legal claims, it can certify them as a "class," with the plaintiffs and their lawyers as the "class representatives." That way, the claims of all the "class members" can be adjudicated together, without every member having to bring their own lawsuit. One lawsuit can have multiple classes, if the plaintiffs bring different legal claims or their claims are for differently situated groups of people (as the plaintiffs have done here, as explained below).

Because the resolution of a case on a class-wide basis impacts the legal rights and monetary recoveries of all the class members, they must receive notices such as this one before the case is resolved, informing them of the potential resolution and how it may affect them and their legal rights.

## WHY IS THERE A SETTLEMENT?

The Court has not made a final determination of who is right or wrong about the plaintiffs' claims. After nearly four years of litigation, the plaintiffs and Brookside decided to resolve the case ("settle") without the continued expense, delay, and uncertainty of litigation. Brookside has agreed to pay $1.5 million in total damages to the classes, plus up to $155,000 for the costs of administering the settlement. Brookside has also agreed to several systemic changes to its law-enforcement practices, as detailed in part below and more fully at [[www.website.com]]

The Court has preliminarily approved the settlement, including a preliminary determination that the plaintiffs' claims are suitable for class certification and a preliminary determination that the settlement terms are fair, reasonable, and adequate.

## WHO IS IN THE SETTLEMENT CLASSES?

For this settlement, there is a **Towing Class** and a **Charging Class**. You might be a member of one or both (or neither).

**You are a member of the Towing Class if:** Between March 1, 2018, to August 1, 2022, you paid fees to either the Town of Brookside, Jett's Towing, Rich's Towing, or any other towing company or service (including any combination thereof) to secure the release of a vehicle towed on the orders of the Brookside Police Department following a traffic stop. This excludes any person who has already released claims against Brookside related to or concerning the payment of such fees.

**You are a member of the Charging Class if:** Between March 1, 2018 to August 1, 2022, you were charged with an offense in the Brookside Municipal Court following a traffic stop by the Brookside Police Department. This excludes any person who has already released claims against Brookside related to or concerning such charges.

If you believe you fit into one or both of those categories, then you may be entitled to a monetary payment and/or other non-monetary relief, as described below and detailed more fully in the Settlement Agreement available at www.website.com.

By order of: Judge Anna M. Manasco, Hugo L. Black United States Courthouse, Birmingham, Alabama 35203

## WHAT DO THE SETTLEMENT CLASSES GET?

Brookside has agreed to pay $1.5 million to settle the lawsuit.

**The Towing Class will receive $1,000,000 (the "Towing Class Fund").** The amount of money that each Towing Class member ultimately receives will depend on the number of valid claims submitted. Each bona fide class member who submits a valid claim will receive an equal share of the Towing Class Fund for each verified towing incident. To illustrate, a bona fide class member whose claim encompasses one verified incident will get one share; a bona fide class member whose claim encompasses two verified incidents will receive two shares; etc. How the validity of each claim and the number of shares is determined is detailed in the Settlement Agreement, available on the settlement website. How to submit a valid claim is explained below and in the "Claim Form" document attached to this notice.

**The Charging Class will receive $500,000 (the "Charging Class Fund").** The amount of money that each Charging Class member ultimately receives will depend on the number of valid claims submitted. Each bona fide class member who submits a valid claim will receive an equal share of the Charging Class Fund. How the validity of each claim and the number of shares is determined is detailed in the Settlement Agreement, available on the settlement website. How to submit a valid claim is explained below and in the "Claim Form" document attached to this notice.

If a person is a member of both the Towing Class and the Charging Class and submits a valid claim for both, that person will receive a payment from both the Towing Class Fund and the Charging Class Fund.

Brookside has also agreed to pay up to $155,000 to a claims administrator (Angeion Group LLC) to administer the settlement—i.e., send notices, process claims, and issue payments. The claims administrator anticipates completing that work for no more than $133,500. If the administration costs exceed $155,000, then those additional costs will be paid from the Towing Class Fund and the Charging Class Fund equally.

The attorneys who brought this lawsuit on behalf of the named plaintiffs and the classes are not seeking to recover **any** attorneys' fees, so **all** of the $1.5 million in the settlement fund is allocated to the classes and the settlement administration. The named plaintiffs who brought the lawsuit also will not receive any additional payments other than the amount they are entitled to receive as a member of the Towing Class, the Charging Class, or both.

In addition to those monetary agreements, Brookside has also agreed to several systemic changes to its law-enforcement practices. You can read what those changes are at *www.website.com*.

## WHAT ARE MY OPTIONS?

**(1) Submit a Claim for Money from the Settlement BY [[DATE]]**
If you believe you are a member of the Towing Class, the Charging Class, or both, you may submit a claim for a share of the monetary relief described above. **You must submit that claim no later than [[date]]. You must do so by either mailing the claim form that is attached to this notice, or via the settlement website.** Your claim form must be complete and timely; otherwise, it will be deemed invalid. If it is invalid, you will receive no payment from the settlement fund **but you will still be bound by the settlement**. To be complete, your claim form must include all the fields marked "Required" and must attest that the information in the claim form is true and correct to the best of your knowledge. You have two options for submitting the claim form: (1) directly via the settlement website at *www.website.com*; or (2) by mail, postmarked no later than [[date]], to [[address]]. If the Court grants final approval of the settlement and your claim is deemed timely and valid, a check will be mailed to you at the address you provide on your claim form. You must cash the check within 90 days.

**(2) Exclude yourself from the Settlement**
If you are a member of the Towing Class, the Charging Class, or both, you have the right to exclude yourself from one of the classes or both. **If you do so, you will not receive any payment and will have no rights under the settlement agreement. If you do not exclude yourself from the class you will be bound by the settlement.** If you exclude yourself, you will remain free to pursue whatever legal rights you may have, at your own risk and expense. **To submit an exclusion request, you must mail a completed, signed, and timely exclusion request to [[address]].** Your exclusion request must be postmarked no later than [[date]] and must be received no later than [[date]]. To be complete,

By order of: Judge Anna M. Manasco, Hugo L. Black United States Courthouse, Birmingham, Alabama 35203

*QUESTIONS? VISIT WWW.WEBSITE.COM OR CALL TOLL FREE 1-999-999-9999*

your exclusion request must include all the fields marked "Required," must be signed by the person with the bona fide claim (or their lawful legal representative), and must attest that the information in the form is true and correct to the best of your knowledge.

**(3) Object to the Settlement**

If you wish to object to the settlement, you must submit by mail or the settlement website a claim form with all the fields marked "Required" (so that your eligibility for class membership can be verified) **and also file your objection in writing with the Clerk of the Court of the Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, Alabama 35203 and serve copies on the parties' counsel no later than [[date]].** Service on the parties' counsel may be made via either email or mail to (1) Jaba Tsitsuashvili, jtsitsuashvili@ij.org, 901 N. Glebe Rd. Ste. 900, Arlington, VA 22203 (plaintiffs' counsel); and (2) Warren Kinney, wkinney@pphlaw.net, 880 Montclair Road, Suite 175, Birmingham, Alabama 35213 (Brookside's counsel). Any objection to the settlement must include your full name, address, and email address, and all grounds for the objection along with factual and legal support. If you hire an attorney in connection with making an objection, that attorney must also file with the Court a notice of appearance by the objection deadline. **If you do hire your own attorney, you will be solely responsible for the payment of any fees and expenses the attorney incurs on your behalf. If you exclude yourself from the settlement, you cannot file an objection.** You may appear at the <mark>final approval hearing, which is to be held on **[[date]] at [[time]]**,</mark> at the Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, Alabama 35203, in person or through counsel, to show cause why the proposed settlement should not be approved as fair, reasonable, and adequate. Attendance at the hearing is not necessary; however, persons wishing to be heard orally in opposition to the approval of the settlement are required to (1) indicate in their written objection their intention to appear at the hearing on their own behalf or through counsel, (2) identify the names of any witnesses they intend to call to testify at the final approval hearing, and (3) identify and attach any exhibits they intend to introduce at the final approval hearing.

**(4) Do Nothing**

If you do nothing, you will receive no money from the settlement, but you will still be bound by all orders and judgments of the Court.

***IMPORTANT*** *Submitting a valid and timely claim form is the only way to receive a cash payment from this settlement.*

*For information on how to file a valid and timely claim form, how to request exclusion from the classes, or how to file an objection, please see Section (1) above, visit the settlement website at <mark>www.website.com</mark>, or call <mark>1-999-999-9999</mark>.*

---

| **WHAT DOES THE SETTLEMENT PROVIDE?** |
|---|

**(1) Cash Payments**

**Brookside will pay $1.5 million to resolve the lawsuit, with $1,000,000 going to the Towing Class and $500,000 going to the Charging Class.** Brookside has also agreed to pay up to $155,000 for settlement administration costs. Only class members who submit a valid and timely claim in compliance with the requirements described in the accompanying Claim Form will receive a payment from the settlement funds. Each bona fide class member who submits a valid and timely claim form will be entitled to receive a single pro-rata payment from the portion of the settlement fund to which they are a member (i.e., the Towing Class, the Charging Class, or both).

The exact amount of each class member's payment is unknown at this time. It will depend on the number of valid, timely claims received for each class, and whether some portion of the classes' recovery is needed for settlement administration costs. (The attorneys who brought this lawsuit on behalf of the named plaintiffs and the classes are not seeking to recover any attorneys' fees, so all of the settlement fund is allocated to the classes and settlement administration.)

Below are charts showing the potential payments based on the number of claims for each class.

By order of: Judge Anna M. Manasco, Hugo L. Black United States Courthouse, Birmingham, Alabama 35203

We estimate that the Towing Class may have a maximum number of 1,700 members. If no amount of the Towing Class Fund is allocated to settlement administration costs, then:

| Number of Claims | Percentage of Class | Payment Amount per Claim |
|---|---|---|
| 1,700 | 100% | $588.23 |
| 1,275 | 75% | $784.31 |
| 850 | 50% | $1,176.47 |
| 425 | 25% | $2,352.94 |

We estimate that the Charging Class may have a maximum number of 5,500 members. If no amount of the Charging Class Fund is allocated to settlement administration costs, then:

| Number of Claims | Percentage of Class | Payment Amount per Claim |
|---|---|---|
| 5,500 | 100% | $90.90 |
| 4,125 | 75% | $121.21 |
| 2,750 | 50% | $181.81 |
| 1,375 | 25% | $363.63 |

Following the final approval of the settlement, the settlement administrator will issue a check to each class member who submitted a valid, timely claim. All checks issued to settlement class members (including re-issued checks, if any) will expire and become void 90 days after they are issued. Class members who receive but, for whatever reason, do not cash an initial check may make a one-time request to the settlement administrator to send them a re-issued check. Requests for re-issued checks must be made within 150 days of the date on the initial check. Re-issued checks will be in the same amount as the initial check.

**(2) Systemic relief**

In addition to the monetary relief described above, Brookside has agreed to change its policies and procedures for the benefit of the classes as part of this settlement. The full terms of that relief are detailed in the Settlement Agreement sections titled "Systemic Relief for the Towing Class" and "Systemic Relief or the Charging Class," available at ==www.website.com==.

Individually, however, please note that if the settlement becomes final:
- Each member of the Charging Class who participates in the settlement is entitled to receive a pardon from the Brookside mayor, on the condition that the person releases any additional legal claims they may have against Brookside arising from the circumstances that gave rise to the conviction(s) being pardoned that are not released as part of the Settlement Agreement.
- Additionally, each member of the Charging Class who participates in the settlement and elects to receive a pardon is entitled to receive from Brookside, free of charge, all records necessary to comply with the requirements for expungement of criminal records in Ala. Code §§ 15-27-1 through 15-27-21, including, but not limited to, the records, documents, and written certifications necessary to satisfy Ala. Code § 15-27-1(b) in general, § 15-27-1(b)(1) in particular, and § 15-27-12.
- And each member of the Charging Class who participates in the settlement and elects to receive a pardon is entitled to receive from Brookside a certification in writing that the person has no outstanding monetary obligations (including fines, fees, or costs) to Brookside related to arrests, charges, prosecutions, or convictions in Brookside Municipal Court between March 1, 2018 and August 1, 2022 because those obligations have been remitted and deemed satisfied.

## WHAT RIGHTS AM I GIVING UP IN THIS SETTLEMENT?

Unless you exclude yourself from this settlement, you will be considered a member of the settlement classes, which means you give up your right to file or continue a lawsuit against Brookside and other entities and persons covered by the settlement arising from the allegations of the plaintiffs' lawsuit. Giving up your legal claims is called a release. The precise terms of the release are set forth in the Settlement Agreement, which is available on the settlement website. Unless you formally exclude yourself from this settlement, you will release your claims whether or not you submit a
By order of: Judge Anna M. Manasco, Hugo L. Black United States Courthouse, Birmingham, Alabama 35203

claim form and receive a payment. If you have any questions, you can talk for free to the attorneys identified below, who have been appointed by the Court to represent the settlement classes, or you are welcome to talk to any other lawyer at your own expense.

## WHEN WILL I BE PAID?

We cannot predict exactly when (or whether) the Court will give final approval to the settlement, so please be patient. However, if the Court finally approves the settlement, you will be paid as soon as practicable after the Court order becomes final. If there is an appeal of the settlement, payment may be delayed. Updated information about the case is available at *www.website.com* or by calling the settlement administrator at 1-999-999-9999. You may also contact class counsel at the contact information provided below.

## WHEN WILL THE COURT RULE ON THE SETTLEMENT?

The Court has given preliminary approval to the settlement. A final hearing, called a final approval or fairness hearing, will be held to determine the fairness of the settlement. At that hearing, the Court will also consider whether to make final the certification of the classes for settlement purposes, hear any proper objections to the settlement, and hear any class counsel requests for additional relief. The Court will hold the final approval hearing on [[date]] at [[time]] at the Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, Alabama 35203.

If the settlement is given final approval, the Court will not make any determination as to the merits of the claims against Brookside or its defenses to those claims. Instead, the settlement's terms will take effect and the lawsuit will be final. Both sides have agreed to the settlement in order to achieve an early and certain resolution to the lawsuit, in a manner that provides specific and valuable benefits to the members of the settlement classes.

If the Court does not approve the settlement, if it approves the settlement and the approval is reversed on appeal, or if the settlement does not become final for some other reason, you will not be paid at this time and class members will receive no benefits from the settlement. The plaintiffs, Brookside, and all of the class members will be in the same position as they were prior to the execution of the settlement, the settlement will have no legal effect, no class will remain certified, and the plaintiffs and Brookside will continue to litigate the lawsuit. There can be no assurance that if the settlement is not approved, the settlement classes will recover more than is provided in the settlement, or anything at all.

## WHO REPRESENTS THE CLASSES?

The Court has approved the following attorneys to represent the settlement classes, known as class counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer instead, you may hire one at your own expense.

| Jaba Tsitsuashvili<br>Institute for Justice<br>901 N. Glebe Road, Suite 900<br>Arlington, VA 22203<br>Tel: (703) 682-9320<br>jtsitsuashvili@ij.org | Samuel B. Gedge<br>Institute for Justice<br>901 N. Glebe Road, Suite 900<br>Arlington, VA 22203<br>sgedge@ij.org | William M. Dawson<br>Dawson Law Office<br>1736 Oxmoor Road #101<br>Birmingham, AL 35209<br>Tel: (205) 307-7021<br>bill@billdawsonlaw.com |
| --- | --- | --- |

## WHERE CAN I GET ADDITIONAL INFORMATION?

This notice is only a summary of the proposed settlement of this lawsuit. More details are in the Settlement Agreement which, along with other documents, can be obtained at *www.website.com*. If you have any questions, you can also call the settlement administrator at 1-999-999-9999, or contact class counsel at the numbers or email addresses set forth above. In addition to the documents available on the settlement website, all pleadings and documents filed in Court may be reviewed or copied in the Office of the Clerk of the Court. Please do not call the Judge or the Clerk of the Court about this case, as they will not be able to give you advice on your options.

By order of: Judge Anna M. Manasco, Hugo L. Black United States Courthouse, Birmingham, Alabama 35203

*QUESTIONS? VISIT WWW.WEBSITE.COM OR CALL TOLL FREE 1-999-999-9999*

# EXHIBIT 2
*Settlement Agreement*

**BROOKSIDE CLASS ACTION SETTLEMENT CLAIM FORM**

**TO RECEIVE A PAYMENT FROM THE BROOKSIDE CLASS ACTION SETTLEMENT FUND, YOU MUST COMPLETE THIS CLAIM FORM AND SUBMIT IT BY [[DATE]]. CLAIM FORMS WILL BE VALIDATED THROUGH THE CLAIMS ADMINISTRATION PROCESS DETAILED IN THE SETTLEMENT AGREEMENT, AVAILABLE AT [[WWW.WEBSITE.COM]].**

To receive payment under the *Coleman v. Brookside* class action settlement, you must submit a valid and timely claim form, either by mail to [[address]] or at [[www.website.com]]. **To be timely, your claim form must be postmarked or submitted electronically no later than [[date]].** To be valid, your claim form must be complete. **Your claim form is considered complete if all of the fields below marked "REQUIRED" are answered.** Once your claim form is received, it will be validated by the claims administrator and by the attorneys litigating the case. They may contact you for clarification, information, or documents to validate your claim. **You may only submit one claim form,** even if you are seeking compensation from both the Towing Class and the Charging Class, and even if you are seeking compensation for more than one towing incident. The fields below will ensure that all of that information is captured for validation.

| STEP 1 — CLASS MEMBERSHIP (REQUIRED) |
|---|

**I am seeking compensation from (you may choose one, both, or neither; to be eligible to receive a payment you must choose at least one):**

__ The Towing Class __ The Charging Class

**I request exclusion from (you may choose one, both, or neither; you will not receive any payment from a class that you exclude yourself from):**

__ The Towing Class __ The Charging Class

__ **I object to the settlement** (choosing this option will nullify the options above, **and it requires compliance with the objection procedures** detailed in the settlement agreement and class notice, available at [[www.website.com]].

If you received a class settlement notice directly by mail, provide the **"Claim #"** listed on that notice:_____

| STEP 2 — PERSONAL INFORMATION (REQUIRED) |
|---|

You **must** provide all of the required information in this section no matter which of the options you chose above, so that we can validate your eligibility for class membership.

**Name:** First (required) _____ Middle (optional) _____ Last (required) _____

**Date of Birth (month, day, year):** _____

**At least one of the following (but preferably all):**

Your mailing address: _____

If different, your mailing address when you were ticketed or towed by Brookside: _____

Your email address: _____ Your telephone number: _____

**If you are submitting this claim form for the estate of a Towing Class or Charging Class member who is no longer living, provide that person's full name:** _____

| STEP 3 — DETAILS ABOUT YOUR BROOKSIDE INCIDENT(S) (REQUIRED) |
|---|

- Between March 1, 2018 and August 1, 2022, were you charged with one or more offenses in Brookside Municipal Court? __ Yes __ No

  If yes, provide—**to the best of your recollection**—the month(s) and year(s) in which you were charged: _____

- Between March 1, 2018 and August 1, 2022, did you pay fees to Brookside, Jett's Towing, Rich's Towing, or any other towing company or service (including any combination thereof) to secure the release of a vehicle towed on the orders of the Brookside Police Department following a traffic stop? __ Yes __ No    If yes, how many times? _____

Provide—**to the best of your recollection**—the following information **for each instance in which you made such a payment:**

**For the first instance:**

Month and year of payment: __ __ / __ __ __ __

Make and model of vehicle towed: _____ _____

Driver of vehicle towed: _____ Registered owner of vehicle towed: _____

Did you pay Brookside? __ Y __ N
Did you pay Jett's Towing? __ Y __ N
Did you pay another towing provider? __ Y __ N

Did anyone else pay Brookside? __ Y __ N
If yes, provide their name, address, and how much they paid:

_____

Did anyone else pay Jett's Towing? __ Y __ N
If yes, provide their name, address, and how much they paid:

_____

**For the second instance (if any):**

Month and year of payment: __ __ / __ __ __ __

Make and model of vehicle towed: _____ _____

Driver of vehicle towed: _____ Registered owner of vehicle towed: _____

Did you pay Brookside? __ Y __ N
Did you pay Jett's Towing? __ Y __ N
Did you pay another towing provider? __ Y __ N

Did anyone else pay Brookside? __ Y __ N
If yes, provide their name, address, and how much they paid:

_____

Did anyone else pay Jett's Towing? __ Y __ N
If yes, provide their name, address, and how much they paid:

_____

**I certify, UNDER PENALTY OF PERJURY, that all the above statements in Steps 1–3 are TRUE AND ACCURATE to the best of my knowledge.** I understand that the settlement administrator and the attorneys litigating the case have the right to verify my responses or otherwise dispute any claims that are based on inaccurate responses.

_____          _____
**Signature**                                          **Date**

| STEP 4 — METHODS OF SUBMISSION |
|---|

If you are seeking compensation, you must submit this claim form by mail or via the settlement website no later than [[date]]. The website is [[www.website.com]]

If you are seeking exclusion from one or both classes, you must submit this claim form by mail no later than [[date]].

If you are objecting to the settlement, you must submit this claim form by mail and complete all of the filings required by ¶¶ 107–108 of the settlement agreement by no later than [[date]].

# EXHIBIT 3
*Settlement Agreement*

Page **1** of **1**

## REMINDER: NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

Coleman v. Brookside, Case No. 2:22-cv-423 (N.D. Ala.)
For more information, visit www.website.com
*Para una notificación en español, visitar www.website.com*

### PLEASE READ THIS NOTICE CAREFULLY.

**YOU MAY BE ENTITLED TO PAYMENT FROM A CLASS ACTION SETTLEMENT**
IF YOU WERE CHARGED WITH AN OFFENSE IN **BROOKSIDE, ALABAMA'S** MUNICIPAL COURT AND/OR PAID FEES TO SECURE THE RELEASE OF A TOWED VEHICLE FOLLOWING A TRAFFIC STOP BY THE BROOKSIDE POLICE DEPARTMENT **BETWEEN MARCH 1, 2018 AND AUGUST 1, 2022.**

YOU WERE RECENTLY SENT A FULL NOTICE OF YOUR RIGHTS, OPTIONS, AND DEADLINES.
THIS IS A REMINDER TO TAKE ACTION IF YOU WISH TO BE INCLUDED IN THE SETTLEMENT.
THE FULL NOTICE IS AT WWW.WEBSITE.COM
YOU MAY REQUEST A PAPER COPY BY CALLING 1-999-999-9999

**YOU MUST TAKE ACTION BY [[DATE]] TO RECEIVE PAYMENT. DOING SO REQUIRES SUBMITTING A VALID AND TIMELY "CLAIM FORM," WHICH IS AVAILABLE AT THE WEBSITE ABOVE. YOU MAY SUBMIT THE CLAIM FORM EITHER BY MAIL OR VIA THAT WEBSITE.**

**If you do not want to be legally bound by the settlement, your exclusion request must be received by mail by [[date]]. If you do not submit a valid exclusion request, you will release any claims you may have and be bound by the settlement. For instructions, visit the website or call the phone number above.**

### WHO IS IN THE SETTLEMENT CLASSES?

For this settlement, there is a **Towing Class** and a **Charging Class**. You might be a member of one or both (or neither).

**You are a member of the Towing Class if:** Between March 1, 2018, to August 1, 2022, you paid fees to either the Town of Brookside, Jett's Towing, Rich's Towing, or any other towing company or service (including any combination thereof) to secure the release of a vehicle towed on the orders of the Brookside Police Department following a traffic stop. This excludes any person who has already released claims against Brookside related to or concerning the payment of such fees.

**You are a member of the Charging Class if:** Between March 1, 2018 to August 1, 2022, you were charged with an offense in the Brookside Municipal Court following a traffic stop by the Brookside Police Department. This excludes any person who has already released claims against Brookside related to or concerning such charges.

If you believe you fit into one or both of those categories, then you may be entitled to a monetary payment and/or other non-monetary relief, as in the full notice and the Settlement Agreement available at *www.website.com*.

### WHO REPRESENTS THE CLASSES?

The Court has approved the following attorneys to represent the settlement classes. You will not be charged for these lawyers. If you want to be represented by your own lawyer instead, you may hire one at your own expense.

| Jaba Tsitsuashvili | Samuel B. Gedge | William M. Dawson |
|---|---|---|
| Institute for Justice | Institute for Justice | Dawson Law Office |
| 901 N. Glebe Road, Suite 900 | 901 N. Glebe Road, Suite 900 | 1736 Oxmoor Road #101 |
| Arlington, VA 22203 | Arlington, VA 22203 | Birmingham, AL 35209 |
| Tel: (703) 682-9320 | sgedge@ij.org | Tel: (205) 307-7021 |
| jtsitsuashvili@ij.org | | bill@billdawsonlaw.com |

### WHERE CAN I GET ADDITIONAL INFORMATION?

Details are in the full notice and the Settlement Agreement, which can be obtained at *www.website.com*. You can also call the settlement administrator at 1-999-999-9999, or contact the class counsel listed above.

By order of: Judge Anna M. Manasco, Hugo L. Black United States Courthouse, Birmingham, Alabama 35203

***QUESTIONS? VISIT WWW.WEBSITE.COM OR CALL TOLL FREE 1-999-999-9999***

# EXHIBIT 4
*Settlement Agreement*



**ANGEION GROUP**
**Writing the Rules**

1650 Arch Street • Suite 2210 • Philadelphia PA 19103
www.angeiongroup.com

---

## STATEMENT OF WORK AND PROJECT PROPOSAL
### *Proprietary & Confidential*

**Date**: February 4, 2026

**Angeion Project Name**: Brookside Coleman

**Party Responsible for Settlement Administration Costs**: The Town of Brookside, Alabama ("Brookside") via the settlement fund

---

### SCOPE OF WORK & COST BREAKDOWN:

**See Settlement Agreement (attached as Exhibit A) and enclosed Angeion Group Project Proposal ("Proposal") (attached as Exhibit B), dated February 4, 2026, to implement Angeion's duties under the Settlement Agreement. The Services (as herein defined) are subject to these terms and conditions.**

### TERMS AND CONDITIONS:

1. **Services.** Angeion Group, LLC ("Angeion") shall perform the services specified in the Settlement Agreement and Proposal (collectively, the "Services"). Angeion will only perform work stated in the Proposal. If **Brookside and Institute for Justice** (each a "Client" and together the "Clients") desire additional services, the parties shall agree in writing, specifying the nature and fees for such services (each, a "Change Order"). Angeion shall only take direction from with respect to the Services, and Change Orders may only be executed by, both the IJ Key Person and the Brookside Key Person (together, the "Client Parties"). Angeion shall not take action at the direction of only one of the IJ Key Person or the Brookside Key Person. As of the date of this Agreement, the IJ Key Person is Jaba Tsitsuashvili, and the Brookside Key Person is Warren Kinney. IJ and Brookside may change their Key Person by providing written notice to the other two parties. Angeion may rely upon, and Clients shall be bound by, any direction, advice or information provided by the Client Parties to the same extent as if provided by Clients. Angeion will not provide Clients or any other party with any legal advice.

2. **Fees and Payment.** Unless otherwise stated in the Proposal, Clients agree that payment will be made to Angeion from the settlement fund within 30 days after the date of each invoice. The Parties anticipate that payments will be made by Angeion making draws from amounts deposited in the settlement fund (called the Escrow Account in the Settlement Agreement). In order to make a draw, Angeion shall follow the process described in the Settlement Agreement and provide regular invoicing to the Client Parties. Client Parties shall, in accordance with the Settlement Agreement, review the invoice and provide joint approval to Angeion to draw payments from the settlement fund. Angeion has provided a "Not to exceed" amount for the services, based on a class not exceeding 9,000, and as described in the Settlement Agreement and the proposal that Angeion provided (the Settlement Agreement and proposal together provide the "Scope"). Any adjustment to Scope, including, but not limited to, optional services, the current costs for both Towing and Charging classes, and postage expenses above the postage estimates will be excluded and

addressed separately and will require a Change Order. All costs related to media and notice issuance are due and payable in full prior to the commencement of such activities; provided, however, that Angeion acknowledges that the CAFA notices will need to be provided before funds are deposited into the settlement fund, and Angeion shall invoice for those notice fees. All advertising is subject to the publisher's approval, which may include an extensive legal review. Publishers retain the right to decline advertising. Internet properties and networks commonly adjust rates throughout the calendar year without notification. Publisher price increases that are not accompanied by an adjustment in the budget may reduce the total number of impressions purchased. Brookside shall reimburse Angeion for all pre-approved, reasonable expenses arising from or relating to the Services. Late payments will incur a late charge of 1.5% (or the highest rate allowable by law, whichever is lower) per month on the outstanding balance from the date due until the date of actual payment. Angeion may suspend the Services if Brookside does not remit timely payment. Angeion acknowledges and agrees that, as set forth in the Settlement Agreement, if total fees exceed $205,000, the Agreement may be terminated. Without limiting the foregoing, all parties acknowledge that the Settlement Agreement provides that IJ may take additional actions at its own costs to make additional outreach to attempt to locate members of the classes. If IJ desires to take such actions, and if IJ desires to work with Angeion for those services, IJ and Angeion may separately contract for those services at the rates provided in the Proposal, and IJ shall keep Brookside informed of any such actions.

**3. Data.** Angeion has implemented and will maintain technical, administrative, physical, and organizational safeguards and security measures (collectively, the "Safeguards") to protect class members' data (the "Data") in accordance with any applicable data privacy and security laws and as set forth in a settlement agreement or court order applicable to the Services. Clients acknowledge and understand that the electronic transmission and storage of Data is not, and cannot be, guaranteed to be secure or error free, and that the Data could be intercepted, corrupted, lost, or destroyed. Each party must provide written notification to the other party as soon as reasonably practicable, however no later than 48 hours, after a party has actual knowledge of a breach that affects the confidentiality, integrity, or availability of the Data. Such party shall promptly mitigate such risk or potential problem at that party's expense.

**4. Retention of Documents & Data**: Angeion will retain Services-related data and bank and tax documents as needed to comply with federal and state law requirements and any settlement agreement or court order applicable thereto. Unless otherwise requested in writing, data and Client-related information will be deleted from Angeion's system three years after the applicable matter concludes or as otherwise required by Angeion's data retention policy.

**5. Bank Accounts; Financial Services.** Unless directed otherwise in writing, for funds directed to Angeion for distribution or as otherwise related to the Services, including qualified settlement funds, Angeion will establish deposit accounts (i.e., non-interest-bearing accounts) with financial institutions insured by the FDIC or backed by the full faith and credit of the United States Government, electronic payment service providers, or those otherwise appropriate to support the Services (each an "Approved Financial Institution"). Angeion may derive financial benefit from an Approved Financial Institution and other third parties in connection with the funds directed to Angeion and/or investment thereof, including, but not limited to, discounts and service or referral fees.

**6. Acknowledgment and Approval.** Angeion is not responsible or liable for diminution of the amounts directed to Angeion that may result from a deposit made with an Approved Financial Institution, including any losses resulting from a default by the Approved Financial Institution, the delivery of electronic payments, or other credit losses. Any deposits made pursuant to this section are at the sole risk of Clients. Clients hereby agree that Angeion will have acted in accordance with Clients' direction in depositing with or directing the funds to any Approved Financial Institution, and Angeion is not required to make any further inquiries or perform any due diligence in respect of any Approved Financial Institution.

**7. Term and Termination.** These Terms and Conditions commence on the earliest date upon which: (i) Angeion commences work as described in the Proposal; (ii) the last date the Proposal is fully executed; or (iii) the last date a settlement agreement naming Angeion as the settlement administrator is fully executed and will remain in effect until the earlier of the termination of the Proposal, if applicable, or the completion of the Services. Clients may terminate the Proposal if Angeion materially breaches its obligations and does

not substantially cure such breach within 30 days of receiving written notice from Client. Notwithstanding Angeion's right to suspend Services as provided in Section 2 and after providing written notice of a breach of Client's obligation, Angeion may terminate the Proposal if Client fails to cure, to Angeion's reasonable satisfaction, said breach within ten (10) business days of receiving notice thereof. Upon termination, Client shall pay Angeion all amounts due pursuant to Section 2 through the date of termination. Angeion acknowledges that the Settlement Agreement provides for several different scenarios under which the Settlement Agreement is terminated or will not take effect (e.g., failure by a court to approve the Settlement Agreement). If the Settlement Agreement is terminated or fails to be in force for any reason, the Agreement is also terminated and all work under the Proposal shall cease.

**8. Confidentiality.** The party receiving Confidential Information (as herein defined) shall (i) only disclose the Confidential Information to its employees, contractors, agents, or representatives (collectively, "Representatives") who need to know the Confidential Information and are bound to confidentiality obligations no less restrictive than those set forth herein; (ii) not disclose, and will direct its Representatives not to disclose, the Confidential Information to any other person or entity; and (iii) use the Confidential Information to assist the receiving party in performing its obligations under the Agreement, including for Angeion to improve how Angeion performs the Services and any other services, and not for any other purpose. "Confidential Information" means the Data and any non-public information of either party that the disclosing party discloses, directly or indirectly, or to which the receiving party may have access, which a reasonable person would consider confidential, or which is marked "confidential" or "proprietary" or some similar designation by the disclosing party. If the receiving party is required to disclose any Confidential Information by operation of law or court order, the receiving party shall (i) immediately notify the disclosing party, to the extent permitted by law; and (ii) only release the Confidential Information required to be released.

**9. Intellectual Property/ Rights of Ownership.** Unless otherwise stated in the Proposal, this is not a work-for-hire agreement. To the extent deliverables are created for Clients, Angeion or a third party retains the copyright, all intellectual property rights, and moral rights in the deliverables; provided, however, that Angeion obtains no rights to intellectual property of the Clients, including, but not limited to, logos or trademarks, that may be used in the deliverables. All software programs and other materials created or furnished by Angeion during the performance of Services are solely owned by Angeion. The term "program" includes, without limitation, data processing programs, specifications, applications, routines, and documentation. Clients shall not copy or permit others to copy the source code from the support software or any other programs or materials furnished to Clients. Fees and expenses paid by Clients grant only a limited license for use during and in connection with the Services and does not transfer to or vest in Clients any ownership rights therein.

**10. Representations and Warranties**. Clients represent and warrant they have obtained, and to the extent required, covenant to obtain, any and all approvals for Angeion to access the Data to allow Angeion to perform the Services and any Data or wire instructions that Clients transmit to Angeion will be free of viruses, worms, Trojan horses, time bombs, or other harmful codes that could adversely affect the Data or Angeion. ANGEION MAKES NO REPRESENTATIONS, WARRANTIES OR GUARANTEES AS TO THE QUALITY, SUITABILITY OR ADEQUACY OF THE SERVICES FOR ANY PURPOSE OR USE. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PROPOSAL, ALL GUARANTIES, WARRANTIES, CONDITIONS AND REPRESENTATIONS, EXPRESS OR IMPLIED, ARE HEREBY EXPRESSLY REJECTED AND DISCLAIMED.

**11.** Limitation of Liability. IN NO EVENT SHALL ANGEION BE LIABLE TO CLIENTS FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, STATUTORY, SPECIAL, EXEMPLARY, OR PUNITIVE DAMAGES, INCLUDING LOST PROFITS, LOSS OF USE, LOSS OF DATA, LOSS OF TIME, INCONVENIENCE, LOST BUSINESS OPPORTUNITIES, DAMAGE TO GOODWILL OR REPUTATION, OR COSTS OF COVER, REGARDLESS OF WHETHER SUCH LIABILITY IS BASED ON BREACH OF CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE, AND EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR SUCH DAMAGES COULD HAVE BEEN REASONABLY FORESEEN. ANGEION'S ENTIRE AGGREGATE LIABILITY FOR ANY

CLAIMS OR DAMAGES RELATING TO THE SERVICES OR THE PROPOSAL SHALL NOT EXCEED THE AGGREGATE FEES PAID BY CLIENT TO ANGEION. EXCEPT WITH RESPECT TO CLIENT'S OBLIGATION TO PAY THE FEES TO ANGEION, NO ACTION MAY BE BROUGHT FOR ANY CLAIM OR LOSS RELATING TO OR ARISING OUT OF THE PROPOSAL MORE THAN ONE YEAR AFTER THE ACCRUAL OF SUCH CAUSE OF ACTION. The limitations set forth in this section shall not apply in cases of gross negligence or willful misconduct by Angeion.

**12. Governing Law, Venue and Waiver of Jury Trial.** The Agreement shall be governed by, and construed in accordance with, the laws of Pennsylvania, without regard to the conflict of laws' provisions thereof. Any legal suit, action or proceeding arising out of or related to these Terms and Conditions or the Services must be instituted in Philadelphia County, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

**13. Force Majeure.** Except for Client's payment obligations, neither party shall be liable for any failure or delay in the performance of its obligations if such failure or delay is caused by factors beyond its reasonable control (including, but not limited to pandemics, natural disasters, war, strikes, cyber-attacks, or governmental actions), provided that the affected party promptly notifies the other within 15 business days of its occurrence. Both parties may renegotiate timelines or obligations if a force majeure event exceeds 30 days.

**14. Waivers; Rights Cumulative.** No waiver by any party of any of the provisions of the Proposal or herein shall (i) be effective unless explicitly set out in writing and signed by the party so waiving or (ii) operate, or be construed, as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, delay in exercising, or partial exercise of any right, remedy, power or privilege arising from the Agreement shall operate or be construed as a waiver thereof. The rights and remedies of the parties provided will be cumulative and not exclusive of any rights or remedies provided by law or equity.

**15. Notices.** All notices, requests, consents, claims, demands, waivers, and other communications hereunder (each a "Notice") shall be in writing and addressed to each party at the address set forth in the Proposal or otherwise designated by the receiving party in writing. All Notices shall be delivered by (i) personal delivery, (ii) nationally recognized overnight courier (with all fees pre-paid), (iii) facsimile (with confirmation of transmission), or (iv) certified or registered mail, return receipt requested and postage prepaid. All Notices to Angeion will include a copy to legal@angeiongroup.com. Except as otherwise provided in these Terms and Conditions, a Notice is effective only upon receipt by the receiving party and if the party giving the Notice has complied with the requirements of this section.

**16. Survival.** The parties' rights and obligations under Sections 2, 4, 5, 8, 9, 11, 12, 13, 14, 15, 16, and 17 (and all provisions of the Proposal which may reasonably be interpreted as surviving the expiration or termination of the Proposal) shall survive the expiration or termination of the Proposal.

**17. Miscellaneous.** If any term or provision of the Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other provisions of the Proposal or invalidate or render unenforceable such provision in any other jurisdiction. These Terms and Conditions, together with the Proposal constitute the entire agreement between the parties with respect to the subject matter hereof and supersede any and all previous agreements, negotiations, arrangements, and understandings between the parties. These Terms and Conditions do not create for any third-party beneficiary rights with respect to either of the parties. Client may not assign any rights or obligations hereunder without Angeion's prior written consent. Angeion may assign its obligations under the Proposal to and engage a third party to provide any of the Services is specifically excluded from the restrictions set forth in this section.

*[signature page follows]*

## ACCEPTANCE AND AUTHORIZATION

The terms and conditions set forth herein shall become effective upon the execution of this Agreement by Clients and Angeion.

Client: INSTITUTE FOR JUSTICE

Name: DANIEL KNEPPER

Position: CFO

Signature: *(signature)*

Date: 2/6/26

Client: Brookside

Name: R. Warren Kinney

Position: Counsel for Brookside

Signature: /s/ R. Warren Kinney

Date: February 6, 2026

Company: Angeion Group, LLC

Name: Eric Schachter, Esq.

Position: Executive Vice President of Class Action Services

Signature: *(signature)*

Date: February 4, 2026

# EXHIBIT A

[Settlement Agreement]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

BRITTANY COLEMAN, et al.,

        Plaintiffs,

        v.

THE TOWN OF BROOKSIDE,
ALABAMA, et al.,

        Defendants.

2:22-cv-423-AMM
(putative class action)

## PROPOSED CLASS ACTION SETTLEMENT PURSUANT TO

## FEDERAL RULES OF CIVIL PROCEDURE 23(b)(2), 23(b)(3), AND 23(e)

# Table of Contents

Introduction ................................................................................................1

Jurisdiction and Venue..............................................................................3

Definitions.................................................................................................4

Preliminary Approval Plan ........................................................................7

Certification of the Towing Class ..............................................................8

Certification of the Charging Class............................................................9

Damages for the Towing Class ................................................................10

Damages for the Charging Class..............................................................10

Systemic Relief for the Towing Class .....................................................11

Systemic Relief for the Charging Class ...................................................13

Attorneys' Fees .......................................................................................23

Claims Administrator...............................................................................24

Administration Costs................................................................................25

Establishment of Escrow Account ...........................................................25

Notice Plan..............................................................................................27

Claim Form Submissions.........................................................................30

Processing and Reviewing Claim Form Submissions ...............................37

Exclusions ...............................................................................................38

Objections ...............................................................................................43

Final Approval Plan ................................................................................44

Distribution of Class Funds .....................................................................44

Distribution of Unclaimed Class Funds....................................................45

Releases...................................................................................................45

Additional Settlement Provisions ............................................................46

Plaintiffs Brittany Coleman, Brandon Jones, Chekeithia Grant, and Alexis Thomas (the "Named Plaintiffs"), on behalf of themselves and all others similarly situated (the "Classes"), and Defendant The Town of Brookside ("Brookside") (collectively, the "Parties") intend to be bound by the terms of this Proposed Class Action Settlement of Counts 1–4 of the First Amended Class Action Complaint in this case (the "Settlement") and respectfully submit the Settlement to the Court for approval pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(e).

## Introduction

1.    The Named Plaintiffs brought this class action on April 4, 2022 and filed the operative First Amended Class Action Complaint (the "Complaint") on June 17, 2022. The Complaint challenges the constitutionality, under the Due Process Clause of the Fourteenth Amendment, of specific policies and practices by Brookside and its vehicle-towing provider, Jett's Towing Inc.

2.    Count 1 alleges that Brookside and Jett's Towing implemented a system of towing and impounding cars for the institutional and personal profit and benefit of Brookside, its departments and officials, and Jett's Towing, in violation of the Due Process Clause of the Fourteenth Amendment. Relatedly, Count 4 alleges that the towing system lacks adequate procedural safeguards, in violation of the Due Process Clause of the Fourteenth Amendment. Counts 1 and 4 seek monetary and systemic relief on behalf of the Named Plaintiffs and all others similarly situated.

1

3.     Counts 2 and 3 allege that Brookside implemented a system of charging, prosecuting, and adjudicating municipal court cases for the institutional and personal profit and benefit of Brookside and its departments and officials, in violation of the Due Process Clause of the Fourteenth Amendment. Counts 2 and 3 seek monetary and systemic relief on behalf of the Named Plaintiffs and all others similarly situated.

4.     Count 5 of the Complaint is an individual Fourth Amendment claim for damages by Named Plaintiff Coleman against three individual Brookside police officers. That claim is expected to be settled separately from the class claims addressed herein, on the condition of final approval of this Settlement. That individual settlement will encompass the Fourth Amendment harms alleged by Ms. Coleman arising from her handcuffing, which are facts separate and distinct from the facts supporting the due-process claims pleaded on behalf of the Classes and addressed by this Settlement.

5.     The Named Plaintiffs and Brookside have engaged in extensive discovery, including production of tens of thousands of pages of relevant documents, depositions of current and former Brookside officials, and depositions of the Named Plaintiffs.

6.     The Named Plaintiffs have asserted that the policies and practices challenged in Counts 1–4 of the Complaint, and as demonstrated in discovery,

prioritized generating revenue for the Brookside police department's expansion, led to a significant increase in traffic stops, vehicle tows, and citations, led to a significant increase in the revenue collected from those stops, and raise serious constitutional concerns under the Due Process Clause of the Fourteenth Amendment.

7.      The Named Plaintiffs and Brookside have negotiated this Settlement in good faith and at arm's length—including with the mediation assistance of Northern District of Alabama Magistrate Judge Staci Cornelius—and submit that it is fair, reasonable, adequate, and in the public interest.

8.      The Named Plaintiffs and Brookside have reached this Settlement for monetary and systemic relief on behalf of two classes: the Towing Class and the Charging Class (each defined below).

9.      The Named Plaintiffs and Brookside respectfully request that the Court preliminarily approve this Settlement, preliminarily certify the Towing Class and the Charging Class, preliminarily appoint Named Plaintiffs and their counsel as class representatives, and approve the Parties' processes for final approval, final class certification, and final judgment (including retention of jurisdiction to enforce the terms of the Settlement), as detailed below.

## Jurisdiction and Venue

10.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343.

11.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1), (b)(2).

**Definitions**

12.    "Administration Costs" means the costs and expenses incurred by the Claims Administrator in the performance of its duties pursuant to this Settlement. The Parties' agreement with the Claims Administrator is attached as Exhibit 4 to this Settlement and incorporated as if fully set forth herein.

13.    "Brookside" means the Town of Brookside and all of its past, current and future officials, representatives, officers, agents, employees, contractors, and anyone acting for, on behalf of, or at the direction of the Town of Brookside or any of its past, current, or future officials, representatives, officers, agents, employees, or contractors.

14.    "Charging Class" means the members of the class defined in ¶ 36 below who do not validly and timely request exclusion from the class under the conditions and procedures described in the Class Notice.

15.    "Charging Class Fund" means the $500,000 fund created by Brookside from which members of the Charging Class may make a claim.

16.    "Claim Form" means the Court-approved form that is required to make a claim to the Towing Class Fund and/or the Charging Class Fund, request exclusion from the Towing Class and/or the Charging Class, or object to the Settlement. The Claim Form is attached as Exhibit 2 to this Settlement.

17.    "Claims Administrator" means Angeion Group LLC. The Parties'

4

agreement with the Claims Administrator is attached as Exhibit 4 to this Settlement and incorporated as if fully set forth herein.

18.    "Class Counsel" means Jaba Tsitsuashvili and Sam Gedge of the Institute for Justice and William Dawson of the Dawson Law Office.

19.    "Classes" means the Towing Class and the Charging Class.

20.    "Class Notice" means the Court-approved notice that is required by Federal Rules of Civil Procedure 23(c)(2) and 23(e)(1). The Class Notice includes the Claim Form and instructions for making a claim to the Towing Class Fund and/or the Charging Class Fund, requesting exclusion from the Towing Class and/or the Charging Class, or objecting to the Settlement. The Class Notice is attached as Exhibit 1 to this Settlement.

21.    "Court" means the United States District Court for the Northern District of Alabama or United States District Court Judge Anna M. Manasco.

22.    "Effective Date" means the date of the Court's entry of the Final Approval Order, provided no objections are made to the Settlement. If objections are made to the Settlement, then the Effective Date means the later of: (a) expiration of the time to file a notice of appeal of the Final Approval Order with no such notice filed; or (b) if appeals are made to the Final Approval Order, then the earlier of the date of the appellate mandate affirming the Final Approval Order or the entry of dismissal of all such appeals. For purposes of clarity: the phrase "Settlement

Effective Date" in this agreement should be construed to mean the same thing as "Effective Date."

23.     "Escrow Account" means an account established by the Claims Administrator designated for the purpose of depositing and distributing the Towing Class Fund, the Charging Class Fund, and the $155,000 allocated to Administration Costs.

24.     "Final Approval Order" means the order of the Court providing final approval of the Settlement, entering judgment, and retaining jurisdiction to enforce the Settlement.

25.     "Parties" means the Named Plaintiffs and Brookside.

26.     "Settlement" means this Settlement and any order(s) of the Court approving or implementing it, including but not limited to class certification, preliminary approval, final approval, judgment, and retention of jurisdiction.

27.     "Towing Class" means the members of the class defined in ¶ 33 below who do not validly and timely request exclusion from the class under the conditions and procedures described in the Class Notice.

28.     "Towing Class Fund" means the $1,000,000 fund created by Brookside from which members of the Towing Class may make a claim.

29.     "Verified Towing Incident" means each instance of a vehicle towed on the orders of the Brookside Police Department following a traffic stop from March

1, 2018 to August 1, 2022.

## Preliminary Approval Plan

30.    On February 6, 2026, the Named Plaintiffs and Class Counsel will move for preliminary approval of this Settlement.

31.    The motion for preliminary approval will request that the Court enter a preliminary approval order that:

a.    Preliminarily certifies the Towing Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

b.    Preliminarily certifies the Charging Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

c.    Preliminarily appoints Brittany Coleman, Brandon Jones, and Chekeithia Grant as class representatives for the Towing Class.

d.    Preliminarily appoints Brittany Coleman, Brandon Jones, Chekeithia Grant, and Alexis Thomas as class representatives for the Charging Class.

e.    Preliminarily appoints Jaba Tsitsuashvili and Sam Gedge of the Institute for Justice and William Dawson of the Dawson Law Office as Class Counsel for the Towing Class and the Charging Class.

f.    Approves the Class Notice and Claim Form accompanying this

Settlement (attached as Exhibits 1 and 2) and orders that the Claims Administrator send it to potential members of the Towing Class and potential members of the Charging Class within 75 days of the preliminary approval order.

g.    Approves the Class Notice's procedures and deadline for potential members of the Classes to submit claims for one or both Classes, request exclusion from one or both Classes, or bring objections to the Settlement within 120 days of the Claims Administrator initially sending the Class Notices.

h.    Schedules the final approval hearing required by Federal Rule of Civil Procedure 23(e)(2).

32.    Brookside shall not contest the motion for preliminary approval.

## Certification of the Towing Class

33.    The Parties agree to and propose certification of the following Towing Class under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(e), with the Named Plaintiffs and Class Counsel appointed to represent the Towing Class:

"All persons who, from March 1, 2018 to August 1, 2022, have paid fees to either the Town of Brookside, Jett's Towing, Rich's Towing, or any other towing company or service (including any combination thereof) to secure the release of a vehicle towed on the orders of the Brookside Police Department following a traffic stop. Excluded from the class are: (1) all persons who have released claims against

Brookside in the cases listed in footnote 1[1]; (2) any person who properly executes and submits a timely exclusion request pursuant to the procedures described in ¶¶ 98–104 below."

34.    The Parties agree and propose that the Towing Class should be certified for the classwide damages in ¶ 39 below and the classwide systemic relief in ¶¶ 41–43 below.

35.    Brookside agrees to certification of the Towing Class for the limited purpose of effectuating the Settlement. If the Settlement does not become final for any reason, Brookside reserves the right to oppose certification of the Towing Class in the ensuing resumption of litigation, during which Brookside's agreement to certification of the Towing Class for purposes of the Settlement may not be cited as an admission by Brookside of the propriety of Towing Class certification.

### Certification of the Charging Class

36.    The Parties agree to and propose certification of the following Charging Class under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(e), with the Named Plaintiffs and Class Counsel appointed to represent the Charging Class:

"All persons who, from March 1, 2018 to August 1, 2022, have been charged with an offense in the Brookside Municipal Court following a

---

[1] *Witt v. Brookside*, 2:21-cv-773-AMM (N.D. Ala.); *Harris v. Brookside*, 2:21-cv-1341-AMM (N.D. Ala.); *Jones v. Brookside*, 2:22-cv-472-NAD (N.D. Ala.); *Jones v. Brookside*, 2:22-cv-298-MHH (N.D. Ala.); *Moffett v. Brookside*, 2:22-cv-255-RDP (N.D. Ala.); *Minnifield v. Brookside*, 2:22-cv-299-MHH (N.D. Ala.); *Jones v. Sellers*, 2:23-cv-364-GMB (N.D. Ala.); *Ward v. Brookside*, 2:23-cv-527-AMM (N.D. Ala.); *Griffith v. Brookside*, 2:23-cv-687-SGC (N.D. Ala.); *Wright v. Brookside*, 2:23-cv-1543-AMM (N.D. Ala.); *Wright v. Brookside*, 1-cv-2022-900890 (Jefferson Cnty., Ala. Cir. Ct.); *Brumlow v. Brookside*, 2:20-cv-650 (N.D. Ala.); *Peyton Hyatt v. Brookside* (pre-filing settlement).

traffic stop by the Brookside Police Department. Excluded from the class are: (1) all persons who have released claims against Brookside in the cases listed in footnote 1 above; (2) any person who properly executes and submits a timely exclusion request pursuant to the procedures described in ¶¶ 98–104 below."

37.    The Parties agree and propose that the Charging Class should be certified for the classwide damages in ¶ 40 below and the classwide systemic relief in ¶¶ 44–56 below.

38.    Brookside agrees to certification of the Charging Class for the limited purpose of effectuating the Settlement. If the Settlement does not become final for any reason, Brookside reserves the right to oppose certification of the Charging Class in the ensuing resumption of litigation, during which Brookside's agreement to certification of the Charging Class for purposes of the Settlement may not be cited as an admission by Brookside of the propriety of Charging Class certification.

### Damages for the Towing Class

39.    Brookside agrees to pay $1,000,000 in damages (the Towing Class Fund defined in ¶ 28 above) to the Towing Class, to be distributed as detailed in ¶¶ 89–92 below.

### Damages for the Charging Class

40.    Brookside agrees to pay $500,000 in damages (the Charging Class Fund defined in ¶ 15 above) to the Charging Class, to be distributed as detailed in ¶ 88 below.

**Systemic Relief for the Towing Class**

41.    Within 30 days of the Settlement Effective Date, Brookside shall permanently repeal the portions of its towing ordinances (Nos. 519, 527, 533) requiring a payment of money (whether designated a "fee," "restitution," or any other title) to recover any vehicle towed or impounded (or ordered towed or impounded) by Brookside. Brookside shall not reinstate any such monetary imposition for the release of a towed or impounded vehicle.

42.    For any and all vehicle tows or impounds after the Settlement Effective Date, Brookside shall not demand, require, or receive any money to secure a towed or impounded vehicle's release. Nor shall Brookside ask any towing or impounding contractor or provider to require proof of any payment to Brookside before releasing a towed or impounded vehicle.

43.    Within 30 days of the Settlement Effective Date, Brookside shall notify each member of the Towing Class who has not been excluded from the Towing Class:

> "In 2018, the Town of Brookside's police department implemented an aggressive style of policing that prioritized generating revenue for the department's expansion. That decision led to a significant increase in traffic stops, vehicle tows, and citations, as well as a significant increase in the revenue collected from those stops. The Town recognizes the policy of aggressive policing likely interfered with the Town's obligation to administer justice equally under law. The policy also undermined the public's trust in the justice system and raised serious constitutional concerns under the Due Process Clause of the Fourteenth Amendment. The Town has discontinued the policy of aggressive

11

policing. The Town's leadership – including the Town Council, Mayor, Chief of Police, and Prosecutor – apologize to the community and every person affected by the aggressive policing practice for the way it affected their faith and confidence in the judicial system. We look forward to earning your trust and confidence."

a.  For every such recipient member of the Towing Class who at that time owes a fee or other monetary imposition related to the release of a towed or impounded vehicle, this notice shall also inform them that their outstanding amount is remitted (canceled) and considered satisfied. Any such individual who nevertheless makes payment(s) toward that canceled amount at any time in the future shall have the payment(s) refunded within 10 days, with the notice of cancelation provided again.

b.  Brookside may satisfy the notice obligations of this provision by mailing each individual's notification(s) to the same address(es) used by the Claims Administrator for that individual's Towing Class Fund pro-rata check.

c.  At least 3 days before sending the notices required by this provision, Brookside shall provide Class Counsel a spreadsheet of the individuals receiving the notices, including their names, addresses, and amounts of monetary obligations canceled.

**Systemic Relief for the Charging Class**

44.    Within 30 days of the Settlement Effective Date, Brookside shall notify

each member of the Charging Class who has not been excluded from the Charging

Class:

> "In 2018, the Town of Brookside's police department implemented an aggressive style of policing that prioritized generating revenue for the department's expansion. That decision led to a significant increase in traffic stops, vehicle tows, and citations, as well as a significant increase in the revenue collected from those stops. The Town recognizes the policy of aggressive policing likely interfered with the Town's obligation to administer justice equally under law. The policy also undermined the public's trust in the justice system and raised serious constitutional concerns under the Due Process Clause of the Fourteenth Amendment. The Town has discontinued the policy of aggressive policing. The Town's leadership – including the Town Council, Mayor, Chief of Police, and the Prosecutor – apologize to the community and every person affected by the aggressive policing practice for the way it affected their faith and confidence in the judicial system. We look forward to earning your trust and confidence."

> a.    For every such recipient member of the Charging Class who at that time owes any outstanding fines, fees, or costs to Brookside related to arrests, charges, prosecutions, or convictions in Brookside Municipal Court between March 1, 2018 and August 1, 2022, this notice shall also inform them that those outstanding amounts are remitted (canceled) and considered satisfied, pursuant to Ala. Code § 12-14-15. Any individual who nevertheless makes payment(s) toward such canceled amount(s)

at any time in the future shall have the payment(s) refunded within 10 days, with the notice of cancelation provided again.

b.  Brookside may satisfy the notice obligations of this provision by mailing each individual's notification(s) to the same address(es) used by the Claims Administrator for that individual's Charging Class Fund pro-rata check.

c.  At least 3 days before sending the notices required by this provision, Brookside shall provide Class Counsel a spreadsheet of the individuals receiving the notices, including their names, addresses, and amounts of monetary obligations canceled.

45.  As required by Ala. Code § 12-14-15, Brookside's mayor shall also report these remittances and notifications, in writing, to the Brookside Town Council at the Council's first regular meeting following the remittances and notifications. In explaining the reasons for the remittances to the Town Council in writing, as required by Ala. Code § 12-14-15, the Brookside mayor shall explain:

"As part of the settlement of the *Coleman et al. v. Town of Brookside et al.* class action lawsuit, case number 2:22-cv-423-AMM, in the United States District Court for the Northern District of Alabama, the Town of Brookside acknowledges that certain of its policing decisions beginning in 2018 led to an aggressive style of policing that prioritized generating revenue for the department's expansion. That decision led to a significant increase in traffic stops, vehicle tows, and citations, as well as a significant increase in revenue collected from those stops. Brookside recognizes the policy of aggressive policing likely interfered with the Town's obligation to administer justice equally under law,

14

undermined the public's trust in the justice system, and raised serious constitutional concerns under the Due Process Clause of the Fourteenth Amendment. Brookside has taken subsequent remedial measures to discontinue this aggressive policing and to ensure public trust in the justice system. The Town's leadership looks forward to earning the public's trust and confidence."

46.     Within 30 days of the Settlement Effective Date, Brookside shall dismiss with prejudice all prosecutions and appeals that are still pending in the Brookside Municipal Court or still pending on appeal from the Brookside Municipal Court (at any level of the judiciary) that were initiated in the Brookside Municipal Court or appealed (by either the prosecution or defense) from the Brookside Municipal Court between March 1, 2018 and August 1, 2022. In addition to being with prejudice, the notice of dismissal shall also state that all conditions of the prosecution are considered satisfied (including the lack of any conviction).

      a.     At least 3 days before sending the notices required by this provision, Brookside shall provide Class Counsel a spreadsheet of the individuals receiving the notices, including their names, addresses, charges dismissed, and (if applicable) appellate case numbers.

47.     The Class Notice shall inform the recipients that each member of the Charging Class who participates in the Settlement (i.e., is not excluded from the Settlement) is entitled to receive, as part of the Settlement, a pardon from the Brookside mayor pursuant to Ala. Code § 12-14-15, on the condition that the person

15

agrees to release all legal claims they may have against Brookside arising from the circumstances that gave rise to the conviction(s) being pardoned that are not released as part of this Settlement. Such pardon request must be made within 120 days of the Effective Date.

a.  Additionally, the Class Notice shall inform the recipients that each member of the Charging Class who participates in the Settlement and elects to receive a pardon is entitled to receive from Brookside, free of charge, all records necessary to comply with the requirements for expungement of criminal records in Ala. Code §§ 15-27-1 through 15-27-21, including, but not limited to, the records, documents, and written certifications necessary to satisfy Ala. Code § 15-27-1(b) in general, § 15-27-1(b)(1) in particular, and § 15-27-12.

b.  Additionally, the Class Notice shall inform the recipients that each member of the Charging Class who participates in the Settlement and elects to receive a pardon is entitled to receive from Brookside a certification in writing that the person has no outstanding monetary obligations (including fines, fees, or costs) to Brookside related to arrests, charges, prosecutions, or convictions in Brookside Municipal Court between March 1,

2018 and August 1, 2022 because those obligations have been remitted and deemed satisfied.

c.   These provisions become available to Charging Class members upon the Settlement Effective Date.

d.   Within 5 days of the expiration of the 120-day period to request the pardons offered by this provision, Brookside shall provide Class Counsel a spreadsheet of the individuals who requested and received such pardons, including their names and addresses.

48.   For 5 years following the Settlement Effective Date, Brookside shall retain 0% of any money received from any fines, fees, forfeitures, or court costs in relation to or by reason of any law-enforcement or code-enforcement source or action. Then, for the 10 years after the expiration of that initial 5-year period, Brookside shall retain no more than 1% of its general operating budget from any fines, fees, forfeitures, or court costs in relation to or by reason of any law-enforcement or code-enforcement source or action. Then, for the 15 years after the expiration of the 10-year period detailed in the previous sentence, Brookside shall retain no more than 2.5% of its general operating budget from any fines, fees, forfeitures, or court costs in relation to or by reason of any law-enforcement or code-enforcement source or action. During these periods, all such funds exceeding the then-allowed retention percentage shall be deposited in equal parts with the Alabama

Crime Victims Compensation Fund and the Alabama Fair Trial Tax Fund (after accounting for any amounts required by state law to be earmarked for other state programs).

49.    Brookside shall fully comply with the Alabama Rules of Criminal Procedure regarding the forfeiture of secured bonds. At the first regularly scheduled Brookside Town Council meeting following the Settlement Effective Date, Brookside shall codify by ordinance its current informal practice of recommending to the judge of the Brookside Municipal Court to enter orders forfeiting bonds and issuing failure-to-appear warrants only after two consecutive, unexplained missed court appearances in the Brookside Municipal Court.

50.    Starting March 6, 2026, Brookside shall provide every defendant appearing in the Brookside Municipal Court the following explanation of rights, which shall also be posted at all times at the public court entrance:

NOTICE OF RIGHTS

o   The law requires that you be informed of your rights in this court.

o   You have the right to proceedings you can understand. When your case is called, inform the judge if you need an interpreter or cannot understand the proceedings for some other reason.

o   You have the right to an attorney. If you face a possible jail or prison sentence and cannot afford an attorney, you may request that the court appoint an attorney for you at no charge. If you make that request, the court will assess

18

your financial circumstances to determine whether you qualify for such appointment. If you do not qualify for such appointment, either because of your financial circumstances or because you do not face a possible jail or prison sentence, you remain entitled to retain an attorney at your own expense. You may request that the court reschedule your hearing date for these purposes.

o   You have the right to demand the nature and the reasons for the accusations against you.

o   You have the right to confront and cross-examine witnesses against you.

o   You are presumed innocent and will be regarded as innocent until you are proven guilty or you plead guilty.

o   If you plead not guilty, you are not required to prove your innocence or to testify in your own defense. The prosecution is required to prove you are guilty beyond a reasonable doubt.

o   If you plead guilty, you will have admitted to the violation brought against you and will have waived your rights to a trial and to the prosecution's burden of proof beyond a reasonable doubt. Unless indicated otherwise in your guilty plea agreement, you will have waived your right to appeal the conviction.

o   If you plead not guilty and are found guilty by the court, you have the right to appeal the court's finding of guilt or the court's penalty. You have 14 days from the day of this court's decision to file any such appeal.

o   If you do not understand these rights or have other questions concerning your case, inform the judge when your case is called.

51.   Starting March 6, 2026, Brookside, including its prosecutor and any

19

other representative officials, shall recommend to the Brookside Municipal Court that no court costs, fees, or other monetary obligations be imposed on any individual who has all charges arising from a single occurrence dismissed, nolle-prossed, or adjudicated not guilty.

52.     For 10 years following the Settlement Effective Date, Brookside shall not increase the compensation paid to its Municipal Court Judge(s) or its Municipal Prosecutor(s), except—should Brookside so choose—once per fiscal year in an amount to account for inflation.

53.     For 10 years following the Settlement Effective Date, Brookside shall not actively patrol Interstate 22. Nothing herein prevents or bars Brookside from responding to emergencies that may occur on Interstate 22 or from engaging in law enforcement activities on Interstate 22 if in response to discrete requests for aid or assistance from other law enforcement agencies.

54.     Starting from the Effective Date and going forward, Brookside shall implement the following transparency measures:

     a.     Brookside shall publicize a general operating budget each year. That budget shall be maintained publicly on the Town's official website and shall not be deleted. All Town annual financial reports from 2015 onward shall be maintained publicly on the Town's official website and shall not be deleted.

b.    All Brookside Town Council meetings postdating the Settlement Effective Date shall be open to the public and audio-recorded. Those recordings shall be preserved and maintained by the Town. Each meeting recording shall be made publicly available on the Town's official website for 6 months after the date of the meeting. The website shall state that older recordings are available at Town Hall for listening and/or downloading onto a USB or flash drive provided by the requestor.

c.    All Brookside Town Council meeting minutes postdating the Settlement Effective Date shall be maintained publicly on the Town's official website and shall not be deleted.

d.    All Brookside ordinances and resolutions shall be maintained publicly on the Town's official website and shall not be deleted.

e.    All Brookside contracts with vehicle towing providers, prosecutors, and municipal court judges (including those existing at the time of the Settlement Effective Date and those that come to exist in the future) shall be maintained publicly on the Town's official website and shall not be deleted.

55.    To enable the Named Plaintiffs and Class members to ensure compliance with the relief agreed to, Brookside shall provide Class Counsel at the

21

Institute for Justice the following documents and information on an annual basis, on April 1 of each year (or such other date as that the Parties mutually agree to in writing), for 10 years following the Settlement Effective Date:

    a.    Brookside's audited financial statement, which shall be compliant with Government Accounting Standards Board standards, per fiscal year.

    b.    Brookside's approved, final budget showing forecasted revenue and expenditures per fiscal year.

    c.    Any reports provided by Brookside to any state auditor.

    d.    Documents sufficient to show the amounts of fines, fees, forfeitures, and court costs retained by Brookside during the previous year and the amounts remitted to the Alabama Crime Victims Compensation Fund and the Alabama Fair Trial Tax Fund (as well as any other statutorily mandated state funds).

    e.    An attestation by the Town Clerk of Brookside's compliance with ¶¶ 42, 48, 49, 50, 51, 52, and 54 above.

    f.    An attestation by the Town Police Chief of Brookside's compliance with ¶ 53 above.

56.    Brookside shall issue a public statement, posted for 10 months after the Settlement Effective Date at each public entrance to the Brookside Town Hall, each

22

public entrance to the Brookside Municipal Court, each public entrance to the Brookside police department, each public entrance to the Brookside jail, and Brookside's official Town website, as well as any official Town social media account (e.g., Facebook, X/Twitter, Instagram, Bluesky, TikTok). It shall read:

> "As part of the settlement of the *Coleman et al. v. Town of Brookside et al.* class action lawsuit, case number 2:22-cv-423-AMM, in the United States District Court for the Northern District of Alabama, the Town of Brookside acknowledges that certain of its policing decisions beginning in 2018 led to an aggressive style of policing that prioritized generating revenue for the department's expansion. That decision led to a significant increase in traffic stops, vehicle tows, and citations, as well as a significant increase in revenue collected from those stops. Brookside recognizes the policy of aggressive policing likely interfered with the Town's obligation to administer justice equally under law, undermined the public's trust in the justice system, and raised serious constitutional concerns under the Due Process Clause of the Fourteenth Amendment. Brookside has taken subsequent remedial measures to discontinue this aggressive policing and to ensure public trust in the justice system. The Town's leadership looks forward to earning the public's trust and confidence."

### Attorneys' Fees

57.    The Named Plaintiffs and Class Counsel agree not to seek any attorneys' fees related to pre-Settlement litigation of this case, obtaining Settlement approval, litigating Settlement objections or Settlement objection appeals, administering the Settlement, or monitoring compliance with the Settlement.

58.    Class Counsel (or separate counsel hired by the Named Plaintiffs or unexcluded Class members) may seek attorneys' fees for work done in enforcing any provision of the Settlement.

59.    If this Settlement does not become final for any reason, nothing in this Settlement precludes the Named Plaintiffs or Class Counsel from seeking all reasonable attorneys' fees and costs they may be entitled to by law.

### Claims Administrator

60.    The Settlement's Claims Administrator shall be Angeion Group LLC.

61.    The Claims Administrator shall administer the Settlement pursuant to the terms herein and the terms of the Parties' agreement with the Claims Administrator, which is attached as Exhibit 4 to this Settlement and incorporated as if fully set forth herein.

62.    The Claims Administrator's work and obligations shall be supervised by the Parties' counsel, with the supervision of the Court as circumstances might require. Supervision of the Claims Administrator's work and obligations shall be for the purpose of ensuring that the Claims Administrator administers the terms of the Settlement in a rational, responsive, cost effective, and timely manner, and in a manner best practicable under the circumstances to achieve the Settlement's notice, claims processing, and distribution plans.

63.    The Claims Administrator shall maintain reasonably detailed records of its activities performed to administer the Settlement. The Claims Administrator shall maintain all records required by applicable laws in accordance with its normal business practices, and such records shall be made available to the Parties' counsel

upon request. The Claims Administrator shall provide information to the Court as the Court may require. The Claims Administrator shall provide the Parties' counsel the information and reports concerning notice, claims processing, and distribution as required by the provisions herein and by the Parties' agreement with the Claims Administrator.

## Administration Costs

64.    Separate and apart from Brookside's payment of $1 million in damages to the Towing Class and $500,000 in damages to the Charging Class, Brookside shall be responsible for the first $155,000 in Administration Costs.

65.    If the Claims Administrator's Administration Costs come to be less than $155,000, the remaining amount from that $155,000 sum shall revert to Brookside.

66.    If the Claims Administrator's Administration Costs come to exceed $155,000, all excess costs will be paid in equal amounts from the Towing Class Fund and the Charging Class Fund. If the Claims Administrator's Administration Costs come to exceed a total of $205,000, the Named Plaintiffs reserve the right to terminate the Settlement.

## Establishment of Escrow Account

67.    By February 20, 2026, the Claims Administrator shall establish a segregated Escrow Account at a federally insured financial institution, to be used for

the sole purpose of holding and distributing the $1 million in damages to the Towing Class, the $500,000 in damages to the Charging Class, and the $155,000 in potential Administration Costs.

68.    By February 27, 2026, Brookside shall deposit $133,500 in the Escrow Account for potential Administration Costs.

69.    The Claims Administrator shall provide the Parties' counsel an invoice of work done and costs incurred approximately every 30 days, each invoice to be approved or disputed in writing by the Parties' counsel within 5 days of receipt of the invoice. The Parties' counsel shall meet and confer for purposes of providing such approval or dispute. Upon each approval, the Claims Administrator may draw the approved amount from the Escrow Account.

70.    The Parties do not contemplate the Claims Administrator doing any work, incurring any costs, or drawing any funds from the Escrow Account before the Court enters a preliminary approval order, except for purposes of complying with the notice requirements of 28 U.S.C. § 1715(b), as detailed in ¶ 72 below.

71.    If the Court denies the motion for preliminary approval and that denial results in this Settlement being terminated pursuant to ¶¶ 122–124 below, the funds remaining in the Escrow Account shall revert to Brookside.

26

## Notice Plan

72.     By February 16, 2026, the Claims Administrator shall serve the notices required by 28 U.S.C. § 1715(b), including service on the Attorney General of the United States and on the appropriate state officials (as defined in 28 U.S.C. § 1715(a)) of all 50 states.

      a.    By February 23, 2026, the Claims Administrator shall provide the Parties' counsel written proof by email of the Claims Administrator's timely compliance with this requirement, including service lists, copies of notices, and sworn declarations of service suitable for filing with the Court.

      b.    The payment due to the Claims Administrator for compliance with this requirement shall be part of the Administration Costs and shall be reflected in the Claims Administrator's first invoice to the Parties' counsel (which is expected by March 2, 2026).

73.     Upon the Court's entry of a preliminary approval order, the Claims Administrator shall use the towing, charging, and payment records provided by the Parties' counsel to create spreadsheets of all known potential members of the Towing Class and all known potential members of the Charging Class, including their mailing addresses and their email addresses (if available), as identified by skip-tracing and any and all other reasonable methods encompassed by the Parties'

27

agreement with the Claims Administrator.

      a.    Ameliorating deficiencies in the records shall be the sole obligation and responsibility of Brookside.

      b.    Brookside shall use all reasonable efforts to assist and facilitate the Claims Administrator's development of the spreadsheets of potential members of the Classes.

      c.    Class Counsel shall be informed of any such needs and shall have the right but not the obligation to review and comment on the amelioration, assistance, and facilitation that may be required.

74.    The Claims Administrator shall provide the completed spreadsheets it creates pursuant to ¶ 73 above to the Parties' counsel within 42 days of the Court's entry of a preliminary approval order, seeking from the Parties a notice to proceed.

      a.    Within 5 days of receiving the spreadsheet, the Parties' counsel shall meet and confer to resolve disputes, if any, concerning the accuracy or sufficiency of the spreadsheets.

75.    Within 75 days of the Court's entry of a preliminary approval order, the Claims Administrator shall send by first-class mail and, where known, by email the Class Notice (including the Claim Form) to all known potential members of the Towing Class and all known potential members of the Charging Class.

      a.    For each such notice that comes back as undeliverable, the

Claims Administrator shall promptly re-send the Class Notice to any updated addresses.

b.    35 days after sending the initial Class Notices, the Claims Administrator shall send short-form reminder notices to the mailing and email addresses of all potential members of the Classes who have not submitted a Claim Form, requested exclusion, or objected (attached as Exhibit 3 to this Settlement).

76.    No later than 7 days after sending the individual notices required by ¶ 75 above, the Claims Administrator shall provide publication notice via press release and targeted digital ad placements on AL.com, as approved by the Parties' counsel in advance.

77.    No later than the day of sending the individual notices required by ¶ 75 above, the Claims Administrator shall establish a call center phone number for purposes of fielding questions about the Settlement and requesting a mailed or emailed copy of the Class Notice.

78.    No later than the day of sending the individual notices required by ¶ 75 above, the Claims Administrator shall establish a website (to be maintained by the Claims Administrator) with the Class Notice, the Claim Form, the Settlement, the Complaint, the Court's order denying motions to dismiss (Doc. 80), the motion for preliminary approval, and the preliminary approval order. The website shall allow

for the submission of the Claim Form for one or both Classes. The website shall also list the call center phone number described in ¶ 77 above. The website shall also provide the option to submit questions about the Settlement by email and to request a mailed or emailed copy of the Class Notice and Claim Form.

      a.    Questions submitted by email via the website shall automatically be forwarded to the Parties' counsel so that they may suggest answers or responses by the Claims Administrator (cc'ing the other Party's counsel). The Parties' counsel shall meet and confer to resolve any disagreements as to such responses, which the Parties shall endeavor to provide within 5 days of each question's submission.

79.    Upon the Court's entry of a preliminary approval order, Class Counsel may, at their own expense, take additional measures to publicize the Settlement, including for purposes of providing notice to potential members of the Classes.

**Claim Form Submissions**

80.    One Claim Form may be submitted per person.

81.    Except for purposes of Class exclusion or Settlement objection, Claim Forms may be submitted by mail or via the Settlement website. The processes and the requirements for submitting requests for exclusion or objections are detailed in ¶¶ 98–109 below.

30

82.    To be valid, a Claim Form must be postmarked or submitted electronically no later than 120 days after the Claims Administrator sends the initial Class Notices. In the absence of a postmark, the Claim Form shall be considered timely if received within 21 days of the deadline. Untimely Claim Forms will result in no payment from the Settlement.

      a.    This deadline is subject to a single, one-time grace period. ¶ 97 below contemplates a 42-day period between the expiration of the 120-day deadline for submitting a Claim Form and the Claims Administrator's creation of the final spreadsheets of valid and invalid claimants. Claim Forms received during the first 30 days of that 42-day period may be accepted as valid if the Parties and the Claims Administrator are able to determine that the claimant is a bona fide member of the Class(es) without delaying the creation of the final spreadsheets. Any request received after the 30-day grace period shall be deemed invalid and shall be ineligible for a payment from this Settlement.

83.    A claimant may submit a Claim Form for the Towing Class, the Charging Class, or both.

84.    To be valid, a Claim Form must be complete. A Claim Form is considered complete if all of the following requirements are satisfied:

a.    It contains the claimant's first name and last name.

b.    It contains the claimant's date of birth (month, day, and year).

c.    It contains at least one of the following: a valid mailing address for the claimant; a valid telephone number for the claimant; or a valid email address for the claimant.

d.    It answers whether the claimant is making a claim from the Towing Class Fund, the Charging Class Fund, or both.

e.    For a Towing Class claimant, it answers the following questions to the best of the claimant's recollection:

    i.    How many times the claimant paid for the release of a vehicle that was ordered towed by the Brookside Police Department following a traffic stop from March 1, 2018 to August 1, 2022.

    ii.    The month(s) and year(s) in which the vehicle tow(s) occurred.

    iii.    The make and model of the vehicle(s) towed.

    iv.    The driver(s) of the vehicle(s) towed.

    v.    The registered owner(s) of the vehicle(s) towed.

    vi.    Whether the claimant paid Brookside, Jett's Towing, or both for the release of the vehicle(s) towed.

vii.    Whether anyone else paid Brookside, Jett's Towing, or both for the release of the vehicle(s) towed; and if so, their name(s), address(es), and how much they paid to Brookside and to Jett's Towing.

viii.    Whether the claim is being made by the estate of a Class member who is no longer living; and if so, the first name and last name of the Class member. In such circumstances, references to "the claimant" above will be understood as references to the Class member.

f.    For a Charging Class claimant, it answers the following questions to the best of the claimant's recollection:

i.    The month(s) and the year(s) in which the claimant was charged with an offense in the Brookside Municipal Court following a traffic stop by the Brookside Police Department.

ii.    Whether the claim is being made by the estate of a Class member who is no longer living; and if so, the first name and the last name of the Class member. In such circumstances, references to "the claimant" above will be understood as references to the Class member.

33

g.    The claimant attests: "Under penalty of perjury, the foregoing is true and correct to the best of my knowledge."

85.    The Claims Administrator will make an initial determination as to the validity or invalidity of a claim based on those requirements and parameters.

86.    A claimant may recover from both the Towing Class Fund and the Charging Class Fund, if determined to be a bona fide member of both Classes.

87.    Each claimant is entitled to a pro-rata distribution from each Class Fund for which they submit a valid Claim Form and are determined to be a bona fide member of the Class. The expected pro-rata distribution for each Class's class members is detailed in the Class Notice, attached as Exhibit 1 to this Settlement. It may decrease based on the possibility of unexpected Administration Costs, as detailed in ¶ 66 above.

88.    For the Charging Class, the pro-rata distribution shall be a simple matter of the Charging Class Fund divided by the number of bona fide claimants.

89.    For the Towing Class, the pro-rata distribution shall be based on the number of Verified Towing Incidents. The Towing Class Fund shall be divided by the number of Verified Towing Incidents for which a valid claim is submitted, each of which constitutes one pro-rata share of the Towing Class Fund. Each Verified Towing Incident for which a bona fide claimant submits a valid claim entitles that claimant to one pro-rata share of the Towing Class Fund.

90.    The Parties anticipate there may be instances in which multiple claimants make a claim to the Towing Class Fund arising from the same Verified Towing Incident because different individuals may have (1) paid the Brookside portion of the vehicle-release fees and the Jett's Towing portion of the vehicle-release fees or (2) split the Brookside portion of the vehicle-release fees and/or the Jett's Towing portion of the vehicle-release fees. In such instances, the Claims Administrator will make an initial determination as to the allocation of that single pro-rata share of the Towing Class Fund, based on the following parameters:

    a.    For a single Verified Towing Incident, a maximum of two claimants may be entitled to split in half a single pro-rata share of the Towing Class Fund. That will be the case where one individual is determined to be the payor of the Brookside portion of the vehicle-release fees and another is determined to be the payor of the Jett's Towing portion of the vehicle-release fees. In no instance will more than one individual be determined to be the payor of the Brookside portion of the vehicle-release fees; in no instance will more than one individual be determined to be the payor of the Jett's Towing portion of the vehicle-release fees.

    b.    Determining who is the payor of each portion of the vehicle-release fees will be based on a review of the following, in

descending order of priority:

i.    The name of the payor on a vehicle-release receipt from the relevant entity (a Brookside receipt is prioritized when determining the payor of the Brookside portion; a Jett's Towing receipt is prioritized when determining the payor of the Jett's Towing portion).

ii.    A claimant's proof (solicited by telephone call or email by the Claims Administrator) of making the payment to Brookside and/or Jett's Towing, in the form of a receipt from Brookside and/or Jett's Towing clearly reflecting the payment, a copy of a check clearly reflecting the payment to Brookside and/or Jett's Towing, or a credit card or bank statement clearly reflecting the payment to Brookside and/or Jett's Towing.

iii.    The claimant's name matching the name of the driver on towing or vehicle-release records from Brookside.

iv.    The claimant's name matching the name of the driver on towing or vehicle-release records from Jett's Towing.

v.    The claimant's name matching the name of the vehicle owner on towing or vehicle-release records from

Brookside.

vi.    The claimant's name matching the name of the vehicle owner on towing or vehicle-release records from Jett's Towing.

91.    If the Claims Administrator requires additional information from records or documents within Brookside's possession, custody, or control in order to determine whether a claim is valid, Brookside shall provide such records or documents and shall use all reasonable efforts to assist and facilitate the Claims Administrator's determination of whether a claim is valid.

92.    After the Claims Administrator makes initial validity determinations based on the requirements and parameters detailed above, the process for making final validity determinations is detailed in ¶¶ 93–96 below.

**Processing and Reviewing Claim Form Submissions**

93.    After sending the individual notices required by ¶ 75 above, the Claims Administrator shall provide the Parties' counsel, every 21 days, a running spreadsheet with the names, addresses, phone numbers, and email addresses for each individual whom the Claims Administrator determines has submitted a valid Claim Form.

94.    Simultaneously, the Claims Administrator shall provide the Parties' counsel a running spreadsheet with the names, addresses, phone numbers, and email

37

addresses for each individual whom the Claims Administrator determines has submitted an invalid Claim Form.

95.    The final spreadsheets required by ¶¶ 93 and 94 above shall be provided to the Parties' counsel by the Claims Administrator 35 days after the 120-day deadline for timely submitting Claim Forms.

96.    The Parties' counsel shall independently review each spreadsheet required by ¶¶ 93–95 and shall notify each other in writing of any disagreements they have with the Claims Administrator's assessments of valid and invalid claims. As necessary, the Parties' counsel shall confer with each other and with the Claims Administrator to reach final agreement as to those assessments, based on the same requirements and parameters detailed in ¶¶ 80–91 above. In the event the Parties cannot reach final agreement as to the validity of a claim, they shall submit their assessments in writing to the Claims Administrator for a final determination based on the same requirements and parameters detailed in ¶¶ 80–91 above.

97.    Within 42 days of the 120-day deadline for submitting Claim Forms, the Claims Administrator shall provide the Parties' counsel the final spreadsheets of valid and invalid claimants, pursuant to the requirements and processes above.

**Exclusions**

98.    The Claim Form provides an option for potential Class members to request exclusion from one or both Classes. If exclusion is requested from one or

both Classes, it must be submitted by mail (it may not be submitted directly via the Settlement website).

99.    To be valid, an exclusion request must be mailed to the Claims Administrator at the exclusions address listed on the Claim Form, and it must be received by the Claims Administrator no later than 120 days after the Claims Administrator sends the initial Class Notices. An exclusion request received after the 120 day deadline shall be deemed invalid.

100.    Each exclusion request must be submitted by the person seeking exclusion. To be valid, an exclusion request must be complete. An exclusion request is considered complete if all of the following requirements are satisfied:

      a.    It contains the person's first name and last name.

      b.    It contains the person's date of birth (month, day, and year).

      c.    It contains at least one of the following: a valid mailing address for the person; a valid telephone number for the person; or a valid email address for the person.

      d.    It answers whether the person is requesting exclusion from the Towing Class, the Charging Class, or both.

      e.    If seeking exclusion from the Towing Class, it answers the following questions to the best of the person's recollection:

           i.    The month(s) and year(s) in which the vehicle tow(s)

occurred.

ii.      The make and model of the vehicle(s) towed.

iii.     The driver(s) of the vehicle(s) towed.

iv.     The registered owner(s) of the vehicle(s) towed.

v.      Whether the person paid Brookside, Jett's Towing, or both for the release of the vehicle(s) towed.

vi.     Whether anyone else paid Brookside, Jett's Towing, or both for the release of the vehicle(s) towed; and if so, their name(s), address(es), and how much they paid to Brookside and to Jett's Towing.

vii.    Whether the exclusion requestion is being made by the estate of a potential Class member who is no longer living; and if so, the first name and last name of the potential Class member.

f.    For a Charging Class claimant, it answers the following questions to the best of the person's recollection:

i.      The month(s) and the year(s) in which the person was charged with an offense in the Brookside Municipal Court following a traffic stop by the Brookside Police Department.

40

> ii.    Whether the exclusion request is being made by the estate of a potential Class member who is no longer living; and if so, the first name and the last name of the potential Class member.

> g.    The person attests: "Under penalty of perjury, the foregoing is true and correct to the best of my knowledge."

101.   The Claims Administrator will make an initial determination as to the validity or invalidity of an exclusion request based on those requirements and parameters.

102.   A person who submits a valid exclusion request shall not: (i) be bound by any orders of the Court concerning the Settlement; (ii) be entitled to relief under the Settlement; (iii) gain any rights by virtue of the Settlement; or (iv) be entitled to object to any aspect of the Settlement.

103.   Starting 21 days after sending the individual notices required by ¶ 75 above and every 21 days thereafter, the Claims Administrator shall provide the Parties' counsel a list of individuals who have submitted exclusion requests. The final such list shall be provided 21 days after the 120-day deadline for timely submitting exclusion requests. The Parties' counsel shall independently review each such list and shall notify each other in writing of any disagreements they have with the Claims Administrator's assessments of valid and invalid exclusion requests. As

necessary, the Parties' counsel shall confer with each other and with the Claims Administrator to reach final agreement as to those assessments, based on the same requirements and parameters detailed above. In the event the Parties cannot reach final agreement as to the validity of an exclusion request, they shall submit their assessments in writing to the Claims Administrator for a final determination based on the same requirements and parameters detailed above. Where appropriate and feasible without delaying final approval processes, the Claims Administrator shall provide an individual determined to have submitted an invalid exclusion request an opportunity to cure the exclusion request's deficiencies.

        a.    If untimely exclusion requests arrive, they shall continue to be forwarded to the Parties' counsel, with the untimeliness indicated.

104.  If more than 25 individuals whom the Parties' counsel are able to identify as a bona fide potential member of one or both Classes submit valid (i.e., complete and timely) exclusion requests, Brookside shall have the option to terminate the Settlement. The Parties will determine whether a person is a bona fide potential Class member based on the same requirements, parameters, and processes detailed in ¶¶ 80–91 above. For purposes of this provision, an individual who excludes themselves from both the Towing Class and the Charging Class counts as one exclusion.

**Objections**

105.   As advised in the Class Notice, members of one or both Classes may object to the Settlement by submitting a completed Claim Form and by the procedures below. An objection may not be accomplished solely by submitting a Claim Form.

106.   An objection must be filed with the Clerk of the Court and served by mail or by email on Class Counsel and Brookside's counsel no later than 120 days after the Claims Administrator sends the initial Class Notices.

107.   That filing must include the objector's full name, address, and email address, and all grounds for objecting to the Settlement, including all factual and legal support for the objection. If the objector is represented by counsel, the filing must also include the counsel's full name, law firm name, telephone number, and email address. That counsel must file a notice of appearance with the Court in connection with the objection.

108.   Although an objector's attendance at the Court's final approval hearing is not mandatory, an objector who intends to attend the final approval hearing must indicate that intent in their written objection filing. That filing must also indicate the identities and addresses of any witnesses the objector may call at the hearing and must attach any documents the objector may introduce at the hearing.

109.   No person who fails to file a valid objection within 120 days after the

Claims Administrator sends the initial Class Notices may later object to the Settlement or any portion of the Settlement.

## Final Approval Plan

110.   At least 14 days before the Court's final approval hearing, the Parties will move for the Court to enter a Final Approval Order. The Final Approval Order will constitute final certification of the Classes and final approval of the Settlement. It will incorporate all releases and dismissals. And it will retain the Court's jurisdiction to enforce the Settlement's terms.

111.   If no objections are made to the Settlement, then the date of the Final Approval Order shall be the Settlement's Effective Date. Otherwise, the Effective Date will occur as defined in ¶ 22 above.

## Distribution of Class Funds

112.   Within 7 days of the Settlement Effective Date, Brookside shall deposit $1.5 million, less any sums paid to the Claims Administrator pursuant to ¶ 66 above, into the Escrow Account for distribution to the Classes by the Claims Administrator.

113.   Within 30 days of the Effective Date, the Claims Administrator shall send checks by first-class mail to all valid claimants on a pro-rata basis, pursuant to the final spreadsheets referenced in ¶ 97 above. For all such mailings that come back as undeliverable, the Claims Administrator shall re-send the checks to any potentially updated addresses within 14 days of such return.

114.   All checks issued to settlement class members (including re-issued checks, if any) will expire and become void 90 days after they are issued. Class members who, for whatever reason, do not cash an initial check may make a one-time request to the Settlement Administrator to send them a re-issued check. Requests for re-issued checks must be made within 150 days of the date on the initial check. Re-issued checks will be in the same amount as the initial check.

## Distribution of Unclaimed Class Funds

115.   If any checks remain uncashed another 90 days after the end of the period for making secondary requests in ¶ 114 above (i.e., no more than 240 days after the initial check mailing in ¶ 113 above), those checks' funds shall be considered unclaimed funds.

116.   Within 10 days of receiving the information necessary to issue a payment, the Claims Administrator shall donate the unclaimed funds to a nonprofit and/or community-based public service organization located in and/or providing services to Birmingham-area communities, selected in writing by Class Counsel.

117.   The Institute for Justice shall be ineligible to receive unclaimed funds.

## Releases

118.   Upon the Settlement Effective Date, each unexcluded member of the Towing Class and each unexcluded member of the Charging Class shall be deemed, on behalf of themselves, their heirs, executors, administrators, predecessors,

successors and assigns, to have fully, finally, and forever released, relinquished, and discharged all claims against Brookside arising from the facts alleged in the Complaint (including all legal claims alleged or that could have been alleged based on those facts, whether known or unknown, whenever accruing). For the purpose of clarity: The claims of Plaintiff Coleman alleged in Count 5 of the Complaint are excluded from the scope of this paragraph, as set forth in ¶ 4 above.

119.   This release of claims shall not be construed as releasing claims against Brookside that arise from facts that are separate and distinct from the facts alleged in the Complaint.

120.   This release of claims shall not be construed to prevent the Named Plaintiffs or any Class members from enforcing any and all provisions of the Settlement (either through Class Counsel or separate counsel).

### Additional Settlement Provisions

121.   This Settlement is contingent upon the Court entering a preliminary approval order that does not materially alter the Parties' proposed preliminary approval order and a Final Approval Order that does not materially alter the terms of the Settlement.

122.   If the Court or, in the event of an appeal, any appellate court, does not approve or materially modifies the terms of this Settlement, then the Named Plaintiffs or Brookside may, in their sole discretion, terminate this Settlement. They

may do so by providing written notice to the other side and to the Court within 5 days of any of the following (with failure to do so in that time constituting a waiver of the right to terminate):

a.    The Court declines to enter a preliminary approval order or enters a preliminary approval order that materially modifies the terms of this Settlement. The written notice of termination shall specify what the terminating Party contends constitutes material modification sufficient to trigger termination.

b.    The Court enters a Final Approval Order that materially modifies the terms of this Settlement. The written notice of termination shall specify what the terminating Party contends constitutes material modification sufficient to trigger termination.

c.    The Court's Final Approval Order is vacated, reversed, or materially modified on appeal or other collateral review proceeding. The written notice of termination shall specify what the terminating Party contends constitutes material modification sufficient to trigger termination.

d.    Any federal or state authority demands by legal right a material modification of the Settlement. The written notice of termination shall specify what the terminating Party contends constitutes

material modification sufficient to trigger termination.

    e.    The Claims Administrator notifies the Parties that more than 25 individuals whom the Parties can identify as bona fide potential members of one or both Classes have submitted valid and timely requests for exclusion from one or both Classes.

    f.    The Effective Date does not occur for some other reason. The written notice of termination shall specify what the terminating Party contends is the reason.

123. If a Party serves written notice of termination pursuant to ¶ 122 above, all work and all deadlines under this Settlement shall immediately be stayed and the Claims Administrator shall not do any work or incur any expense (except expenses necessary to maintain work already begun, such as hosting fees for the settlement website).

124. Within 5 days of a Party serving a written notice of termination, the other Party may request a 30-day negotiation period to discuss the notice to terminate.

    a.    If no such request is made, then the notice of termination shall be become effective and the Settlement shall terminate at the end of that 5-day period.

    b.    If such request is made, then during the 30-day negotiation

period all time periods and deadlines under this Settlement shall automatically be stayed. The Parties agree to work together in good faith in discussing whether a material modification has occurred. To that end, the Parties may request the mediation assistance of Magistrate Judge Cornelius.

c.    If the notice of termination is not withdrawn at the end of the 30-day period (at the sole discretion of the noticing party, subject to the requirement of good faith), then the notice shall become effective and this Settlement shall terminate.

d.    A party who serves written notice of termination may withdraw the notice at any time prior to the notice becoming effective.

125.    If this Settlement is not approved by the Court, is terminated pursuant to ¶¶ 122–124 above, or does not become final for any other reason, then the terms and provisions of this Settlement shall have no force or effect and shall not be used in this class action or any other action or proceeding. This includes, but is not limited to, any Party's use or attempted use of anything stated herein as an admission of any allegation, fact, contention, claim, or otherwise.

126.    If this Settlement is not approved by the Court, is terminated pursuant to ¶¶ 122–124 above, or does not become final for any other reason, then the Parties shall revert to their respective statuses in the litigation and shall proceed as if this

49

Settlement and any related orders had not been entered.

127.   In the event this Settlement is not approved by the Court, is terminated pursuant to ¶¶ 122–124 above, or does not become final for any other reason, all fees, costs, and other monetary obligations paid or owing to the Claims Administrator shall remain the sole obligation of Brookside.

128.   The undersigned represent that they are fully authorized to execute and enter into the terms and provisions of this Settlement on behalf of their clients.

129.   This Settlement contains the entire agreement between the Parties and supersedes any prior agreements or understandings between them. All terms of this Settlement are contractual and not mere recitals and shall be construed as if drafted by all the Parties. The terms of this Settlement are and shall be binding upon, and shall inure to the benefit of, each of the Parties, including their respective agents, attorneys, employees, successors, and assigns, and upon all other persons claiming any interest in the subject matter hereto through any of the Parties hereto, including any members of the Classes.

130.    This Settlement may be modified only by a written instrument signed by or on behalf of all the Parties or their successors-in-interest and approved by the Court. The Parties may, however, by written agreement and without court approval, extend by 14 days any deadline in this Settlement which applies only to Class Counsel, Brookside, or the Claims Administrator so long as such extension does

not require modification of a Court-scheduled deadline. If such extension is executed, the Parties shall promptly notify the Court.

131.    This Settlement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

132.    The Court shall retain jurisdiction over the implementation, interpretation, execution, and enforcement of this Settlement and any Final Approval Order, with respect to all the Parties and all beneficiaries, including all members of the Classes. Any and all requests or petitions regarding the implementation, interpretation, execution, or enforcement of the Settlement, and orders on the final judgment entered by the Court, or the conduct of the policies and procedures described herein must be made, if at all, by motion to the Court.

133.    The rights and obligations of the Parties to this Settlement shall be construed and enforced in accordance with and governed by the laws of the State of Alabama.

134.    None of the Parties to this Settlement shall be considered to be the drafter of this Settlement or any provision of this Settlement for the purpose of any statute, caselaw, or rule of construction that would or might cause any provision to be construed against the drafter, and this Settlement shall be deemed a common effort of the Parties.

Executed: February 6, 2026

William M. Dawson
DAWSON LAW OFFICE
1736 Oxmoor Road, #101
Birmingham, AL 35209
Phone: (205) 795-3512
Email: bill@billdawsonlaw.com

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (DC Bar No. 1601246)*
Samuel B. Gedge (VA Bar No. 80387)*
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
Email: jtsitsuashvili@ij.org; sgedge@ij.org

*Admitted pro hac vice

*Counsel for Named Plaintiffs*


s/ R. Warren Kinney
James W. Porter, II
R. Warren Kinney
**Porter, Porter & Hassinger, P.C.**
880 Montclair Road, Suite 175
Birmingham, AL 35213
jwporterii@pphlaw.net
wkinney@pphlaw.net

*Counsel for Town of Brookside*

# EXHIBIT B

**Angeion Group Project Proposal Schedule of Fees and Charges**

| | |
|---|---|
| **Case/Project Name:** | Coleman v. Brookside |
| **Type of Case:** | Consumer |
| **Submission Date:** | January 26, 2026 - Revised - February 4, 2026 |
| **Firm(s) Submitted to:** | Balch & Bingham LLP |
| **Firm(s) Contact:** | Steven C. Corhern, Esq. |
| **Angeion Representative:** | Eric Schachter, Esq. |
| **Angeion Record ID** | 48172231061 |


ANGEION GROUP
Writing the Rules

### Case Management Fee
Case/project start-up fee may include pre-administration consulting, preparing the technology environment, establishing project management workflows, securing the QSF/bank account, obtaining EIN, and database set-up/management.

| | SUBTOTAL | 2000 |
|---|---|---|

### Notification Fees & Costs
#### Notification List Development & Data Enrichment
Set up, formatting and proofing the *7-page letter notice + 1-page claim form in a secure envelope*, email notice, reminder notices, deficiency notice, long form notice & other notice materials. Generate the list of applicable email/mailing addresses, data standardization, and email address validation

| | SUBTOTAL | 1385 |
|---|---|---|

#### Notification List Development & Data Enrichment - Custom Data Collection and Scanning Technology - **Charging Class**
Data Specialist - Custom Reporting of class list retrieval and OCR technology setup of documents. Custom Data Collection Scanning and Import data including verification, quality assurance & manual entry as needed

| | SUBTOTAL | 8468 |
|---|---|---|

#### Notification List Development & Data Enrichment - Custom Data Collection and Scanning Technology - **Towing Class**
Data Specialist - Document submission & coordination including data verification and de-duping. Data Collection Scanning and Import data including verification, quality assurance & manual entry as needed

| | SUBTOTAL | 20775 |
|---|---|---|

### Skip-Trace *Prior* to Initial Mailing
**First Reverse look-up/Skip-trace** to obtain *physical mailing address.* **Input:** Name, Last known address

| | SUBTOTAL | 1170 |
|---|---|---|

### Email & Reminder Notice to class members with available email address
Release email notice & reminder notice to approx. 16,000 class members. blast to class members in a coordinated fashion (includes email hygiene to verify and validate emails)

| | SUBTOTAL | 4225 |
|---|---|---|

### Mail to class members
8-pg notice packet will be sent to approx. 6,500 class members (includes production and postage*)

| | SUBTOTAL | 10920 |
|---|---|---|

### Processing Undeliverable Direct Mail Notices
Processing undeliverable mail notices, skip tracing, and remailing to those with updated address

| | SUBTOTAL | 1426 |
|---|---|---|

### Reminder Direct Mail Notices
2-page reminder notice will be sent to approx. 6,200 class members (includes production and postage*)

| | SUBTOTAL | 6521 |
|---|---|---|

### Angeion Media Campaign - *Supplemental Plan*
Press Release and Geo-targeted digital ads placement on AL.Com

| | SUBTOTAL | 8670 |
|---|---|---|

### Processing Notice Requests & Class Member Correspondence
Processing notice requests and handling class member inquiries

| | SUBTOTAL | 1271 |
|---|---|---|

### Website Requirements
Set-up fee for Angeion Group website w/ relevant case documents and online claims filing, maintenance/hosting, and revisions

| | SUBTOTAL | 8680 |
|---|---|---|

### Call Center Requirements
Set-up fee for IVR (integrated voice response), as well as transcription services for class members

| | SUBTOTAL | 2146 |
|---|---|---|

### Angeion Reporting Requirements / Project Management
General reporting to counsel and the Court, project management and internal reporting requirements

| | SUBTOTAL | 11000 |
|---|---|---|

**Angeion Group Project Proposal Schedule of Fees and Charges**

| | |
|---|---|
| Case/Project Name: | *Coleman v. Brookside* |
| Type of Case: | Consumer |
| Submission Date: | January 26, 2026 - Revised - February 4, 2026 |
| Firm(s) Submitted to: | Balch & Bingham LLP |
| Firm(s) Contact: | Steven C. Corhern, Esq. |
| Angeion Representative: | Eric Schachter, Esq. |
| Angeion Record ID | 48172231061 |



**ANGEION GROUP**

**Writing the Rules**

**Process Opt-Outs & Objections**
Review and process Opt-Outs and Objections received

| | |
|---|---|
| SUBTOTAL | 33 |

**Claims Administration Fees & Costs**
Receive and process claims, Adjudicate and audit

| | |
|---|---|
| SUBTOTAL | 10835 |

**Deficiency Process**
Resolve deficiencies

| | |
|---|---|
| SUBTOTAL | 234 |

**Distribution & Post Distribution**
Distribute awards via check with 1099, process undeliverable checks, skip trace, and reissue

| | |
|---|---|
| SUBTOTAL | 10621 |

**Tax Return**
Tax return for the QSF (assumes 2 year), cy pres distribution & reconciliation (if required)**, and issuing tax forms (as applicable)

| | |
|---|---|
| SUBTOTAL | 4719 |

**Other Relevant Costs**
CAFA Noticing; P.O. Box for Opt-Outs & Objections; Document Storage; Miscellaneous***

| | |
|---|---|
| SUBTOTAL | 10034 |

| | |
|---|---|
| **ESTIMATED PROJECT FEES & COSTS (excl. postage)** | 113,630 |
| **ESTIMATED POSTAGE COSTS** | 11,503 |
| **TOTAL ESTIMATED COSTS** | 125,133 |
| **NOT TO EXCEED TOTAL COSTS****** | 133,500 |

* Postage costs are determined by the United States Postal Service and other postal carriers (collectively, the "Carriers") and are provided as estimates based on rates effective as of the date of this Proposal. Rates are subject to change at any time by the Carriers or other regulatory authorities without notice. All postage expenses, including rate increases, surcharges, or service adjustments, are beyond Angeion's control and must be paid to Angeion in accordance with the Terms and Conditions. Angeion is not responsible for delays, service disruptions, or delivery failures caused by the Carriers. In such cases, Angeion will make commercially reasonable efforts to mitigate the impact of such disruptions; provided, however, Angeion will have no liability related thereto, including for missed deadlines or legal obligations.

** If applicable, costs of escheatment/unclaimed funds process are estimated separately. Additional fees will apply.

*** Banking fees associated with distribution related accounts may be charged. Angeion may, in some instances, derive financial benefits from commercial financial institutions related to monies, including settlement funds, on deposit or invested including, but not limited to, discounts provided on certain banking services and fees.

***** Not to exceed is based on a class not exceeding 9,000. This administration fee estimate is based on the scope detailed above. Any adjustment to scope, including optional services, the current costs for both Towing and Charging classes, and postage expenses above the postage estimates will be excluded and addressed separately and will require mutual agreement before proceeding.