FILED

2026 Feb-06  PM 09:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| BRITTANY COLEMAN, et al., | 2:22-cv-423-AMM (putative class action) |
| Plaintiffs, | |
| | Unopposed motion |
| v. | |
| THE TOWN OF BROOKSIDE, ALABAMA, et al., | |
| Defendants. | |

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT

# Table of Contents

Table of Authorities...............................................................................iv

Introduction............................................................................................1

Background ........................................................................................... 2

    I.    Litigation of the claims...........................................................2

    II.   Mediation by Judge Cornelius..................................................8

Terms of the Settlement ........................................................................9

    I.    The classes............................................................................9

    II.   Monetary relief for the classes ...............................................10

    III.  Systemic relief for the classes ................................................11

          A. Systemic relief for the Towing Class ..................................11

          B. Systemic relief for the Charging Class................................11

Reasons for Approval............................................................................13

    I.    The settlement is fair, reasonable, and adequate .....................13

          A. The class representatives and counsel have adequately
             represented the classes...........................................................14

          B. The settlement was negotiated at arm's length ...................16

          C. The relief provided for the classes is adequate ..................16

             1. Costs, risks, and delays of continued litigation............17

             2. Effectiveness of claim processing and relief
               distribution ...................................................................21

3. Attorneys' fees.................................................................21

4. Disclosure of agreements required by Rule 23(e)(3)....................22

D. The settlement treats class members equitably ...................................24

E. The settlement satisfies the Eleventh Circuit's *Bennett*
factors ...........................................................................................25

F. Notice is reasonably calculated to reach class members....................26

II. The settlement satisfies Rules 23(a), (b)(2), (b)(3), and (g)....................27

A. Ascertainability and Rule 23(a)..........................................................28

1. Ascertainability .................................................................28

2. Numerosity ......................................................................29

3. Commonality.....................................................................29

4. Typicality.........................................................................32

5. Adequate representation......................................................33

B. Rule 23(b)(2) ..................................................................................34

C. Rule 23(b)(3) ..................................................................................34

1. Predominance ...................................................................35

2. Superiority.......................................................................36

D. Rule 23(g)......................................................................................38

1. Rule 23(g)(1)(A) ...............................................................38

2. Rule 23(g)(2) ....................................................................40

Conclusion ................................................................................................43

## Table of Authorities

## Cases

*Braggs v. Dunn*,
    317 F.R.D. 634 (M.D. Ala. 2016) .......................................................34

*Brewster v. City of Los Angeles*,
    2023 WL 5505867 (C.D. Cal. July 17, 2023)...................... 30, 31, 32, 33, 36, 38

*Brucker v. City of Doraville*,
    38 F.4th 876 (11th Cir. 2022)........................................3, 5, 14, 15, 17

*Caliste v. Cantrell*,
    2018 WL 1365809 (E.D. La. Mar. 16, 2018)...............................................30, 31

*Carriuolo v. GMC*,
    823 F.3d 977 (11th Cir. 2016) .......................................................27, 35

*Cherry v. Dometic Corp.*,
    986 F.3d 1296 (11th Cir. 2021) .......................................................28

*Davis v. United Bank Corp. Ret. Plan Comm.*,
    2025 WL 3142143 (M.D. Ga. Nov. 7, 2025).......................................................23

*Fla. Immigrant Coal. v. Uthmeier*,
    780 F. Supp. 3d 1235 (S.D. Fla. 2025) ..............................................34

*Ford v. Koutoulas*,
    2025 WL 3706506 (M.D. Fla. Dec. 22, 2025).......................................................21

*Glover v. Conn. Gen. Life Ins. Co.*,
    2024 WL 4036721 (D. Conn. Sept. 4, 2024).......................................................25

*Harjo v. City of Albuquerque*,
    326 F. Supp. 3d 1145 (D.N.M. 2018) ..............................................17

*In re Blue Cross Blue Shield Antitrust Litig.*,
    85 F.4th 1070 (11th Cir. 2023)........................................................13

*In re Blue Cross Blue Shield Antitrust Litig.*,
    2022 WL 4587618 (N.D. Ala. Aug. 9, 2022)...............................................16, 19

*In re Coll. Athlete NIL Litig.*,
  2025 WL 1675820 (N.D. Cal. June 6, 2025) ......................................................25

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ..................................................................36, 38

*Marshall v. Jerrico, Inc.*,
  446 U.S. 238 (1980) ....................................................................................3

*McWhorter v. Ocwen Loan Servicing, LLC*,
  2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ...................... 13, 16, 17, 18, 19, 25

*Ponzio v. Pinon*,
  87 F.4th 487 (11th Cir. 2023) ...............................................2, 9, 13, 26

*Ray v. Jud. Corr. Servs., Inc.*,
  333 F.R.D. 552 (N.D. Ala. 2019) ..........................................................30, 31, 33

*Reynolds v. Progressive Direct Ins. Co.*,
  346 F.R.D. 120 (N.D. Ala. 2024) ...................... 29, 32, 33, 34, 37, 38

*Sourovelis v. City of Philadelphia*,
  515 F. Supp. 3d 321 (E.D. Pa. 2021) ...................................................18

*Sparger-Withers v. Taylor*,
  628 F. Supp. 3d 821 (S.D. Ind. 2022) ..............................................43

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .....................................................................31

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009) ..................................................35–36

## Statutes & Rules

Ala. Code § 32-1-4(a) ............................................................................42

Ala. Code § 32-7A-16(c) .......................................................................42

Fed. R. Civ. P. 23(a) ..........................................................................27–34

Fed. R. Civ. P. 23(b)(2) .......................................................................34

Fed. R. Civ. P. 23(b)(3) .....................................................................34–38

Fed. R. Civ. P. 23(c) ...........................................................................26–27

Fed. R. Civ. P. 23(e) ...........................................................................13–26

Fed. R. Civ. P. 23(g) ...........................................................................38–43

**Other Authorities**

NPR, Planet Money, *Should the fine have to fit the crime?*
  (Oct. 24, 2025), https://www.npr.org/transcripts/nx-s1-5585267.......................41

**Introduction**

Brittany Coleman, Brandon Jones, Chekeithia Grant, and Alexis Thomas brought this case to challenge the Town of Brookside's law-enforcement apparatus as unconstitutionally revenue-driven. They claimed Brookside's police department, prosecutor, and judge were too reliant on the money they generated from ticketing drivers and towing cars in Brookside and on I-22, in violation of due process.

Those claims had two goals: (1) "dismantle the financial incentive system for law enforcement that the Town allegedly erected beginning in March 2018" (Doc. 80, denying motions to dismiss); (2) compensate those whose fines and fees funded that system. Now, Plaintiffs seek approval of a class settlement that achieves both ambitious goals. To start, the settlement recovers $1.5 million for two classes, which approximates what Brookside's ticketing and towing policies extracted from those classes. It also secures $155,000 more for settlement administration costs (after securing from the administrator a not-to-exceed quote of $133,500). And every penny goes to the classes—Plaintiffs' counsel seek $0 in attorneys' fees or costs.

The settlement also achieves the systemic change Plaintiffs sought, in order to protect themselves and the classes from similar harms going forward. It cancels outstanding fines and fees. It dismisses ongoing prosecutions. It eliminates financial incentives for Brookside to ticket and tow. It removes the Town's officers from I-22. It opens pardon and expungement opportunities. It entrenches new transparency

measures. And more, all backed by this Court's enforcement jurisdiction.

After years of hard-fought litigation, those terms were negotiated under the sustained supervision of a dozen mediation sessions with Magistrate Judge Cornelius (all reflected on the Court's docket). The settlement terms are fair, reasonable, and adequate, as are the notice, processing, and distribution plans. Simply put, the settlement provides meaningful monetary relief, substantial systemic change, and certainty for the classes. The Court should approve it. *See Ponzio v. Pinon*, 87 F.4th 487, 494 (11th Cir. 2023) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.") (citation omitted).

## Background

### I.    Litigation of the claims

**1.** Plaintiffs brought this case in 2022, challenging the Town of Brookside's ticketing and towing policies as unconstitutionally revenue-driven. They raised four due-process claims, all seeking injunctive and monetary relief for their putative classes pursuant to Rule 23. *See* Doc. 32 (operative complaint). The complaint detailed how Brookside drastically increased its revenue by ticketing drivers and towing cars, starting with the hiring of police chief Mike Jones in 2018 and through his resignation in 2022 (after the Town gained national notoriety for its previously unknown revenue-generation policies). *See* Doc. 80 at 2, 8. It went on to explain that

the money generated by Brookside's police department, prosecutor, and judge flowed right back to them. *See id.* at 2–3. Accordingly, Plaintiffs argued that Brookside's law-enforcement system demonstrated "a realistic possibility that [enforcers'] judgment will be distorted by the prospect of institutional gain as a result of zealous enforcement efforts." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 250 (1980). Plaintiffs asserted that Brookside's systems were unconstitutional because the Town's penalty-generating departments were themselves "financially dependent on the maintenance of a high level of penalties." *Brucker v. City of Doraville*, 38 F.4th 876, 888 (11th Cir. 2022) (citation omitted). Counts 1 and 4 raised those claims against the Town's towing system; Counts 2 and 3, against the ticketing system.

Plaintiffs brought Count 1 against Brookside and its towing partner (Jett's Towing), on behalf of the putative Towing Class: "All persons who, since March 1, 2018, have paid fees to secure the release of a vehicle towed on the orders of the Brookside Police Department following a traffic stop." Count 1 claims that Brookside's towing system violates due process because the police department has a direct, 100% stake in the $175 generated every time the department orders a car towed. Count 1 seeks classwide declaratory and injunctive relief and classwide damages under Rules 23(b)(2) and (b)(3).

Count 4 is also a due-process challenge to Brookside's towing system, by another doctrinal path. It challenges the $175 towing fee because the fee is unrelated

to any costs and functions as an adjudication-free penalty. Count 4 is brought for a subset of the Towing Class, the Vehicle Retention Sub-Class: "All persons who, since June 17, 2020, have paid fees to secure the release of a vehicle towed on the orders of the Brookside Police Department following a traffic stop." Count 4 seeks classwide declaratory and injunctive relief and classwide damages under Rules 23(b)(2) and (b)(3).

Plaintiffs brought Counts 2 and 3 on behalf of the putative Charging Class: "All persons who, since March 1, 2018, have been charged with offenses in Brookside Municipal Court following a traffic stop by the Brookside Police Department." Those claims allege that the Town's ticketing practices demonstrate an institutional interest in revenue generation for the police department (Count 2), a personal interest in the same for the municipal prosecutor (Count 2), and at least the appearance of a personal interest in the same for the municipal judge (Count 3). Both counts seek classwide declaratory and injunctive relief and classwide damages under Rules 23(b)(2) and (b)(3).

**2.** Following motion-to-dismiss briefing (in which the federal government filed a statement of interest supporting Plaintiffs' claims), this Court denied, in full, Brookside's and Jett's Towing's motions to dismiss. For Count 1, the Court held that "Plaintiffs' allegations are sufficient to plead a due process claim based on the institutional interest of the police department in generating impound fees and making

4

arrests." Doc. 80 at 20. "The question," the Court reasoned, "is whether 'the police department was financially dependent on the maintenance of a high level of penalties.'" *Id.* (quoting *Brucker*, 38 F.4th at 888 (cleaned up)). The complaint stated such a claim, the Court held, because it adequately alleged "that the Town directed police operations to increase revenue, that the sharply increased revenue funded the Town's increased police staffing, and that the new revenue figures 'dwarf' the figures 'at issue in *Brucker*.'" *Id.* at 20–21 (quoting Plaintiffs' brief).

The Court's reasoning for Counts 2 and 3 was similar, and it rejected the Town's procedural arguments. Doc. 80 at 22 (Count 2: "The Town's motion does not engage Plaintiff[s'] argument that those allegations are sufficient to state a claim of institutional bias."); *id.* at 30–31 (Count 3: "Plaintiffs alleged that several features of the Town's municipal court system and the way the Town's judge is paid give the judge an institutional and personal financial interest in the cases he decides."). Same for Count 4. *Id.* at 30 ("Other than the arguments rejected for the reasons discussed [earlier], the Town did not assert any reason why Count 4 must be dismissed.").

Finally, the Court rejected Brookside's effort to strike Plaintiffs' well-pleaded class allegations. *Id.* at 33–35.

**3.** Written discovery, document production, and depositions were coordinated with a parallel putative class action against Brookside (the *Wattson/Thomas* case). Doc. 85. That coordinated discovery process was steered by Plaintiffs and their

counsel here. Doc. 165-1, Tsitsuashvili Dec. ¶ 6. It accomplished four litigation- and settlement-driving objectives.

First, Brookside and Jett's Towing produced comprehensive records of the tickets they issued, the cars they towed, and the fines, fees, and court costs they charged during the class period, as well as the years before for comparison. *Id.* That is: Plaintiffs secured the records needed by a claims administrator to identify and provide notice to class members, and those needed by the Court to assess Plaintiffs' claims on the merits.

Second, Plaintiffs' municipal-funding expert used those records to illustrate Brookside's revenue spikes from both ticketing and towing during the class period:

**Exhibit 7: Combined Traffic Ticket and Complaint and Nontraffic Citation and Complaint Fines Imposed and Court Costs Assessed by Calendar Year**



*Sources: Brookside Traffic Ticket and Complaint Records; Brookside Nontraffic Citation and Complaint Records; Brookside Court Records.*



Exhibit 15: Brookside Total Revenue from Impound Fees by Calendar Year

*Source: Brookside's Responses to Plaintiff Brandon Jones' Interrogatories dated October 17, 2024.*



Exhibit 11: Brookside General Fund Fines and Forfeitures Revenue and Other Revenue by Fiscal Year

*Source: Brookside Annual Financial Reports, FY 2016 – FY 2023.*

---

[1] *See* Doc. 165-1, Tsitsuashvili Dec. Ex. 1 (Zielke Report).

7

Third, after learning that Brookside deleted its police-department email accounts from the class period, Plaintiffs moved for spoliation sanctions. Doc. 143. That motion remains pending.

Fourth, Brookside's leadership—including Mayor Mike Bryan, Police Chief Marcus Sellers, and Town Clerk Debbie Keedy—explained in detail the relationship between the Town's law enforcement and its revenue generation during the class period, cementing the allegations of Plaintiffs' complaint.[2]

## II. Mediation by Judge Cornelius

Following over three years of litigation, the parties have engaged in a dozen settlement conferences mediated by Magistrate Judge Cornelius since last July. Docs. 144, 149, 151–154, 156, 159–162. And the parties have conferred and

---

[2] Doc. 165-1, Tsitsuashvili Dec. Ex. 2 (composite of deposition transcripts). *E.g.*, Mayor Bryan Dep. 269:14–270:2 (**Q.** So because in those years leading up to 2022, there was what you described as kind of a lack of economic development in Brookside, the Town needed to rely on fines, forfeitures, fees, and court costs in order to fund the growing police department that the Town had; right? **A.** Yes. **Q.** Okay. And that was a conscious choice made by the Town; right? **A.** Yes.); Chief Sellers Dep. 132:14–133:12 (increasing revenue was part of the police department's "operations" and "priorities"); Keedy Dep. 213:14–214:19, 237:4–11, 256:15–18 ($175 towing fee was pure profit, imposed and collected without any adjudicative procedures); Keedy Dep. 74:11–18; 208:7–14 ("hundred percent of the time," "hundred percent of the [towing] fee" went to a police-specific bank account "to pay for police department expenses"); Chief Sellers Dep. 197:2–17 (**Q.** And in fact, it was precisely that kind of feedback loop, I guess, that Chief Jones said he was implementing in the town, right, when he said that if you had more officers and more productivity, you would have more in terms of police-generated revenue; right? **A.** Yes. **Q.** All right. So it makes sense that one of the ways by which the Town was able to afford to have an average of ten officers was because those officers were expected to proactively police and -- which resulted in more citations and more fines and more car tows; right? **A.** Yes.); Chief Sellers Dep. 198:14–19 (**Q.** And one of the reasons that [Chief Jones] prioritized adding officers to the force was because that would result in a higher amount of police department-generated revenue for the Town; right? **A.** Yes. That can.).

negotiated regularly in between those conferences. Doc. 165-1, Tsitsuashvili Dec. ¶ 8. All four Plaintiffs have participated in those negotiations. *Id.* With Judge Cornelius's supervision, the parties have negotiated vigorously, while also working together to ensure adequate claims administration, notice, and distribution procedures. *Id.* With Judge Cornelius's guidance, both sides have proved to understand that "compromise is the essence of settlement." *Ponzio*, 87 F.4th at 494 (citation omitted). At the same time, Coleman, Jones, Grant, and Thomas have remained steadfast in their commitment to achieving meaningful relief and reform for the classes they seek to represent. *Id.*; Doc. 165-2, Pls.' Decs. ¶¶ 5–6, 9 (of each).

## Terms of the Settlement

Ultimately, the parties agreed to a meaningful resolution of Plaintiffs' claims. It remedies the classes' past harms, and it guards against future ones. The substance of those monetary and systemic terms is below. The full terms are attached.

### I.    The classes

For settlement purposes, Plaintiffs' Vehicle Retention Sub-Class has been subsumed within the Towing Class. That's appropriate because the sub-class was a subset of the Towing Class, and it attacked the same profit-incentive problem from a different due-process angle. The definition of each remaining class (Towing and Charging) has been refined.

The Towing Class is: "All persons who, from March 1, 2018 to August 1,

9

2022, have paid fees to either the Town of Brookside, Jett's Towing, Rich's Towing, or any other towing company or service (including any combination thereof) to secure the release of a vehicle towed on the orders of the Brookside Police Department following a traffic stop. Excluded from the class are: (1) all persons who have released claims against Brookside in [other listed cases]; (2) any person who properly executes and submits a timely exclusion request pursuant to the procedures described in [the settlement agreement]." Doc. 165-3, Settlement Agreement ¶ 33.

The Charging Class is: "All persons who, from March 1, 2018 to August 1, 2022, have been charged with an offense in the Brookside Municipal Court following a traffic stop by the Brookside Police Department. Excluded from the class are: (1) all persons who have released claims against Brookside in [other listed cases]; (2) any person who properly executes and submits a timely exclusion request pursuant to the procedures described in [the settlement agreement]." *Id.* ¶ 36.

## II.    Monetary relief for the classes

Brookside will pay the classes $1.5 million. Of that, $1 million is allocated to the Towing Class, and $500,000 is allocated to the Charging Class. Doc. 165-3, Settlement Agreement ¶¶ 39–40. On top of that, Brookside will pay up to $155,000 in claim administration costs (with the parties already having secured from the administrator a not-to-exceed quote of $133,500). *Id.* ¶ 64 & Ex. 4. To maximize the classes' recovery, Plaintiffs' counsel have agreed not to seek *any* attorneys' fees or

costs. Doc. 165-1, Tsitsuashvili Dec. ¶ 9.

### III.    Systemic relief for the classes

#### A.    Systemic relief for the Towing Class

As detailed in the settlement agreement, Brookside has agreed to permanently repeal the portions of its towing ordinances requiring the payment of any money to recover a car towed by Brookside or on the orders of Brookside. Doc. 165-3, Settlement Agreement ¶¶ 41–42. The Town has also agreed to cancel any outstanding towing-fee debts. *Id.* ¶ 43. And the Town has agreed to provide Towing Class members (who do not opt out of the class) with the following statement:

> "In 2018, the Town of Brookside's police department implemented an aggressive style of policing that prioritized generating revenue for the department's expansion. That decision led to a significant increase in traffic stops, vehicle tows, and citations, as well as a significant increase in the revenue collected from those stops. The Town recognizes the policy of aggressive policing likely interfered with the Town's obligation to administer justice equally under law. The policy also undermined the public's trust in the justice system and raised serious constitutional concerns under the Due Process Clause of the Fourteenth Amendment. The Town has discontinued the policy of aggressive policing. The Town's leadership – including the Town Council, Mayor, Chief of Police, and Prosecutor – apologize to the community and every person affected by the aggressive policing practice for the way it affected their faith and confidence in the judicial system. We look forward to earning your trust and confidence."

*Id.*

#### B.    Systemic relief for the Charging Class

For Charging Class members (who, again, do not opt out), Brookside has

agreed to provide the above statement; to provide a similar statement from the mayor to the town council; to cancel class members' still-outstanding fines, fees, and costs arising from Brookside municipal-court charges; to drop class members' ongoing prosecutions; and to facilitate class members' pardons and expungements arising from municipal-court charges. *Id.* ¶¶ 44–47.

Additionally, Brookside has agreed to keep 0% of fines and fees revenue for the next 5 years; no more than 1% for the 10 years following; and no more than 2.5% for the 15 years following that. *Id.* ¶ 48. That's a *30-year obligation* for Brookside to sever its policing and code-enforcement from its revenue generation.

The Town will also stop patrolling I-22, where much of its towing and ticketing occurred during the class period, for 10 years. *Id.* ¶ 53.

The Town has also agreed to provide notices of rights to all municipal-court defendants going forward, and to seek failure-to-appear warrants only after at least two consecutive, unexplained missed court appearances. *Id.* ¶¶ 49–50. In the absence of guilt, the Town has agreed not to seek the imposition of any court costs or fees on defendants. *Id.* ¶ 51. It's also agreed not to increase the compensation of its municipal judge or prosecutor for 10 years, except to track inflation. *Id.* ¶ 52.

And the Town will implement a variety of public transparency measures, including making its town ordinances, town council meetings, and law-enforcement related contracts available online. *Id.* ¶ 54.

Brookside will provide Plaintiffs' counsel the documents necessary to ensure compliance with these agreements for 10 years. *Id.* ¶ 55.

Finally, Brookside has agreed for this Court to retain jurisdiction for Plaintiffs and other class members to enforce all of the settlement terms. *Id.* ¶¶ 58, 120, 132.

## Reasons for Approval

The Court should grant preliminary approval of the settlement because it's fair, reasonable, and adequate (as required by Rule 23(e)) and because the class certification criteria are satisfied (as required by Rules 23(a), (b), and (g)). Both conclusions would be well within the Court's sound discretion.

### I.    The settlement is fair, reasonable, and adequate.

The Court is tasked with assessing whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Rule articulates four "core concerns" to guide that inquiry, assessed in turn below. *Ponzio*, 87 F.4th at 494–95. The Eleventh Circuit's so-called *Bennett* factors can complement that analysis, also addressed below. *Id.* Ultimately, the assessment is "left to the sound discretion of the [Court]." *In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070, 1087 (11th Cir. 2023). While the Court has an obligation to ensure that nonparty class members are not subjected to unjust terms, such findings are exceedingly rare in the absence of "fraud, collusion, or the like." *McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207, at *8 (N.D. Ala. Aug. 1, 2019).

13

No such concerns could trouble the Court here. To the contrary: In an uphill area of constitutional litigation, Plaintiffs have forgone all attorney's fees; secured for the classes a monetary recovery that approximates what the classes paid Brookside and Jett's Towing in fines and fees; eliminated the classes' outstanding fines, fees, and prosecutions; and achieved meaningful systemic changes that guard against similarly revenue-driven policies going forward, including the removal of Brookside's officers from I-22 and the severing of links between Brookside's policing and its revenue.

Below, parts A through D address Rule 23(e)(2)'s core concerns. Next, part E maps those considerations onto the complementary *Bennett* factors. Finally, part F explains that notice of the settlement is reasonably calculated to reach class members. All told, nothing about the settlement should give the Court pause.

### A.    The class representatives and counsel have adequately represented the classes.

Rule 23(e)(2)(A) requires that "the class representatives and class counsel have adequately represented the class[es]." We have.

Plaintiffs brought four well-investigated, thoroughly-pleaded class claims, each contending that Brookside's law-enforcement apparatus violated due process because its police, prosecutor, and judge were overly reliant on the revenue they generated from fines and fees. *See* Docs. 32, 80. Such constitutional claims face an uphill battle. *See Brucker*, 38 F.4th at 879–80 (rejecting similar claims against

14

another city's police, prosecutor, and judge because "the importance of fines and fees to a city's budget does not make its procedures for imposing fines and fees unconstitutional"). Against *Brucker*'s headwinds, though, Plaintiffs secured the support of the U.S. Department of Justice and fully rebuffed Brookside's motion to dismiss. Docs. 56, 80.[3] Plaintiffs also defeated a motion to dismiss their due-process claim against the Town's private towing partner. Doc. 80 at 35–40.[4]

The ensuing coordinated discovery process, which this case's Plaintiffs and counsel spearheaded, substantiated Plaintiffs' claims. *See supra* at 5–8 (describing discovery successes). At substantial expense, Plaintiffs' counsel engaged an experienced municipal-funding expert to examine Brookside's records and practices. As reproduced above, she vividly illustrated the revenue spikes generated by the Town's ticketing and towing policies during the class period. *Supra* at 6–7. She concluded: "The use of fines and forfeitures for Town revenue, and allocating impound fees to law enforcement, created a possible incentive for the Brookside Police Department to collect more fines and forfeitures revenue." Doc. 165-1, Tsitsuashvili Dec. Ex. 1, Zielke Report 54. Plaintiffs also elicited from Brookside's

---

[3] To drive home the difficulty of successfully litigating such claims: In the parallel putative class-action against Brookside, this Court dismissed—with prejudice, at the pleading stage— similar due-process claims arising from the same ticketing and towing policies at issue here. *Wattson/Thomas*, 2:22-cv-157, Doc. 88 at 28–32. That's even though those claims were seemingly modeled after the ones Plaintiffs successfully pleaded here. Doc. 165-1, Tsitsuashvili Dec. ¶ 7.

[4] Upon successful implementation of the settlement agreement with Brookside, Plaintiffs are prepared to voluntarily dismiss their claims against Jett's Towing.

15

mayor an admission that the Town made "a conscious choice" to grow its police department using the fines and fees generated by that department. *See supra* note 2. The police chief admitted the same. *Id.*

Plaintiffs and their counsel then proceeded to "vigorously negotiate[] the resolution of the case through [a dozen] mediation sessions" with Judge Cornelius. *Accord McWhorter*, 2019 WL 9171207, at *9. That negotiation resulted in the monetary and systemic settlement terms now before the Court.

### B.    The settlement was negotiated at arm's length.

The negotiations took place at arm's length, as required by Rule 23(e)(2)(B). "[T]his was by no means a quick resolution. There is absolutely no evidence of any collusion." *In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *15 (N.D. Ala. Aug. 9, 2022). To the contrary: After more than three years of hard-fought litigation, the parties went back and forth for months, negotiating under Judge Cornelius's supervision just about every jot and tittle of the settlement, including substantive terms, administration costs, and notice and distribution procedures. Doc. 165-1, Tsitsuashvili Dec. ¶ 8. The result: The classes get $1.5 million, up to another $155,000 for claims administration, and meaningful systemic relief. Seeking to maximize the classes' relief, Plaintiffs' counsel take not one dollar.

### C.    The relief provided for the classes is adequate.

Rule 23(e)(2)(C) requires that the settlement terms provide "adequate" relief.

That's a reasonableness inquiry; it doesn't test whether the settlement "is the most favorable possible result of litigation." *McWhorter*, 2019 WL 9171207, at *10 (citation omitted). Based on the Rule's four enumerated considerations, Plaintiffs' settlement readily clears the adequacy bar. Monetarily, it recovers almost all of what Brookside and Jett's Towing collected from the classes in fines and fees, while also canceling outstanding debts. On top of that, it secures meaningful systemic relief.

### 1. Costs, risks, and delays of continued litigation

Rule 23(e)(2)(C)(i) looks to the "costs, risks, and delay of trial and appeal." While Plaintiffs' claims are strong, those considerations carry substantial weight. Winning due-process claims of the sort at issue here is no guarantee, even after surviving dismissal and building a strong evidentiary record. We know, because our Institute for Justice colleagues managed both of those things in *Brucker v. City of Doraville* (the seminal case governing the due-process claims at issue here) before having the Eleventh Circuit affirm summary judgment in the city's favor. *But see Harjo v. City of Albuquerque*, 326 F. Supp. 3d 1145 (D.N.M. 2018) (victory on profit-incentive due-process claims brought by the Institute for Justice). This case is, of course, stronger than *Brucker*. *See* Doc. 80 at 20–22. But the costs, risks, and delays of contested summary-judgment proceedings, contested class-certification proceedings, trial, appeal, and potential remand proceedings militate strongly in favor of approving the parties' proposed settlement.

17

The magnitude of the settlement's relief drives home the point. Starting with monetary relief: While direct comparator ranges are effectively unavailable (given the novelty of winning or settling claims like these for damages) there can be little doubt that the "monetary relief offered by this settlement is within the range of what courts have found to be reasonable." *McWhorter*, 2019 WL 9171207, at *11 & n.12; *cf. Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 321, 342 (E.D. Pa. 2021) (approving restitutionary settlement terms proposed by class counsel at the Institute for Justice as "the fairest of the competing suggestions" because it "allot[ted] nearly all the settlement money to the class members"). To compensate the classes for the injuries caused by Brookside's and Jett's Towing's fines and fees, the settlement secures the classes $1.5 million in direct recovery, plus up to $155,000 to administer that recovery, for a total of $1.655 million (before adding the cancelation of unpaid fines and fees). By comparison, Plaintiffs' expert calculated Brookside's general-fund fines and forfeitures revenue from 2018 to 2022 (the recovery period) to be about the same amount: $1,546,181. *See supra* at 7 (graph labeled Exhibit 11). That revenue increases to about $1.776 million after adding the approximately $230,000 that Jett's Towing collected (based on about 1,400 cars at about $165 each). *See* Doc. 165-1, Tsitsuashvili Dec. Ex. 1, Zielke Report 28. With that $1.776 million figure as the compensatory comparator, the classes' recovery of $1.655 million is undoubtedly north of the modest recovery percentages regularly approved in class action

18

settlements, even after recognizing that an added measure of compensation would be justified for the time class members spent going to Brookside's municipal court and to Jett's towing yard. *See In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *20 (anywhere from 5.6% to 14.3% of potential recovery is reasonable); *McWhorter*, 2019 WL 9171207, at *11 (anywhere from 4% to 19.5% of potential recovery is reasonable). And that recovery comes, of course, with the added benefits of immediacy and certainty. This is a quintessential case where "the prospect of a long, arduous trial requiring great expenditures of time and money on behalf of both parties and the Court, all in the hopes of achieving a result on par with the relief offered by the settlement, is not in the interests of any party or [class member]." *McWhorter*, 2019 WL 9171207, at *11 (cleaned up).

Moreover: "As significant as the monetary amount of [$1.655 million] is, the truly exceptional aspect of this settlement is the structural relief agreed upon." *Accord In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *20. Brookside has agreed to permanently repeal its towing fee ordinance. It's agreed to keep no more than 2.5% of fines and fees revenue for the next 30 years (including 0% for the first 5 years). It's agreed to stop patrolling I-22 for 10 years (subject to a narrow exception for emergencies). It's agreed to drop outstanding prosecutions. It's agreed to provide notices of rights to its municipal-court defendants. It's agreed to facilitate pardons and expungements. It's agreed to implement substantial,

permanent transparency measures. And it's agreed to issue an apology to class members for turning its law-enforcement apparatus into a revenue stream. For Plaintiffs and the rest of the class members at risk of further exposure to the ticketing and towing policies that Brookside has agreed to disavow through this settlement, the "relief secured [by Plaintiffs]—both monetary and non-monetary—reflects an excellent result . . . and plainly falls within the range of reasonableness contemplated by" the adequacy inquiry. *Id.*

The Court need not, however, take only our word for it. Because this case was partially coordinated with the parallel *Wattson/Thomas* case, Plaintiffs' counsel here had the unusual opportunity to ask outside members of the classes we seek to represent—plaintiffs in that parallel litigation—how they felt about the relief we seek for them. They testified that they would "welcome" an "end" to "Brookside's system of using traffic stops and municipal court prosecutions to generate and maximize revenue for the town," including a litigation resolution that "limit[s] the Town of Brookside's ability to patrol I-22," while providing "some measure of compensation" for those exposed to Brookside's ticketing and towing policies. *See* Doc. 165-1, Tsitsuashvili Dec. Ex. 2 (composite of deposition transcripts) (Kilgore Dep. 47–48; Crawford Dep. 91–94; S. Jones Dep. 85–93). All of that is, of course, what this settlement achieves (and then some). And this case is the only one that *can* achieve those systemic goals or *any* ticketing-related compensation, given the long-

ago dismissal of such claims in the parallel litigation. *See supra* note 3.

### 2. Effectiveness of claim processing and relief distribution

Rule 23(e)(2)(C)(ii) looks to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." To that end, the parties have retained Angeion Group LLC as the classes' claims administrator. "Angeion has extensive experience handling class action administration." *Ford v. Koutoulas*, 2025 WL 3706506, at *5 (M.D. Fla. Dec. 22, 2025). The parties are providing Angeion all the records necessary to identify the names and likely addresses of class members, to whom Angeion will send all of the required notices and claim forms by first-class mail. Doc. 165-1, Tsitsuashvili Dec. ¶ 10. Notice will also be published on AL.com, where Brookside's ticketing and towing practices were first widely reported. *Id.* Class members will have two options for submitting claims (by mail or a dedicated settlement website), and they may opt out of one or both classes. Doc. 165-3, Settlement Agreement ¶ 81. Reminder notices will go to unresponsive class members. *Id.* ¶ 75. The parties will review and resolve any uncertain claim submissions. *Id.* ¶ 96. And finally, upon final approval of the settlement, Angeion will distribute relief on a pro-rata basis to the members of each class. *Id.* ¶¶ 112–114.

### 3. Attorneys' fees

Rule 23(e)(2)(C)(iii)'s inquiry into the settlement's provision of attorneys'

fees is particularly easy here: Plaintiffs' counsel seek $0, eliminating any potential concern about diluting the classes' recovery. While Plaintiffs' counsel have expended extraordinary time and resources litigating this case, we firmly believe that the settlement proposed here does right by the classes and secures a just result. To accomplish that goal, we have agreed to forgo any attorneys' fees or costs.

### 4. Disclosure of agreements required by Rule 23(e)(3)

Rule 23(e)(2)(C)(iv) requires assessing whether "any agreement required to be identified under Rule 23(e)(3)" impacts the settlement. Here, in addition to the settlement, the parties have two other agreements that may qualify for disclosure. Neither has any negative impact on the settlement. The first, in fact, facilitates it.

First, the parties have retained Angeion Group LLC as the classes' claims administrator. That agreement provides for class notice, claims processing, and claims distribution for up to 9,000 class members for a negotiated fee not to exceed $133,500. Doc. 165-3, Settlement Agreement Ex. 4. Two things are notable about the Angeion agreement. The first is that it covers up to 9,000 class members, even though membership is quite unlikely to approach that number. The second is that Brookside has agreed to pay up to $155,000 in administration costs, even though Angeion has agreed to do the work for $21,500 less than that. Plaintiffs negotiated those buffers in order for the settlement to come as close as possible to guaranteeing that the classes' actual recovery will not drop below $1.5 million by any diversion

of administration costs. (In the event Angeion's administration costs exceed $155,000, the settlement contemplates that additional costs will be paid equally from the $1.5 million settlement funds of the Towing Class and the Charging Class.)

The second agreement we disclose under Rule 23(e)(2)(C)(iv) is that Plaintiff Coleman (the only one who brought non-class claims) has agreed to settle her Fourth Amendment claims against the Brookside officers who handcuffed her, for $5,000. Doc. 165-3, Settlement Agreement ¶ 4. That amount is separate and apart from the $1.5 million in recovery and the $155,000 in administration costs Coleman helped secure for the classes. *Id.* It was only discussed and negotiated after the classes' recovery was secured. Doc. 165-1, Tsitsuashvili Dec. ¶ 11. And because it's for a Fourth Amendment claim distinct from the classes' due-process claims, that $5,000 casts no pall on the adequacy of the classes' $1.5 million recovery. *Davis v. United Bank Corp. Ret. Plan Comm.*, 2025 WL 3142143, at *8 (M.D. Ga. Nov. 7, 2025) ("Courts approve class action settlements where the class representative has entered into a separate settlement agreement that resolves and releases individual claims brought by class representatives that were not certified for class treatment so long as the class representative did not receive disproportionate relief when compared to the relief provided to the class and the individual settlement did not influence the terms of the class settlement.") (cleaned up; collecting cases).

23

### D.    The settlement treats class members equitably.

Rule 23(e)(2)(D) asks whether the settlement "treats class members equitably relative to each other." It does. Each member of the Towing Class (Plaintiffs included) is entitled to a pro-rata share of that class's $1 million recovery, based on their number of towing payments. Doc. 165-3, Settlement Agreement ¶ 89. Same for the Charging Class. Each member (Plaintiffs included) is entitled to a pro-rata share of that class's $500,000 recovery. *Id.* ¶ 88. Those equal intraclass treatments are equitable treatment.

As the Court is likely aware, counsel in the parallel *Wattson*/*Thomas* case recently tried to disrupt potential settlement here by suggesting otherwise. *See* 2:22-cv-157, Doc. 137. They raised the specter that because Plaintiffs' Towing Class seeks recovery for *everyone* exposed to Brookside's towing system since 2018 (the system's inception, to which Plaintiffs here assert the statute of limitations reaches back), it might dilute the recovery of those who were exposed to that system no more than two years before the *Wattson*/*Thomas* litigation began. *Id.* at 9–11. For now, we'll set aside the merits of that unlitigated statute-of-limitations argument, beyond noting that Brookside never pressed it over years of contested litigation, that we're confident it would resolve in the classes' favor here, and that the (peculiarly pro-defendant) limitations theory lately espoused by the *Wattson*/*Thomas* counsel appears to directly undermine the interests of at least one of their own clients. *See,*

*e.g.*, 2:22-cv-157, Doc. 126 at 21 n.6 (seeming to jettison existing client "because his incident pre-dates the two year class period").

For present purposes, it suffices to note that the *Wattson*/*Thomas* counsel's interjection makes two important errors. First, it ignores the reality that a smaller class would assuredly recover a smaller pot of money—no rational defendant, for example, would settle the claims of a 100-member class for anything close to the figure at which it would settle the claims of a 1,000-member class. Second, a class settlement that treats all its members the same even though some might have to overcome a statute-of-limitations defense in contested litigation "does not make the treatment of class members so uneven that the settlement should be rejected." *Glover v. Conn. Gen. Life Ins. Co.*, 2024 WL 4036721, at *11 (D. Conn. Sept. 4, 2024). In any event, class members who think they can recover more, based on a statute-of-limitations theory or any other, remain free to "test [their] theory by opting out of the settlement." *McWhorter*, 2019 WL 9171207, at *13; *see In re Coll. Athlete NIL Litig.*, 2025 WL 1675820, at *35 (N.D. Cal. June 6, 2025) (collecting cases that reject class members' efforts to undermine fair and adequate settlements instead of exercising their right to opt out and test their theories for higher recovery).

### E.    The settlement satisfies the Eleventh Circuit's *Bennett* factors.

"The four core concerns set out in Rule 23(e)(2) provide the primary considerations in evaluating proposed agreements," but the so-called *Bennett* factors

articulated by the Eleventh Circuit before the Rule's amendment "can, where appropriate, complement those core concerns." *Ponzio*, 87 F.4th at 495. They are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *Id.* at 494. Because "*Bennett* factors (1), (2), (4), and (6) can inform 'whether the relief provided to the class is adequate' (core concern three)," per Rule 23(e)(2)(C), *id.* at 495, we incorporate the discussion above concerning the Rule 23(e)(2)(C) considerations into an assessment of those *Bennett* factors. Because "*Bennett* factors (3) and (5) can inform 'whether the proposal treats class members equitably relative to each other' (core concern four)," per Rule 23(e)(2)(D), *id.*, we incorporate the discussion above concerning the Rule 23(e)(2)(D) considerations into an assessment of those *Bennett* factors.

### F.    Notice is reasonably calculated to reach class members.

Because this settlement is in part pursuant to Rule 23(b)(3), Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The parties have made substantial efforts to that end, including producing spreadsheets for Angeion with the names, mailing addresses, and other identifying

information of as many class members as possible, as well as the Brookside and Jett's Towing records necessary for Angeion to create similar spreadsheets of as many additional class members' identities and contact information as possible. Doc. 165-1, Tsitsuashvili Dec. ¶ 10. The parties have, additionally, agreed to notice by publication of ads on AL.com, where news of Brookside's practices spread—first regionally, then nationally. *Id.* With that information in hand, Angeion is prepared to take all of the claim-processing and distribution steps detailed above pursuant to Rule 23(e)(2)(C)(ii).

## II.   The settlement satisfies Rules 23(a), (b)(2), (b)(3), and (g).

To approve the class settlement, the Court must also be satisfied that Rule 23's class-certification criteria are met for both the Towing Class and the Charging Class. They are. Both classes are ascertainable, both classes satisfy Rule 23(a)'s threshold requirements, both classes satisfy Rule 23(b)(2) for systemic relief, and both classes satisfy Rule 23(b)(3) for monetary relief. Finally, Plaintiffs' counsel satisfy Rule 23(g)'s appointment criteria.

Finding those requirements satisfied is well within the Court's discretion. *See Carriuolo v. GMC*, 823 F.3d 977, 981 (11th Cir. 2016). At bottom, Plaintiffs' claims are well-suited for classwide resolution (by settlement or litigation) because, as this Court previously acknowledged, the "claims do not turn on the individual circumstances in which any Plaintiff or putative class member has been stopped,

towed, ticketed, charged, prosecuted, or convicted, but on whether Brookside's systems are biased and whether every class member was subjected to Brookside's systems." Doc. 80 at 27 (cleaned up).

### A.   Ascertainability and Rule 23(a)

The Towing Class and the Charging Class both satisfy Rule 23's threshold requirements. Each class's membership is ascertainable. Each class is so numerous that joinder would be impracticable (Rule 23(a)(1)). The due-process questions presented by Plaintiffs' claims and the evidence necessary to answer them are common to their respective classes (Rule 23(a)(2)). Plaintiffs' experiences are typical of the classes they seek to represent (Rule 23(a)(3)). And Plaintiffs and their counsel are adequate class representatives (Rule 23(a)(4)).

#### 1.   Ascertainability

"Ascertainability is an implied prerequisite of Rule 23," asking if a class definition adequately describes "who belongs in it." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). It's enough that "membership can be capable of determination [even if not] capable of *convenient* determination." *Id.* at 1303. Both classes qualify because membership is defined by objective, verifiable criteria. For the Towing Class, those criteria are: a car towed on the orders of Brookside police, payment of fees to release it, from one date-certain to another. For the Charging Class, those criteria are: Brookside municipal-court charges, following a Brookside

police traffic stop, from one date-certain to another. And, while not necessary to satisfy this purely definitional requirement, the precise individuals in each class are determinable, via the records already produced by Brookside and Jett's Towing. In short: "Each criterion for class membership . . . is based on objective and verifiable records within" the parties' control. *Reynolds v. Progressive Direct Ins. Co.*, 346 F.R.D. 120, 129–30 (N.D. Ala. 2024).

### 2.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." A class of more than 40 typically qualifies. *Reynolds*, 346 F.R.D. at 130. The Towing Class qualifies because, during the class period, Brookside collected towing fees from around 1,400 individuals, making joinder impracticable. Doc. 165-1, Tsitsuashvili Dec. Ex. 1, Zielke Report 28. The Charging Class qualifies because, during the class period, Brookside issued approximately 13,000 tickets and citations to thousands of drivers arising from traffic stops, all for adjudication in its municipal court. *Id.*, Zielke Report 14, 16.

### 3.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." This "relatively light" requirement is satisfied as long as "common evidence" can "generate common answers apt to drive the resolution of" the claims. *Reynolds*, 346 F.R.D. at 130–31 (cleaned up).

That's true for the Towing Class because Plaintiffs' towing-related claims (Counts 1 and 4) both ask a common question (whether the Brookside police department's towing-fee system violates due process) and both turn on common evidence (the fact that all the revenue generated by Brookside's towing fee is pure profit redounding directly to the police department, the fact that the fee is imposed and collected without neutral oversight, and the fact that establishment of the fee resulted in massive towing spikes and police hiring spikes). The Court already recognized these commonality-sustaining aspects of Count 1. Doc. 80 at 20–21 ("The question is whether 'the police department was financially dependent on the maintenance of a high level of penalties,'" based on the "practice of collecting a certain type of fee" to release each car, unconcerned with whether particular towing decisions might be reasonable.) (citation omitted). And courts regularly hold that commonality is satisfied in similar circumstances, where class members are "uniformly affected by a policy and practice" and "[n]o individualized inquiries are necessary for the Court to hold as a matter of law that each class member had his or her rights violated by virtue of the" policy. *Brewster v. City of Los Angeles*, 2023 WL 5505867, at *13 (C.D. Cal. July 17, 2023) (commonality is satisfied where the question is whether a municipal impounding policy violates due process).[5]

---

[5] *See also Ray v. Jud. Corr. Servs., Inc.*, 333 F.R.D. 552, 572–73 (N.D. Ala. 2019) (commonality is satisfied where common policy evidence can resolve due-process questions concerning the operation of a fee-funded probation system); *Caliste v. Cantrell*, 2018 WL 1365809,

Same goes for the Charging Class, because Plaintiffs' ticketing-related claims (Counts 2 and 3) present a "due process challenge to Brookside's profit-fueled traffic ticketing system." Doc. 80 at 18 (quoting complaint). Via both claims, "Plaintiffs are seeking to dismantle the financial incentive system for law enforcement that the Town allegedly erected beginning in March 2018." *Id.* at 29. And for both claims, determining whether that "financially-biased" system violates due process is unconcerned with whether "certain individual searches and seizures might be 'objective[ly] reasonable[].'" *Id.* (quoting and rejecting Brookside's effort to peg assessment of Counts 2 and 3 to individual circumstances). As such, the "issues to be tried are common to all potential class members," *Ray*, 333 F.R.D. at 572, and they'll be resolved "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Again, courts readily find commonality satisfied in such circumstances. *E.g.*, *Ray*, 333 F.R.D. at 572–73 (commonality is satisfied where common evidence is offered to show that systemic judicial practices are constitutionally deficient); *Caliste*, 2018 WL 1365809, at *2 (similar); *see Brewster*, 2023 WL 5505867, at *13 ("In the civil rights context, commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.") (cleaned up).

---

at *2 (E.D. La. Mar. 16, 2018) (commonality is satisfied where the question is whether it violates due process for the judge setting bail to have control of the bail fund).

### 4.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." They are.

Plaintiffs Coleman, Jones, and Grant are typical of the Towing Class because their claims "arise from the same . . . pattern or practice and are based on the same legal theory" applicable to the class. *Reynolds*, 346 F.R.D. at 131. The practice is Brookside's uniform imposition of a profit-generating towing fee. The legal theory is that it violates due process for that fee to function as a self-funding mechanism for the police department. And the relief sought is a classwide injunction of that system and classwide redress for its harms. Coleman, Jones, and Grant typify all of that because they had to pay to get their cars back and they have an interest in eliminating Brookside's towing-fee system to avoid re-exposure to it. Doc. 165-2, Pls.' Decs. ¶¶ 7, 9 (of each); *see Brewster*, 2023 WL 5505867, at *14. As the Court put it: "Plaintiffs assert that they and the Towing Class were injured when their vehicles were 'seized, towed, and impounded' and they were charged fees to secure the release of those vehicles." Doc. 80 at 4–6, 10. That's why "Plaintiffs are seeking to dismantle the financial incentive system for law enforcement" under which that happens and seeking redress for its harms, for themselves and for the Towing Class alike. *Id.* at 29.

The same is true for the Charging Class. Plaintiffs Coleman, Jones, Grant, and

Thomas are all typical of the Charging Class because they have been ticketed and charged by Brookside, and because Counts 2 and 3 "arise from the same . . . pattern or practice and are based on the same legal theory" applicable to the class. *Reynolds*, 346 F.R.D. at 131. The practice is Brookside's reliance on ticketing to fund Town operations. The legal theory is that doing so violates due process by creating financial incentives for the police department and prosecutor (Count 2) and at least an appearance of the same for the municipal court (Count 3). And the relief sought is a classwide injunction of that system and classwide redress for its harms, both of which Plaintiffs have a direct stake in. Doc. 165-2, Pls.' Decs. ¶¶ 7, 9 (of each); *see Ray*, 333 F.R.D. at 573 (typicality is satisfied where plaintiffs challenge a system they have been exposed to).

### 5.    Adequate representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Coleman, Jones, and Grant satisfy this requirement for the Towing Class and all four Plaintiffs satisfy it for the Charging Class because they have no interests conflicting with their respective classes, they have diligently and vigorously litigated and negotiated on behalf of the classes, and their experiences and interests are aligned with the classes'. *Brewster*, 2023 WL 5505867, at *15 (typicality and lack of conflict satisfy adequate-representation requirement). Simply put, "all putative class members would benefit from a finding

that" Plaintiffs succeed on their systemic due-process claims, making them adequate

class representatives. *Reynolds*, 346 F.R.D. at 132. And "their attorneys are qualified

to prosecute this case." *Id.*; *see* part II.D, *infra* (discussing counsel's litigation of the

case and qualifications for appointment under Rule 23(g)).

### B.    Rule 23(b)(2)

Class certification under Rule 23(b)(2) is appropriate if Brookside has "acted

. . . on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole." "The

critical inquiry is whether the class members have suffered a common injury that

may be addressed by class-wide injunctive or equitable relief." *Fla. Immigrant Coal.

v. Uthmeier*, 780 F. Supp. 3d 1235, 1268 (S.D. Fla. 2025) (citations omitted). That

describes the systemic relief achieved for both the Towing Class and the Charging

Class, for which certification under Rule 23(b)(2) is the quintessential mechanism.

Indeed, it "has been liberally applied in the area of civil rights." *Braggs v. Dunn*, 317

F.R.D. 634, 667 (M.D. Ala. 2016). Because "the problems" identified by Plaintiffs

and "the remedies" provided by the settlement "are *systemic*," the settlement's

systemic provisions are properly certified under Rule 23(b)(2). *Id.*

### C.    Rule 23(b)(3)

For the settlement's monetary relief provisions ($1 million for the Towing

Class; $500,000 for the Charging Class), Rule 23(b)(3) requires "that the questions

of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance inquiry "tests whether [each class is] sufficiently cohesive to warrant adjudication by representation." *Carriuolo*, 823 F.3d at 981. The superiority inquiry assesses: the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. *Id.* at 985–90 (citing Rule 23(b)(3)(A)–(D)). Those inquiries cash out in favor of certifying both classes under Rule 23(b)(3).

### 1.    Predominance

Finding predominance requires a "direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Carriuolo*, 823 F.3d at 985 (citation omitted). That's true for the claims of both the Towing Class and the Charging Class because, as the Court already recognized, liability for Plaintiffs' due-process claims on behalf of each class has nothing to do with individual circumstances and everything to do with the lawfulness of Brookside's towing and ticketing policies writ large. Doc. 80 at 26–29; *see Williams v. Mohawk Indus., Inc.*,

35

568 F.3d 1350, 1357–58 (11th Cir. 2009) (where "the issue of liability *vel non*" is systemic and unconcerned with individual applications of that system, only the "most complex individual issues" can defeat predominance) (citations omitted). As one court recently put it when finding predominance satisfied in contested class-certification proceedings concerning Los Angeles's towing and impounding system:

> "[T]he common legal issues among members of the . . . Class greatly outnumber individual issues in both number and importance. Each were subjected to a virtually uniform policy and set of practices; each were injured in a substantively identical way; and each are entitled to relief for multiple constitutional violations under the same theories of liability. There may be some factual differences among them. They may be entitled to different amounts of damages. But those differences do not defeat predominance. *See Tyson Foods,* [*Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016)]. The same is true of Plaintiffs' due process claim across classes: there may be differences among class members, even important ones, but those differences are outweighed by the overlapping circumstances giving rise to their claims."

*Brewster*, 2023 WL 5505867, at *16. The same analysis holds with respect to the Towing and Charging Classes' monetary relief from Brookside's uniform towing and ticketing policies.

### 2.    Superiority

Rule 23(b)(3)'s superiority requirement includes four discrete considerations, addressed in turn. The focus is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). And satisfaction of the predominance requirement "has a tremendous impact on the superiority analysis." *Id.*

**Class members' interests in individually controlling the prosecution of separate actions.** This factor weighs in favor of certifying both classes because "the potential individual recovery for the putative class members is not large enough to warrant the burden or expense of litigating" individual cases. *Reynolds*, 346 F.R.D. at 138. As abusive as it is for Brookside to use towing and ticketing to extract money from the classes, take their cars, and take them away from work, school, and family obligations for days, all in pursuit of the Town's profits, those abuses do not make sense economically to spend years litigating in the mine-run of cases. And class members with unusual circumstances "can opt out of the class." *Id.*

**The extent and nature of any litigation concerning the controversy already begun by or against class members.** This case was partially coordinated for discovery purposes with another putative class action against Brookside (the *Wattson/Thomas* case). Shortly after Plaintiffs here filed their due-process claims, that case added similar ones; but there, unlike here, this Court dismissed those claims and let stand against Brookside only an Eighth Amendment excessive-fines conspiracy claim, on behalf of a putative class that's subsumed entirely within Plaintiffs' Towing Class. *See* 2:22-cv-157, Doc. 88 at 28–32 (dismissing profit-incentive claims with prejudice). So only this case can achieve the systemic relief sought (and now obtained) by Plaintiffs here, and only this case can achieve the ticketing-based monetary relief sought (and now obtained) by Plaintiffs here.

**The desirability or undesirability of concentrating the litigation in the particular forum.** There is no other federal district in which the classes' federal claims could be brought. And "the adjudication of these issues on a classwide basis provides significant economies of scale, while litigating . . . thousands of individual cases would be prohibitively expensive and cumbersome." *Brewster*, 2023 WL 5505867, at *16; *see Klay*, 382 F.3d at 1270–72.

**The likely difficulties in managing a class action.** The parties' settlement of all the claims in this case makes the manageability assessment relatively easy for both classes. "[M]anageability is a comparative analysis. . . . And here, class treatment is without a doubt more manageable than a diffusion of individual cases on the same claims for even a small subset of the myriads of class members." *Reynolds*, 346 F.R.D. at 139 (citation omitted).

### D.    Rule 23(g)

Plaintiffs' counsel at the Institute for Justice are well qualified to represent both the Towing Class and the Charging Class, pursuant to Rule 23(g)(1)(A)'s general considerations for appointing counsel. We're also best suited to represent all subsets of the Towing Class, pursuant to Rule 23(g)(2)'s standard for choosing between competing applicants for appointment.

#### 1.    Rule 23(g)(1)(A)

The Court should appoint Institute for Justice (IJ) attorneys Jaba Tsitsuashvili

and Sam Gedge, together with local counsel Bill Dawson, as the Towing and Charging Classes' counsel based on Rule 23(g)(1)(A)'s mandatory appointment considerations. They are: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

As to factors (i), (iii), and (iv): Counsel's work on this case is discussed above, and our knowledge of the law was demonstrated by the Court's wholesale denial of Defendants' motions to dismiss, based on repeated agreement with Plaintiffs' arguments. *See* Doc. 80. To litigate this case and reach this settlement, IJ brought to bear many hundreds of pro-bono attorney hours, over $280,000 in expert-witness fees, and tens of thousands of dollars in additional litigation costs (none of which we're recouping). Doc. 165-1, Tsitsuashvili Dec. ¶ 6.

As to factor (ii): Counsel are experienced civil-rights litigators. Gedge litigated the landmark Supreme Court victory in *Timbs v. Indiana*, 586 U.S. 146 (2019) (incorporating the Excessive Fines Clause against the states), and won the ensuing excessiveness challenge at the Indiana Supreme Court, 169 N.E.3d 361 (2021). *Id.* ¶ 12. He's also class counsel in a due-process challenge to Indiana's system of for-profit prosecutors, pending before the Seventh Circuit (*Sparger-*

*Withers v. Taylor*, No. 24-1367). *Id.* And Tsitsuashvili is currently litigating constitutional class actions against various federal agencies in the Southern District of Alabama (*Garcia Venegas v. Homan et al.*, 1:25-cv-397) and the Western District of Pennsylvania (*Brown v. TSA et al.*, 2:20-cv-64). *Id.* Dawson, meanwhile, has successfully litigated civil-rights claims in the federal and state courts of Alabama for decades. *Id.*

At bottom, the settlement we negotiated here speaks for itself concerning our commitment to the classes and our ability to represent their interests.

### 2.    Rule 23(g)(2)

We acknowledge that another set of attorneys wishes to represent a portion of our Towing Class. *See Wattson/Thomas*, 2:22-cv-157, Doc. 126 (motion to certify a subset of Plaintiffs' Towing Class for an Excessive Fines challenge to Brookside's towing fee).[6] With those concurrent requests, Rule 23(g)(2) requires the Court to "appoint the applicant best able to represent the interests of the class." That's Plaintiffs' counsel here for several reasons.

To start, unlike the other applicants, as non-profit attorneys we have the unusual luxury of forgoing the recovery of any attorneys' fees or costs, thereby maximizing the classes' recovery. More substantively: Of the lawsuits against

---

[6] While the parties continue to refer to the parallel litigation as "*Wattson/Thomas*," both Sean Wattson and Corey Thomas appear to have been long-since dropped from the roster of that case's class representatives.

Brookside, ours is the only one to survive dismissal for systemic due-process claims on a classwide basis. It's also the only Brookside case to attract the support of the DOJ's Civil Rights Division. Shortly after we filed those due-process claims, the parallel case added similar ones; but there, unlike here, this Court dismissed those claims and let stand against Brookside only an excessive-fines conspiracy claim, on behalf of a putative class that's subsumed entirely within Plaintiffs' Towing Class. So only this case can provide systemic due-process relief—and, importantly, it's of the sort that this Court has already recognized is effectively unconcerned with individual circumstances (an important class-action consideration).

The availability of that due-process relief is important, moreover, because the standalone excessive-fines theory aired in *Wattson*/*Thomas* raises questions that (to us, at least) don't have obvious answers. To be clear, we have every interest in robust enforcement of the Excessive Fines Clause.[7] But the *Wattson*/*Thomas* excessive-fines theory appears to rest on the premise that every Brookside impound fee is

---

[7] *See, e.g.*, *Timbs v. Indiana*, 586 U.S. 146 (2019) (incorporating Excessive Fines Clause against the states; Gedge as co-counsel); *State v. Timbs*, 134 N.E.3d 12 (Ind. 2019) (articulating property-rights-protective excessiveness standard; Gedge as lead counsel); *State v. Timbs*, 169 N.E.3d 361 (Ind. 2021) (applying excessiveness standard to rule in Timbs's favor; Gedge as lead counsel); *Toth v. United States*, 143 S. Ct. 552 (2023) (Gorsuch, J., dissenting from denial of certiorari) (excessive-fines cert petition; Gedge as counsel of record); Pet. for Cert., *Jouppi v. Alaska*, No. 25-246 (U.S.) (cert petition pending; Gedge as counsel of record); Oral Arg., *United States v. Rund*, No. 24-1958 (4th Cir. Sept. 10, 2024) (excessive-fines appeal; Gedge arguing as amicus curiae); NPR, Planet Money, *Should the fine have to fit the crime?* (Oct. 24, 2025) (Host: "Because you are, like, the excessive fines guy." Gedge: "Yeah. Yeah. I mean, I get really, really jazzed about the excessive fines clause. I can't get enough of it."), https://www.npr.org/transcripts/nx-s1-5585267.

unconstitutionally excessive because every tow Brookside orders is a per-se violation of state law unless the driver was custodially arrested. *See* 2:22-cv-157, Doc. 126 at 1–2. We may be missing something, but the statute cited in support of that theory seems to say nothing about the circumstances in which cars may or may not be towed. *See* Ala. Code § 32-1-4(a). And, as we read it, Alabama state law *does* appear to contemplate vehicle tows in circumstances without custodial arrests. *See* Ala. Code § 32-7A-16(c). For that matter, at least one of the putative class representatives in *Wattson*/*Thomas* was, it seems, custodially arrested for nontraffic offenses (as, presumably, were a good number of the members of the putative class they seek to represent). *See* 2:22-cv-157, Doc. 63 at 17 ("[Ms. Todd] was arrested, and her car was immediately towed away by Jett's Towing.").

Lest there be any doubt: Our point isn't to knock anyone else's legal theories, and it may well be that there are good answers to all these questions. But with our goal of securing the most relief for the most people, with our table-sweeping success at the 12(b)(6) stage, with our point-of-the-spear dedication of enormous time and resources to discovery, with our readiness to forgo attorneys' fees entirely, and with the top-shelf settlement we're proposing, we'd respectfully submit that we are the correct candidate to represent the whole of the Towing Class. Indeed, the remaining plaintiffs in *Wattson*/*Thomas* acknowledged that they "welcome" precisely the relief our settlement provides, most of which their case simply can't. *See supra* at 20–21.

As a federal court recently put it when appointing IJ, including Gedge, as class counsel for a due-process challenge to prosecutorial financial incentives: IJ is "unlikely to tire, to settle, or to favor any individual class member's claim over another." *Sparger-Withers v. Taylor*, 628 F. Supp. 3d 821, 832–33 (S.D. Ind. 2022). In this case, of course, IJ has found good reason to settle: the financial and systemic interests of the Towing and Charging Classes, as informed by our four impacted and dedicated Plaintiffs (and welcomed by other class members). But the rest holds.

## Conclusion

The Court should preliminarily approve the parties' settlement agreement. The Court's preliminary approval order should:

1. Preliminarily approve the Settlement Agreement.

2. Preliminarily certify the Towing Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

3. Preliminarily certify the Charging Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

4. Preliminarily appoint Brittany Coleman, Brandon Jones, and Chekeithia Grant as class representatives for the Towing Class.

5. Preliminarily appoint Brittany Coleman, Brandon Jones, Chekeithia Grant, and Alexis Thomas as class representatives for the Charging Class.

6. Preliminarily appoint Jaba Tsitsuashvili and Sam Gedge of the Institute for

Justice and William Dawson of the Dawson Law Office as Class Counsel for the Towing Class and the Charging Class.

7.  Approve the Class Notice accompanying the Settlement Agreement and order that the Claims Administrator send it to potential members of the Towing Class and potential members of the Charging Class within 75 days of the preliminary approval order.

8.  Approve the Class Notice's procedures and deadline for potential members of the Classes to submit claims for one or both Classes, opt out of one or both Classes, or bring objections to the Settlement Agreement within 120 days of the Claims Administrator sending the Class Notices.

9.  Schedule the final approval hearing required by Federal Rule of Civil Procedure 23(e)(2).

February 6, 2026                          Respectfully submitted,

                                          s/ Jaba Tsitsuashvili
William M. Dawson                         Jaba Tsitsuashvili (DC Bar No. 1601246)*
DAWSON LAW OFFICE                         Samuel B. Gedge (VA Bar No. 80387)*
1736 Oxmoor Road, #101                    INSTITUTE FOR JUSTICE
Birmingham, AL 35209                      901 North Glebe Road, Suite 900
Phone: (205) 795-3512                     Arlington, VA 22203
Email: bill@billdawsonlaw.com             Phone: (703) 682-9320
                                          Fax: (703) 682-9321
                                          Email: jtsitsuashvili@ij.org; sgedge@ij.org

                                          *Admitted pro hac vice

                                          *Counsel for Plaintiffs*

## Certificate of Service

I certify that on February 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                          /s/ Jaba Tsitsuashvili
                                          Jaba Tsitsuashvili (DC Bar No. 1601246)*
                                          INSTITUTE FOR JUSTICE
                                          901 N. Glebe Rd., Ste. 900
                                          Arlington, VA 22203
                                          Phone: (703) 682-9320
                                          Fax: (703) 682-9321
                                          Email: jtsitsuashvili@ij.org

                                          *Admitted pro hac vice